

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

James M. Catterson tel:
+1.212.858.1048
james.catterson@pillsburylaw.com

September 12, 2025

<u>**Via ECF**</u>
Hon. Lee G. Dunst
U.S. Magistrate Judge
United States District Court Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

      Re:    *Eastern Region Helicopter Council et al. v. The City of New York*, Case No.
           2:25-cv-04682-LGD – Response to Order to Show Cause Regarding Venue

Dear Judge Dunst:

      We submit this joint letter on behalf of Plaintiffs Eastern Region Helicopter Council,
Vertical Aviation International, and Victoria Seskin (hereinafter collectively referred to as
"Plaintiffs") in response to the Court's August 27, 2025, Order to Show Cause directing
Plaintiffs to provide a good faith basis for venue in the Eastern District of New York and to
advise the Court whether this case should remain assigned to a judge in the Central Islip
courthouse.  Plaintiffs submit that venue is proper under 28 U.S.C. § 1391(b)(2) because a
substantial part of the events or omissions giving rise to Plaintiffs' claims occur in this District.[1]

***Background***

      On August 22, 2025, Plaintiffs commenced the instant action challenging The City of
New York's (hereinafter referred to as the "City") enactment of Resolution No. 26-A, which
prohibits most non-essential helicopter operations at the City-owned Downtown Manhattan and
East 34th Street Heliports beginning on December 1, 2029.  <u>See generally</u> ECF No. 1.
Resolution No. 26-A was passed by the City Council on April 24, 2025, and became law on May
24, 2025.  <u>See id.</u> at ¶¶ 118–19.  The Complaint alleges, *inter alia*, that this legislation is
preempted by the Federal Aviation Administration's exclusive authority over aircraft operations

---

[1] Plaintiffs have directed their arguments herein to the concerns and caselaw identified in the Court's Order to Show
Cause.  Should the Court require briefing on any other issue related to venue, Plaintiffs respectfully request leave to
file a supplemental submission.

on property owned or leased by the City and violates the New York State Environmental Quality Review Act (hereinafter referred to as "SEQRA").

### *Legal Standard*

28 U.S.C. § 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  To assess the propriety of venue under Section 1391(b)(2), the Court must: (1) "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims" and (2) "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed[.]"  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005).

The Second Circuit has clarified that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  Id. at 432–33 ("When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial[.]"); see also Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).

Venue is appropriate in "'*each* district where a substantial part of the events . . . occurred,' and thus venue may be appropriate in this district even if a greater portion of events occurred elsewhere."  Sea Tow Servs. Int'l, Inc. v. Pontin, 472 F. Supp. 2d 349, 364 (E.D.N.Y. 2007) (quoting Concesionaria DHM, S.A. v. Int'l Finance Corp., 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004)); see also Gulf Ins. Co., 417 F.3d at 356; Kim v. Lee, 576 F. Supp. 3d 14, 24 (S.D.N.Y. 2021), aff'd, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023) ("Section 1391(b)(2) does not restrict venue to the district in which the most substantial events or omissions giving rise to a claim occurred.  Nor does it require courts to determine the best venue, but merely a logical one with a substantial connection to the litigation.") (internal citations and quotations omitted).

### *Venue Is Appropriate in this District*

The Complaint alleges, in relevant part, that Resolution No. 26-A was enacted in violation of lawful procedure to the extent that the City failed to perform any environmental impact review mandated by SEQRA or issue a determination that its action was not subject to SEQRA.  See ECF No. 1 at ¶¶ 259–61.  Plaintiffs allege that banning "non-essential" helicopters will not limit their demand but merely displace it to surrounding heliports.  See id. at ¶¶ 262–64.  Specifically, closing the Downtown Manhattan and East 34th Street Heliports will necessarily divert air traffic into already congested flight paths serving LaGuardia (hereinafter referred to as "LaGuardia") and John F. Kennedy (hereinafter referred to as "JFK") International Airports, both located within the Eastern District.  See id. at ¶ 37.  Plaintiffs allege that residents of the towns directly under those flight paths, already utilized by helicopters and other aircraft, will experience corresponding increases in noise and pollution.  See id.  "Such residents, including Ms. Seskin, will be uniquely and adversely impacted by the City's legislation."  Id.

2

Ms. Seskin lives in Garden City, New York, directly under the flight path of the helicopter approach to JFK and LaGuardia.  Id. at ¶ 233.  Ms. Seskin states serious concerns that (1) an increase in air traffic to JFK and LaGuardia will result in significant noise issues, (2) a diversion of air traffic to JFK and LaGuardia will exacerbate the noise she already lives with and will lead to unbearable levels of noise that will significantly and detrimentally affect her life, and (3) an increase in pollution will result from an increase in air traffic to JFK and LaGuardia.  Id. at ¶¶ 235–37.

Thus, Ms. Seskin pleads a "threatened harm" that "will affect [her] differently from 'the public at large,'" as is required under New York Court of Appeals precedent to state a SEQRA claim.  Save the Pine Bush, Inc. v. Common Council of City of Albany, 13 N.Y.3d 297, 305 (2009) (citing Soc'y of Plastics Indus. v. Cnty. of Suffolk, 77 N.Y.2d 761 (1991)).  Moreover, Ms. Seskin's injury became concrete when Resolution No. 26-A became law in the absence of any SEQRA review.  See, e.g., Stop-The-Barge ex rel. Gilrain v. Cahill, 1 N.Y.3d 218, 223–24, (2003) (agency declaration that further environmental review under SEQRA was not required "resulted in actual concrete injury to petitioners" because project could then proceed without the need to prepare an environmental impact statement); In re Sanitation Garage Brooklyn Districts 3 & 3A, 822 N.Y.S.2d 97, 102 (2d Dep't 2006) (SEQRA claim accrued when agency's approval of project became "final and binding" without any further environmental impact review).

Venue is proper in the Eastern District because the law will cause substantial and actionable harm in this District.  As set forth above, the increased noise and air pollution attendant to the legislation will be borne disproportionately by Eastern District communities in the JFK and LaGuardia heliport flight paths.  See ECF No. 1 at ¶ 37.  These "threatened harm[s]" give rise to Ms. Seskin's SEQRA claim in this matter.  Save the Pine Bush, 13 N.Y.3d at 305; see also, e.g., Soc'y of Plastics, 77 N.Y.2d at 778 (a plaintiff "threatened with . . . a concrete injury" within SEQRA's environmental zone of interests "evidences that [she] has a significant interest in having the mandates of SEQRA enforced" (internal quotation marks and citation omitted)).  In sum, the City failed to assess the impact of its restrictions on the heliports in the Eastern District, and the locus of the injury to Ms. Seskin is the Eastern District.  These factors render venue in this District appropriate.  See Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867–68 (2d Cir. 1992) (venue for Fair Debt Collection Practices Act claim was proper where debtor actually received collection notice); Doe v. N.Y., No. 10–CV–1792, 2012 WL 4503409, at *5 (E.D.N.Y. Sept. 28, 2012) (holding Eastern District of New York to be proper venue for cause of action fact that other locales were implicated in claim).

Moreover, the fact that Resolution No. 26-A was enacted by the New York City Council in Manhattan is not dispositive of venue.  In cases seeking injunctive or declaratory relief, venue may lie in the district where the effects of a challenged statute are felt, even though the statute was enacted elsewhere.  See, e.g., Cheeseman v. Carey, 485 F. Supp. 203, 212 (S.D.N.Y. 1980); Doe v. N.Y., No. 10–CV–1792, 2012 WL 4503409, at *5  (E.D.N.Y. Sept. 28, 2012) ("While the alleged creation of the unconstitutional policy may or may not have occurred in N.D.N.Y., the continued implementation of the policy occurred not only in N.D.N.Y. while K. Doe was still incarcerated, but also in E.D.N.Y., after his release. . . Because both the breach and the ultimate injury, two necessary elements of plaintiffs' 'primary claim,' occurred in E.D.N.Y., venue is proper in this district."); Farmland Dairies v. McGuire, 771 F. Supp. 80, 82 n.3 (S.D.N.Y. 1991)

("suits challenging official acts may be brought in the district where the effects of the challenged regulations are felt even though the regulations were enacted elsewhere"); Molinari v. Bloomberg, No. CV-08-4539CPSJO, 2008 WL 5412433, at *6 (E.D.N.Y. Dec. 22, 2008) (same).

Section 1391(b)(2) does not require that Plaintiffs wait until the harmful effects of Resolution No. 26-A be fully realized before venue attaches; it is relevant only that the Eastern District is where those effects *will be* substantially experienced. Indeed, federal courts have recognized that venue may rest on the situs of future but certain harms. See, e.g., Jackson v. Fed. Bureau of Prisons, No. 4:19-CV-00287, 2020 WL 1243198, at *1 (M.D. Pa. Mar. 16, 2020); League of Women Voters of Fla. v. Browning, No. 08-21243-CIV, 2008 WL 11332046, at *2 (S.D. Fla. May 29, 2008) (in an action seeking injunctive or declaratory relief alleging potential future harm, proper venue under Section 1391(b)(2) lies in a district where the future harm will occur); Bishop v. Oklahoma ex rel. Edmondson, 447 F. Supp. 2d 1239, 1254 (N.D. Okla. 2006), rev'd in part sub nom. Bishop v. Oklahoma, 333 F. App'x 361 (10th Cir. 2009) (collecting cases); Farmland Dairies, 771 F. Supp. at 82; Sheffield v. State of Texas, 411 F. Supp. 709, 713 (N.D. Tex. 1976) (emphasis added) (holding venue was proper in the Northern District where the "injury alleged in this case *has or will occur* in the Northern District"); Johnson v. State of Mississippi, 78 F.R.D. 37, 41 (N.D. Miss. 1977). This comports with the above-referenced New York law governing the elements of a SEQRA claim, which requires only *threatened* environmental harm to challenge administrative action.

Respectfully, Plaintiffs submit that the Court's concern that Plaintiffs have not yet experienced the harm they complain of because Resolution No. 26-A takes effect in 2029 should not determine its venue analysis. First, whether Plaintiffs have pleaded an adequate injury goes to standing and ripeness, not venue.[2] As set forth above, Ms. Seskin has standing to bring a SEQRA claim based upon the threatened environmental harm she will suffer. Likewise, there is no doubt that Ms. Seskin's SEQRA claim is ripe. SEQRA required the City to perform an environmental impact review and to make written findings *before* passing the challenged legislation. SEQRA was violated, and Ms. Seskin's injury accrued, the moment the City Council made Resolution No. 26-A law without any environmental review whatsoever. See, e.g., Stop-The-Barge, 1 N.Y.3d at 223–24; In re Sanitation Garage Brooklyn Districts 3 & 3A, 822 N.Y.S.2d at 102.

Once standing and ripeness are satisfied, venue under Section 1391(b)(2) turns on the geographic nexus of the alleged harm. Here, there is a clear nexus between the Eastern District and the localized burdens of increased helicopter traffic that will be borne by communities such as Ms. Seskin's under the LaGuardia and JFK flight paths.

Second, the fact that Resolution No. 26-A becomes operative in 2029 does not alter the situs of the alleged harms. While Plaintiffs acknowledge that "[v]enue is determined based upon

---

[2] All Plaintiffs establish standing here. The Complaint alleges concrete, particularized, and imminent environmental injuries under SEQRA to Ms. Seskin and to the organizational Plaintiffs whose members' operations and revenues are already disrupted by the legislation, among other impacts. See generally ECF No. 1. These injuries are traceable to the City's enactment of Resolution No. 26-A and are redressable by declaratory and injunctive relief. See, e.g., Abbott Labs. v. Gardner, 387 U.S. 136, 149–54 (1967) (holding that regulations could be challenged before their effective date because enactment imposed immediate and significant business, economic, and legal consequences).

the parties and allegations at the time the operative complaint is filed," <u>Keitt v. New York City</u>, 882 F. Supp. 2d 412, 459 n.44 (S.D.N.Y. 2011), that rule addresses subsequent changes in party residence or circumstances, and not situations where, as here, the geographic location of the threatened injury is already fixed. <u>See</u> <u>N-N v. Mayorkas</u>, 540 F. Supp. 3d 240, 253 (E.D.N.Y. 2021) (providing as examples of "subsequent events" dismissal of a defendant or a change in plaintiff's residence after the complaint is filed). For example, in <u>Liu v. Mayorkas</u>, No. 24-CV-7317 (ARR) (MMH), 2025 WL 1707617, at *2 (E.D.N.Y. June 18, 2025), the venue dispute "turn[ed] on which judicial district [plaintiff] resided in when she filed her complaint." <u>Id.</u> This Court held that "[w]hen determining venue, the relevant district to consider is plaintiff's residence at the time the complaint was filed" and "[o]nce venue is established, it is not affected by subsequent events." <u>Id.</u> Because the plaintiff was living in the Southern District of Ohio on the date the complaint was filed, that district was the proper venue, even though plaintiff subsequently moved to Queens. <u>Id.</u> at *2–3. Here, the geographic location of Ms. Seskin's harm is certain and unique to Nassau and Suffolk counties. That is sufficient to make venue proper in this District.

Accordingly, venue is appropriate in this District under Section 1391(b)(2). The Complaint alleges a SEQRA claim based upon the City's failure to assess the impact of its legislation in this District and substantial, cognizable harms that are uniquely situated in this District. Moreover, controlling precedent makes clear that venue is not restricted to the place where legislation was enacted but also lies where its effects are felt or will be felt. Though passed in Manhattan, Resolution No. 26-A will have a direct and substantial environmental impact on the Nassau and Suffolk communities in the Eastern District. Plaintiffs therefore respectfully request that this case remain assigned to a judge in the Central Islip courthouse of the Eastern District of New York.

We thank the Court for its attention to this matter.

Respectfully submitted,

Jayme Jonat
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
jjonat@hsgllp.com
*Attorneys for Plaintiff Victoria Seskin*

James M. Catterson
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
james.catterson@pillsburylaw.com
*Attorneys for Plaintiffs Eastern Region Helicopter Council and Vertical Aviation International*