Case 2:25-cv-04682-NGG-LGD   Document 16   Filed 11/18/25   Page 1 of 3 PageID #: 73



**T**HE **C**ITY OF **N**EW **Y**ORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

**AIMEE K. LULICH**
Assistant Corporation Counsel
alulich@law.nyc.gov

November 17, 2025

**BY ECF**
Hon. Nicholas G. Garaufis
United States District Judge
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  <u>Eastern Region Helicopter Council et al. v. City of New York.</u>
              25-CV-04682 (NGG) (LGD)

Your Honor:

      I am a Senior Counsel assigned to represent defendant City of New York ("City") in the above-referenced matter. I write, pursuant to Your Honor's Individual Rules of Practice to respectfully request a pre-motion conference regarding the City's anticipated motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

      Plaintiffs challenge New York City Local Law 64 of 2024 ("LL 64") which prohibits non-essential helicopter operations that exceed certain federally-established noise thresholds from two City-owned Manhattan heliports starting December 1, 2029. Plaintiffs argue that LL 64 is preempted by the Airport Noise and Capacity Act ("ANCA"), the Federal Aviation Administration's ("FAA") authority to regulate safety, and the Airport and Airway Improvement Act ("AAIA"). Finally, plaintiffs bring a claim pursuant to New York Civil Practice Law and Rules ("CPLR") § 7803, alleging that the City did not comply with the State Environmental Quality Review Act ("SEQRA"). All four claims fail as a matter of law. LL 64 is not preempted, 49 U.S.C. § 40103 does not provide a private cause of action, and plaintiffs lack standing to proceed with their SEQRA claim.

      First, LL 64 is not preempted by ANCA. Plaintiffs advance theories of field preemption and conflict preemption; however, both fail because LL 64 on its face comports with the requirements set forth in ANCA. ANCA recognizes the proprietor's exception, and, thus,

---

[1] The parties previously responded to the Court's Order to Show Cause as to the proper venue for this matter, and that decision remains pending. Should this action be transferred to a new venue, defendants respectfully request that the court consider this pre-motion conference request or permit defendants to respond to the complaint in accordance with the court's individual rules.

any field preemption claim fails because it is not so pervasive as to preclude any enforcement of state laws regarding aircraft noise. *Arizona v. United States*, 567 U.S. 387, 399–400 (2012). "Congress has consciously delegated to state and municipal proprietors the authority to adopt rational regulations with respect to the permissible level of noise created by aircraft using their airports in order to protect the local population." *See Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2d. Cir. 1998). LL 64 in all ways satisfies the procedural requirements of the proprietor's exception, as it is "reasonable, nonarbitrary, and non-discriminatory" and "consistent with federal policy." *British Airways Bd. v.. Port. Auth. Of N.Y. & N.J.*, 558 F.2d 75, 84-85 (2d Cir. 1977). Federal courts have upheld municipal restrictions on aircraft operations as reasonable and non-discriminatory where such restrictions were based on a desire to protect residents from significant noise intrusion. *See, e.g. Nat'l Helicopter Corp. of Am.,* 137 F.3d at 90-91.

Further, LL 64 does not conflict with ANCA. Indeed, a plain reading of LL 64 demonstrates that it explicitly incorporates the procedural requirements mandated under ANCA. LL 64 directs:

> "Prior to implementing the restrictions set forth in subdivision b of this section, the airport operator shall follow the procedure outlined in subsection (b) of section 47524 of title 49 of the United States code and subpart C of part 36 of title 14 of the code of federal regulations. Such restrictions shall not be implemented until 180 days after the publishing and public comment period required by such procedures have commenced."

Ad. Code § 22-828 (1)(c).[2] The ordinary meaning of the statutory language here reflects the clear intent of the of the Council to adhere to ANCA and its related regulations. *See Marx v. Gen Revenue Corp.,* 568 U.S. 371, 377 (2013); *Kingdowmware Techs., Inc., v. United States*, 136 S. Ct. 1969, 1976 (2016). As it is possible to comply with ANCA and LL 64, there is no conflict preemption. *Arizona*, 567 U.S. at 399–400.

Second, plaintiffs' conclusory statement that LL 64 is preempted by the FAA's authority to regulate safety fails. LL 64 is a noise regulation, and plaintiffs have not identified any way in which it implicates air safety or stands as an obstacle to accomplishing the intent of the FAA. Plaintiffs rely solely on a partial quotation from the statements made by Council Member Farias in a committee hearing about a package of bills and resolutions related to helicopter traffic. The statements were not specific to LL 64, and, in any event, the motivations of individual legislators are not dispositive in determining statutory purpose. *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 283 n.13 (2d Cir 1997). Further, if the FAA were intended to preempt all noise regulations, ANCA would serve no purpose. And, as described above, LL 64 adopts the national requirements for defining and regulating aircraft noise.

Third, plaintiffs' attempt to challenge LL 64 under the AAIA fails because 49 U.S.C. § 40103(e) does not provide a private right of action. *Bowling Green & Warren Cty Airport Bd. v. Martin Land Dev't. Co.*, 561 F.3d 556, 560 (6th Cir. 2009); *see also Montauk-*

---

[2] The citation to 14 C.F.R. pt. 36(c) is a typographical error, which instead should read 14 C.F.R. pt. 161 (which part refers to pt. 36).

*Caribbean Airways, Inc., v. Hope*, 784 F.2d 91 (2d Cir. 1986) (holding that the precursor to § 40103, 49 U.S.C. § 1349(a), did not provide a private right of action). Rather, an individual who is directly and substantially affected by an airport sponsor's alleged noncompliance must file a complaint with the FAA, which will investigate and issue determinations as set forth in 14 C.F.R. pt. 16. Only after the administrative process is completed is the final determination reviewable by a federal appellate court. *See 41 N. 73 W., Inc. v. U.S. D.O.T.*, 408 Fed. App'x 393, 396 (2d Cir. 2010) (*citing* 49 U.S.C. § 46110; 14 C.F.R. § 16.247(a)).

Finally, the state law SEQRA claim must be dismissed for lack of standing. To proceed in a SEQRA claim "[p]laintiffs must not only allege, but if the issue is disputed must prove, that their injury is real and different from the injury most members of the public face." *Save the Pine Bush, Inc. v. Common Council of City of Albany*, 13 N.Y.3d 297, 306 (2009). Claims of an injury-in-fact must be more than speculative. *See, e.g., Shapiro v. Torres*, 153 A.D.3d 835 (2d Dept. 2017). Plaintiffs' sole support for their claim of standing is that plaintiff Victoria Seskin "lives in Garden City, New York, directly under the flight path of helicopter approach to JFK and LaGuardia Airports." Complaint ¶ 233. This claim is belied by the FAA's official Helicopter Route Chart for New York City,[3] which shows that none of the nine approaches to La Guardia (LGA) or John F. Kennedy (JFK) airports fly over Garden City.

Given the geography, Ms. Seskin cannot show even a potential injury from non-essential flights shifting to depart from to LGA or JFK. Even assuming Manhattan-bound sightseeing tours could operationally relocate to airports, they would then have to travel miles in the wrong direction to fly over Garden City. Meanwhile helicopter shuttles from Manhattan to the airports obviously cannot be displaced to depart from the same airports that are their destinations. As for private helicopters from Manhattan to heliports on Long Island, the FAA route chart shows that the sole approved route over Garden City, the "TRACK" route, is already part of the most direct route from the Manhattan heliports; Plaintiffs make no effort to justify their speculation that shifting those flights to depart from LGA and JFK would increase traffic over Garden City. Accordingly, plaintiffs entirely fail to demonstrate that Ms. Seskin would sustain an injury different than that of the general public, and they lack standing to proceed in the state claim.

We thank the Court for its consideration of this request.

Respectfully submitted,

/S
Aimee K. Lulich
Senior Counsel

cc:   Attorneys of record (By ECF)

---

[3] Available at https://aeronav.faa.gov/visual/02-20-2025/PDFs/New_York_Heli.pdf (last visited Nov. 7, 2025).