Economic Development Committee Staff:
Alex Paulenoff, *Senior Legislative Counsel*
Luciano Hamel, *Counsel*
William Hongach, *Senior Policy Analyst*
Glenn Martelloni, *Financial Analyst*



## THE COUNCIL OF THE CITY OF NEW YORK

## COMMITTEE REPORT OF THE LEGISLATIVE DIVISION
*Andrea Vazquez, Director*
*Rachel Cordero, Deputy Director, Governmental Affairs Division*

## COMMITTEE ON ECONOMIC DEVELOPMENT
*Hon. Amanda Farías, Chair*

**April 24, 2025**

**Proposed Int. No. 26-A:**

By Council Members Farías, Powers, Louis, Restler, Gutiérrez, Hudson, Marte, Hanif, Brewer, Holden, Avilés, Rivera, Abreu, Ossé, Krishnan, De la Rosa, Banks, Caban, Brannan, Schulman, Ung, Gennaro, Feliz, Ayala, Nurse, Bottcher and Carr

**Title:**

A Local Law to amend the administrative code of the city of New York, in relation to regulating

1

|  | helicopter operations at city owned heliports to reduce noise |
|---|---|
| **Administrative Code:** | Adds § 22-828 |
| **Proposed Int. No. 860-A:** | By Council Members Avilés, Hanif, Cabán, Nurse, Gutiérrez, Banks, Brooks-Powers, Brewer, Ayala, De La Rosa, Marte, Farías, Ossé, Williams, Krishnan, Feliz, Brannan and Narcisse. |
| **Title:** | A Local Law to amend the administrative code of the city of New York, in relation to requiring a contracted entity to publish an annual report concerning community hiring |
| **Administrative Code:** | Adds § 22-829 |
| **Proposed Int. No. 861-A:** | By Council Members Avilés, Hanif, Restler, Cabán, Nurse, Gutiérrez, Banks, Brewer, Brooks-Powers, Ayala, De La Rosa, Marte, Farías, Won, Ossé, Williams, Krishnan, Feliz, Brannan and Narcisse |
| **Title:** | A Local Law to amend the administrative code of the city of New York, in relation to requiring an annual report by a contracted entity to include information about agreements to provide community benefits |
| **Administrative Code:** | Amends § 22-821 |
| **Proposed Res. No. 85-A:** | By Council Members Gennaro, Farías, Brewer, Louis, Holden, Hudson and Cabán |
| **Title:** | Resolution calling on the New York State Legislature to pass, and the Governor to sign, A.2583, which would establish a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more. |

2

**<u>Proposed Res. No. 226-A:</u>**

By Council Members Brewer, Holden, Avilés, Rivera, Hudson, Louis, Cabán, Restler and Farías

**<u>Title:</u>**

Resolution calling on the New York State Legislature to pass, and the Governor to sign, A.6311 and S.7381, which would prohibit certain non-essential flight operations at municipal heliports and Hudson River Park.

**<u>Proposed Res. No. 233-A:</u>**

By Council Members Brewer, Hanif, Won, Holden, Rivera, Louis, Hudson, Cabán, Restler and Farías (by request of the Manhattan and Brooklyn Borough Presidents)

**<u>Title:</u>**

Resolution calling upon the United States Federal Aviation Administration to ban all non-essential helicopter travel, including tourist and chartered helicopter flights over New York City.

## I.    INTRODUCTION

On April 24, 2025, the Committee on Economic Development, chaired by Majority Leader Amanda Farías, will vote on several pieces of legislation: (i) Proposed Introduction Number 26-A ("Int. No. 26-A") sponsored by Majority Leader Farías, in relation to regulating helicopter operations at city owned heliports to reduce noise; (ii) Proposed Introduction Number 860-A ("Int. No. 860-A") sponsored by Council Member Aviles, in relation to requiring a contracted entity to publish an annual report concerning community hiring; (iii) Proposed Introduction Number 861-A ("Int. No. 861-A") sponsored by Council Member Aviles,  in relation to requiring an annual report by a contracted entity to include information about agreements to provide community benefits; (iv) Proposed Resolution Number 85-A ("Res. No. 85-A"), sponsored by Council Member Gennaro, calling on the New York State Legislature to pass, and the Governor to sign, A.2583, which would establish a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more; (v) Proposed Resolution Number 226-A ("Res. No. 226-A") sponsored by Council Member Brewer, calling on the New York State Legislature to pass, and the Governor to sign, A.6311 and S.7381, which would prohibit certain non-essential flight operations at municipal heliports and Hudson River Park; (vi) Proposed Resolution Number 233-A ("Res. No. 233-A") sponsored by Council Member Brewer, calling upon the United States Federal Aviation Administration to ban all non-essential helicopter travel, including tourist and chartered helicopter flights over New York City.

## II.    BACKGROUND

*New York City Economic Development Corporation*

The New York City Economic Development Corporation or "NYCEDC"

is a not-for-profit corporation comprising 27 board members, which contracts with the City of New York to oversee and administer a variety of City-sponsored economic development programs. As a not-for-profit entity, NYCEDC is required to achieve a public objective in its corporate operations.[1] Operating under contract with the City, NYCEDC facilitates investments that aim to increase capacity, jobs and employment opportunity in the City.[2] To carry out its economic development mission, NYCEDC invests in "major infrastructure upgrades, capital projects, and real estate development; manages City-owned properties . . . and works to enhance the City's legacy and emerging business sectors."[3] NYCEDC's portfolio spans a multitude of industries from manufacturing to entertainment to overseeing the operation of City heliports.

*Federal Aviation Administration*

The Federal Aviation Administration ("FAA") is the largest transportation agency in the United States and regulates all aspects of civil aviation, which includes the airspace over the City.[4] The federal government has exclusive jurisdiction over airspace within the United States and federal law preempts states from enacting legislation governing the use of airspace.[5] The Administrator of the FAA is charged with developing regulations for the use of airspace,[6] which are contained in the Federal Aviation Regulations ("FAR").[7] Part 135 of the FAR regulates commuter and on demand aircraft, which includes helicopters. The FAA also has exclusive authority over flight routes for helicopters and other aircraft over the City.[8]

---

[1] *See* N.Y. NOT-FOR-PROFIT CORP. LAW § 201(b).
[2] *See* New York City Mayor's Management Report (September 2022) at 364, *available at* http://www1.nyc.gov/assets/operations/downloads/pdf/mmr2022/2022_mmr.pdf.
[3] *Id.*
[4] *See* Federal Aviation Administration, "Mission," *available at* www.faa.gov/about/mission
[5] 49 USC § 40103 entitled "Sovereignty and use of airspace," provides that "The United States Government has exclusive sovereignty of airspace of the United States."
[6] *Id.*
[7] Title 14 Code of Federal Regulations ("CFR").
[8] *See* N.Y. City 311, "Noise From Helicopter," *available at* https://portal.311.nyc.gov/article/?kanumber=KA-02267

The federal government "regulates aircraft and airspace pervasively,"[9] preempting regulation by state or local authorities including regulations "related to a price, route, or service of an air carrier."[10] However, there is a "proprietor exception" for state or local governments that operate an airport. This allows a state or municipal government to use "its proprietary powers and rights,"[11] so long as the exercise of that authority is "reasonable, nonarbitrary and non-discriminatory."[12]

*New York City Heliports*

There are three publicly-owned heliports in the City of New York that are available for public use: the East 34th Street Heliport, the West 30th Street Heliport and the Downtown Manhattan/Wall Street Heliport ("DMH"). There was a fourth public heliport at 60th Street, which the City closed in 1997.[13] The East 34th Street Heliport was closed to sightseeing flights in 1997 when the City evicted the former tenant of the heliport, National Helicopter,[14] and restricted operations to air taxi, general aviation, commuters and military flights.[15]

In 1999, then-Mayor Giuliani's administration conducted the City's first Heliport and Helicopter Master Plan Study ("HHMPS") to take a comprehensive look at the City's heliport system.[16] The study analyzed the operations of the three Manhattan-based heliports to guide

---

[9] *See, eg.* Nat'l Helicopter Corp. of Am. v. City of New York, 137 F.3d 81, 88 (2d Cir. 1998). ("Under the constitutional doctrine of preemption, states and localities are prohibited from enforcing laws and regulations that 'interfere with or are contrary to, the laws of congress.'").

[10] 49 USC § 41713(b)(1).

[11] 49 USC § 41713(b)(3).

[12] Nat'l Helicopter Corp. of Am. v. City of New York, 137 F.3d 81, 87 (2d Cir. N.Y. 1998).

[13] *See* Clifford Levy, *Giuliani Plans To Reduce Copter Flights,* N.Y. TIMES Apr. 30 1997 at B3.

[14] *See* Nat'l Helicopter Corp. of Am. v. City of N.Y., 137 F.3d 81 (2d Cir. 1998).

[15] *See* EAST 34TH STREET HELIPORT, AIRNAV.COM, http://www.airnav.com/airport/6N5 (last visited Nov. 22, 2022).

[16] *See* Press Release, Mayor's Press Office, Mayor Giuliani Releases Heliport Master Plan Study, (Sep. 27, 1999) *available at* http://www.nyc.gov/portal/site/nycgov/index.jsp?epi-content=GENERIC&wcproxyurl=http%253A%252F%252Fwww.nyc.gov%252Fhtml%252Fom%252Fhtml%252F99b%252Fpr377-99.html&beanID=2027100071&viewID=proxy_view_secondary.

"policy and development decisions pertaining to the City's heliport system."[17] The HHMPS recommended that sightseeing flights be prohibited from City-owned heliports, but concluded that there was little the Giuliani administration could do at the time to achieve such a ban.[18] At the time, the New York State-owned West 30th Street Heliport was managed via contract with Air Pegasus of New York ("Air Pegasus"), a private tour operator, in effect until 2001;[19] and the DMH was managed by the Port Authority of NY & NJ ("PANY/NJ") under an agreement set to expire in 2005.[20]

**Locations of New York City Heliports**



1) Downtown Manhattan/Wall Street Heliport 2) East 34th Street Heliport 3) West 30th Street Heliport[21]

*West 30th Street Heliport*

The West 30th Street heliport is owned by New York State, with oversight by the Hudson River Park Trust ("HRPT"). In 1998, the State delegated the authority to manage the Hudson River

---

[17] *Id.*
[18] *See id.*
[19] *See id.*
[20] *See id.*
[21] Map sourced from NYCTourist.com, *available at* http://www.nyctourist.com/heliports_helicopter_airport_transportation.htm

Park to the HRPT for the "planning and development of the Hudson river park as a public park,"[22] and "to operate exclusively for purposes relating to the promotion of the health and social welfare of the people of the state."[23] As part of HRPT's formative statute, any heliport within the Hudson River Park could only be operated as a "non-tourist/non-recreation heliport for commercial and emergency transportation use."[24] An activist group known as the Friends of Hudson River Park ("FOHRP") filed suit against the Trust, Air Pegasus, and another helicopter operator in 2007 to enforce the non-tourist/non-recreation terms of the Trust's formative statute.[25] The Trust and Air Pegasus ultimately settled with FOHRP, agreeing to, among other things, cease sightseeing flights at the West 30th Street Heliport by April 2010.[26]

*Downtown Manhattan Heliport & East 34th Street Heliport*

The DMH and East 34th Street heliports are both owned by the City and managed by the NYCEDC. The East 34th Street heliport contracts with operator Atlantic Aviation for corporate and charter flights,[27] while the DMH has been operated by Saker Aviation since 2008, with corporate, charter and sightseeing traffic.[28] Despite the Giuliani-era HHMPS advisory that once the West 30th Street Heliport closes, "the City should work with the Port Authority to ensure that the sightseeing traffic at this heliport does not shift to the Downtown Manhattan Heliport,"[29] nearly all sightseeing traffic has in fact moved to the DMH.

---

[22] N.Y. UNCONSOL. CH. 65, § 2(a)
[23] N.Y. UNCONSOL. CH. 65, § 2(g).
[24] N.Y. UNCONSOL. CH. 65, § 3(g)(v).
[25] *See* Press Release, Friends of Hudson River Park, Friends of Hudson River Park Announces Agreement on Ending Tourist Flights at 30th Street Heliport by April 2010. (Jun. 20, 2008) *available at* http://www.hudsonriverpark.org/assets/content/general/6.20.08-Heliport_Final_Release_June_20_2008.pdf
[26] *See id.*
[27] See Atlantic Aviation, "East 34th Street Heliport, NY (6N5)," https://www.atlanticaviation.com/location/6n5 (last visited Nov. 22, 2022)
[28] S*ee* Saker Aviation Services, "Downtown Manhattan Heliport," http://www.downtownmanhattanheliport.com/ (last visited Nov. 22, 2022)
[29] Mayor Giuliani Releases Heliport Master Plan Study, *supra* note 9.

In April 2010, the NYCEDC released an updated New York City Helicopter Sightseeing Plan ("the 2010 Plan") to "mitigate the impact of helicopter tours on surrounding neighborhoods while maintaining the important industry."[30] The 2010 Plan eliminated so-called "short tour" flights, which lasted between four and eight minutes and represented between 15-20% of sightseeing flights at the time.[31] The 2010 Plan also eliminated sightseeing tours over Central Park, the Empire State Building and Brooklyn, and restricted all sightseeing tour operators to follow one of two routes designated by the FAA to "maximize[e] aircraft distances from the Brooklyn Bridge Park . . . [and] transit the Hudson at 1,500 feet or above thereby mitigating noise heard from lower altitude flights."[32]

In February of 2016, NYCEDC and the Helicopter Tourism and Jobs Council announced an agreement to reduce the number of flights from DMH by 50%, resulting in approximately 30,000 fewer flights per year.[33] As part of the agreement, NYCEDC and the DMH operators also agreed to share monthly reports on helicopter complaints with the Council. The types of flights currently flown out of the DMH include: (i) charter, tour, or sightseeing; (ii) government; (iii) commercial filming; (iv) news gathering; and (v) emergency flights, such as medical transport.[34]

In January of 2024, NYCEDC closed a *Request for Proposals* ("RFP") process for heliport operations at the DMH.[35] The selected operator would enter into a 5-year concession agreement to

---

[30] Press Release, New York City Economic Development Corporation, New York City Economic Development Corporation Releases New York City Sightseeing Plan (Apr. 30, 2010) *available at* https://us1.campaign-archive.com/?e=366aaabca4&u=1ea59591e8f61f1e32eec4bca&id=a4c61bde40 .

[31] *See id.*

[32] *Id.*

[33] *See* Press Release, NYCEDC, "NYCEDC And Helicopter Tourism & Jobs Council Announce New Measures to Reduce Helicopter Noise And Impacts Across New York City," (Feb. 1, 2016) *available at* https://edc.nyc/press-release/nycedc-and-helicopter-tourism-jobs-council-announce-new-measures-reduce-helicopter

[34] *See* N.Y. City 311, "Noise From Helicopter," *available at* https://portal.311.nyc.gov/article/?kanumber=KA-02267

[35] *See* NYCEDC, at https://edc.nyc/press-release/downtown-manhattan-heliport-to-transform-sustainable-transportation-local-deliveries

"operate, manage and maintain" the DMH with one five-year renewal option solely at the discretion of NYCEDC.[36] In December 2024, NYCEDC announced *Downtown Skyport* as the new operator for the DMH.[37]

*Helicopter Noise*

In 1972, Mayor John Lindsay enacted the New York City Noise Control Code ("Noise Code") making New York one of the first cities in the nation to adopt a comprehensive local law aimed at reducing noise pollution.[38] The pioneering law was intended to reduce ambient noise levels Citywide and set sound limits for a set of specific noise sources.[39] In 2005, the Council passed and then-Mayor Michael Bloomberg signed Local Law 113 of 2005, overhauling the Noise Code for the first time in over 30 years in order to update the Noise Code and make it reflective of modern acoustic technologies and standards.[40] The updated Noise Code took effect in 2007 and it is enforced by the DEP and the New York City Police Department ("NYPD").[41] The Code sets standards for what constitutes unreasonable and prohibited noise, and sets decibel limits for various specific noise sources.[42] The Code is enforced by DEP and NYPD agents who carry meter devices capable of detecting sound pressures and displaying readings on a A-weighted decibel, or dB(A), sound level scale.[43]

**Table 1:** The table below lists common noise sources and their sound levels. Note that sound levels vary depending on the distance between the noise source and the object receiving the sound,

---

[36] *Id*

[37] NYCEDC at https://edc.nyc/press-release/nycedc-announces-new-operator-downtown-manhattan-heliport

[38] NR Kleinfield, New York Times, "New York Quiet? Never. Quieter? Maybe. Listen up.," available at http://www.tenant.net/Rights/Noise/noise4.html

[39] "The New York City Noise Control Code: Not with a Bang, but a Whisper," Fordham Urban Law Journal, 1972, Volume 1, Issue 3, Article 4, available at http://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=1032&context=ulj

[40] *See id.*

[41] *See id.*

[42] *See id.* (Decibels are the universal system of sound measurement, abbreviated "dB")

[43] *See id*, "Guide to New York City's Noise Code"

but the list below provides frequently heard sounds in the City and their approximate decibel levels based on common distances from the noise sources.[44]

| | |
|---|---|
| Whisper | 30 dB(A) |
| Normal Conversation/Laughter | 50 – 65 dB(A) |
| Vacuum Cleaner at 10 feet | 70 dB(A) |
| Washing Machine/Dishwasher | 78 dB(A) |
| Midtown Manhattan Traffic Noise | 70 – 85 dB(A) |
| Motorcycle | 88 dB(A) |
| Lawnmower | 85 – 90 dB(A) |
| Train | 100 dB(A) |
| Jackhammer/Power Saw | 110 dB(A) |
| Thunderclap | 120 dB(A) |
| Stereo/Boom Box | 110 – 120 dB(A) |
| Nearby Jet Takeoff | 130 dB(A) |

Some major noise sources covered by the Noise Code are motor vehicles and motorcycles, refuse collection vehicles, music from bars and restaurants, food vending vehicles, animal noises, residential noise and construction noise.[45] The sound level of helicopters frequently ranges from 80-102 dB.[46]

Despite the restrictions placed by the 2010 Plan and in 2016 by NYCEDC, complaints from residents persist. Noise complaints due to helicopter activities, or any other source of noise, may be submitted to 3-1-1, which is the City's 24-hour phone number and website serving as a source of government information and non-emergency services. Helicopter-related noise complaints to New York City's 3-1-1 call center increased from 10,359 in 2020 to 25,821 in 2021 with a vast

---

[44] New York City Department of Environmental Protection, "A Guide to New York City's Noise Code – Understanding the Most Common Souces of Noise in the City," (hereafter cited as "Guide to New York City's Noise Code" and available at http://www.nyc.gov/html/dep/pdf/noise_code_guide.pdf

[45] Office of the New York State Comptroller, "Noise in New York City Neighborhoods: Assessing Risk in Urban Noise Management," (January 2018), https://www.osc.state.ny.us/reports/health/noise-in-nyc.pdf

[46] Federal Aviation Administration, brochure on "Hearing and Noise in Aviation," available at https://www.faa.gov/pilots/safety/pilotsafetybrochures/media/hearing_brochure.pdf; *see also* Patrick Veillete, AviationWeek.com, "Managing Helicopter Noise," *available at* http://aviationweek.com/bca/managing-helicopter-noise.

majority of the complaints coming from Manhattan.[47] During the past 5-years, 3-1-1 has experienced a *2,329% increase* in noise complaints related to helicopters.[48] In addition to noise complaints, there has been numerous helicopter related accidents over the years.

*Helicopter Incidents*

In April of 1997, a corporate helicopter taking off from a heliport on East 60th Street, crashed into the East River, killing one passenger and injuring three others.[49] Later that same year, a helicopter was forced to make an emergency landing after clipping a Manhattan building, resulting in damage to the helicopter's rotor. In 2007, a tour helicopter had to make an emergency landing in the Hudson River on its emergency pontoons.[50] In 2009, a helicopter operated by Liberty Helicopter Tours collided with a small private plane over the Hudson River resulting in the deaths of all nine individuals aboard both crafts making the incident one of the deadliest helicopter accidents in New York City history.[51] In October of 2011, one personwas killed and four others were injured when a tour helicopter crashed into the East River.[52] In June of 2013, a tour helicopter carrying a family of four and their pilot made an emergency landing in the Hudson River after the helicopter lost power.[53] In March of 2018, another helicopter operated by Liberty Helicopter Tours

---

[47] *See* Patrick McGeehan and Michael Gold, *As Helicopters Fill the Skies, New Yorkers Just Want Some Peace*, N.Y. TIMES, Oct. 28, 2021, *available at* https://www.nytimes.com/2021/10/21/nyregion/nyc-helicopter-noise-complaints.html

[48] *See* Gale Brewer, *Chop This Problem Down to Size,* N.Y. DAILY NEWS, May 5, 2022 *available at* https://www.nydailynews.com/opinion/ny-oped-chop-this-problem-down-to-size-20220505-vdq43wl4cbazjkapllajm274aq-story.html

[49] *See* Matthew Purdy, *Executive Dies and 3 are Hurt in An East River Copter Crash*, N.Y. TIMES, Apr. 16, 1997, *available at* https://www.nytimes.com/1997/04/16/nyregion/executive-dies-and-3-are-hurt-in-an-east-river-copter-crash.html

[50] *See* Manny Fernandez, *Copter Crashes in Hudson but No One is Hurt,* N.Y. TIMES, Jul. 8, 2007, *available at* https://www.nytimes.com/2007/07/08/nyregion/08chopper.html

[51] *See* Patrick McGeehan, *Collision Revives Debate Over Hudson Tours,* N.Y. TIMES, Aug. 10, 2009, *available a*https://www.nytimes.com/2009/08/11/nyregion/11copter.html

[52] *See* Richard Esposito, *et al*., *New York Helicopter Crash: Woman On Birthday Tour Dies in East River*, ABC NEWS, Oct. 4, 2011, *available at* https://abcnews.go.com/US/york-helicopter-crash-woman-celebrating-birthday-family-dead/story?id=14666235

[53] *See* Eric Anderson, *Helicopter Makes Emergency Landing in Hudson,* LONGISLAND.COM, Jun. 30, 2013 *available at* https://www.longisland.com/articles/06-30-13/helicopter-makes-emergency-landing-in-hudson.html

crashed in the East River resulting in the deaths of five passengers on board, however the pilot survived.[54] This accident was the third involving Liberty Helicopter since 2007 and since this incident, the FAA banned flights that use restraints in which passengers cannot easily free themselves.[55]

> The most recent fatal accident occurred on April 10, 2025, involving a helicopter operated by New York Helicopter Charter Inc. that departed from the DMH and experienced a major mechanical failure, crashing into the Hudson River and killing all six people on board. [56]Subsequently, during the investigation into the accident, the FAA issued an "emergency order of suspension" on April 14th, suspending New York Helicopter Charter Inc.'s operations, and the company has since closed. [57]

## III.     LEGISLATIVE ANALYSIS

*Int. No. 26-A*

Subdivision a of section one of this bill would define "covered helicopter" as a rotary-wing aircraft capable of vertical takeoff and landing. The term would not include helicopters with noise levels higher than stage three noise limits in accordance with current Federal Aviation Administration guidance or any successor guidance. The subdivision would also define "heliport" as an area designated for helicopter operators owned or leased by the city. The term would not include any heliport operated by the Port Authority of New York and New Jersey. Further, subdivision a would define "non-essential flight" as flights that are not conducted for purposes of military, emergency services, law enforcement, news gathering or film production.

Subdivision b of section one of the bill would prohibit heliport operators from conducting non-essential flights to and from the heliport, except for emergency circumstances to protect life,

---

[54] *See* Matthew Haag and Al Baker, *East River Helicopter Crash Kills Five in New York, Pilot Survives,* N.Y. TIMES, Mar. 11, 2018 https://www.nytimes.com/2018/03/11/nyregion/new-york-city-helicopter-crash.html
[55] *See* Federal Aviation Administration, "Order 8900.4, Emergency Order of Prohibition Pertaining to 'Doors-Off' Flight Operations for Compensation or Hire" Jul. 8, 2019, *available at* https://www.faa.gov/documentLibrary/media/Order/FAA_Order_8900.4.pdf
[56] AP News at https://apnews.com/article/new-york-helicopter-crash-e0368ea529659ee1513d92dcbf05a28d
[57] FAA EOS - https://www.faa.gov/media/93311

property or public health and safety. Examples of the non-essential flights this ban would include are flights for commuting purposes and sightseeing tours.  This subdivision takes effect December 1, 2029.

Subdivision c of section one ensures that any ban on flights referenced in subdivision b be done in accordance with federal regulations.

Section two of the bill requires the NYCEDC to no later than April 1st of each year, submit to the mayor and the Council a report detailing the percentage of flights by covered helicopters to or from a heliport that were non-essential flights during the previous calendar year. This section takes effect January 1, 2026 and expires and is deemed repealed on December 1, 2029.

This bill was changed from its original form in several respects, most notably it was originally a ban centered on helicopters being electric, while this version of the bill focuses on noise level.

*Int. No. 860-A* Section one of this bill would create an annual community hiring report. Subdivision a of section one would require that before January 31st of each year a local development corporation contracting with the city shall submit to the mayor and the Council, as well as post on its website, a report on community hiring programs to promote employment opportunities for low-income persons or persons living in low-income communities during the fiscal year ending on the 30th of June immediately preceding the date such report is submitted.

Subdivision b of section one would require that the report include: (i) performance metrics related to any goals established for the community hiring program; (ii) an assessment of such performance metrics; and (iii) a description of best efforts, by lessees, developers, or other parties

14

to transactions of the contracted entity who fail to meet such hiring goals, including, information regarding community engagement efforts or hiring sources.

The bill would take effect July 1, 2027.

*Int. No. 861-A*

Section one of the bill defines the terms "community benefit" and "community based organization" ("CBO").

Section two of the bill adds a new indicator to the NYCEDC annual report. These new indicators include: (i) whether during the prior fiscal year NYCEDC has committed to a CBO or other entity to provide community benefits for residents of a community affected by a development project; (ii) the CBO or entity to which EDC has made such commitment; and (iii) a summary of community benefits to be provided.

This law would take effect July 1, 2026.

*Res. No. 85-A*

This resolution calls on the New York State Legislature to pass, and the Governor to sign, A2583, which would establish a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more. According to numerous health publications, exposure to excessive noise produced by frequent overhead flights are associated with a number of health effects, including, but not limited to: (i) high blood pressure; (ii) neuroendocrinological issues; (iii) impaired psychological and cognitive functions; (iv) learned helplessness; (v) poorer long-term memory; and (iv) diminished reading comprehension.[58] Many national and municipal organizations, such as *Stop the Chop NY/NJ*, create public educational campaigns on the dangers

---

[58] National Library of Medicine at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5437751/

to health and the environment that can be caused by non-essential helicopter sightseeing tours and commuter flights that fly over our City.[59] In an effort to mitigate the impact of the non-essential commercial flights on public health and the environment, A.2583, seeks to amend the New York State Tax Law by establishing a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more. Under this new law the tax rate on such aircrafts would be fifty dollars per seat ticket, or two hundred dollars per flight, whichever is greater.[60] Additionally, flight operators who fail to pay this tax due to willful neglect would be subject to a penalty of four hundred percent of the total tax amount due. All funds collected under this new tax would be deposited in New York State's Environmental Protection Fund.[61]

*Res. No. 226-A*

This resolution calls on the New York State Legislature to pass, and the Governor to sign, A.6311 and S.7381, which would prohibit certain non-essential flight operations at municipal heliports and Hudson River Park. Hudson River Park is a 550-acre riverfront park and estuarine sanctuary spanning four miles along the west side of Manhattan, from the northern boundary of Battery Park City in Tribeca to W 59 St. in Hell's Kitchen.[62] Hudson River Park attracts over 17 million visits annually and offers numerous athletic and recreational activities including baseball, basketball, running, cycling and kayaking.[63] In addition to the creation of Hudson River Park, HRPA established a New York State public benefit corporation called the Hudson River Park Trust to continue the planning, construction, management and operation of the park.[64] Among Hudson River Park's management responsibilities is the operation of the frequently trafficked West

---

[59] Stop The Chop NY/NJ at https://stopthechopnynj.org/mission/
[60] NYS Assembly at https://nyassembly.gov/leg/?bn=A07216&term=2023
[61] NYS Assembly at https://nyassembly.gov/leg/?bn=A07216&term=2023
[62] Hudson River Park at  https://hudsonriverpark.org/visit/plan-your-visit/
[63] Hudson River Park at  https://hudsonriverpark.org
[64] Hudson River Park at  https://hudsonriverpark.org

30th Street heliport.[65] Helicopter-related noise complaints to New York City's 3-1-1 increased from approximately 26,000 in 2022 to approximately 59,000 in 2023 with a vast majority of the complaints coming from Manhattan.[66]

A.6311/S.7381 would amend the New York State General Municipal Law by adding restrictions for certain helicopter flight operations including: sightseeing tours over New York City; and flights conducting photography, videography or similar production activities that are non-news related. A.6311/S.7381 would amend the HRPA and prohibit all nonessential flights from the West 30th Street Heliport.

*Res. No. 233-A*

This resolution calls on the United States Federal Aviation Administration to ban all non-essential helicopter travel, including tourist and chartered helicopter flights over New York City. The federal government regulates airspace and the FAA is the entity that is charged with developing airspace regulations.[67] In an attempt to make the airspace over New York City safer, on September 2, 2009, the FAA announced new recommendations that would include new training programs for pilots, air-traffic controllers and tourist helicopter operators, set new mandatory speed limits for these vehicles, and require all pilots to tune into the same radio channel.[68] Despite these proposed safety measures, some public officials felt the recommendations did not go far enough, because air traffic controllers would still not be required to monitor aircraft below 1,000 feet.[69] In April 2010, the NYCEDC released a Helicopter Sightseeing Plan to address the problems

---

[65] Hudson River Park at https://hudsonriverpark.org

[66] *See* Patrick McGeehan and Michael Gold, *As Helicopters Fill the Skies, New Yorkers Just Want Some Peace*, N.Y. TIMES, Oct. 28, 2021, *available at* https://www.nytimes.com/2021/10/21/nyregion/nyc-helicopter-noise-complaints.html

[67] https://www.faa.gov/air_traffic/publications/atpubs/pham_html/chap1_section_2.html#:~:text=The%20navigable%20airspace%20is%20a,aircraft%20and%20its%20efficient%20use.

[68] FAA at https://www.faa.gov/newsroom/faa-moves-accelerate-air-traffic-controller-hiring-enhancing-college-training-program

[69] FAA at www.faa.gov

presented by tourist helicopter flights operating on city-owned property. The Plan eliminated short tours, sightseeing tours over Central Park and the Empire State Building and sightseeing flights over Brooklyn and also improved sightseeing tour routes.[70]

---

[70] Press Release, New York City Economic Development Corporation, New York City Economic Development Corporation Releases New York City Sightseeing Plan (Apr. 30, 2010) *available at* https://us1.campaign-archive.com/?e=366aaabca4&u=1ea59591e8f61f1e32eec4bca&id=a4c61bde40 .

Proposed Int. No. 26-A

By Council Members Farías, Powers, Louis, Restler, Gutiérrez, Hudson, Marte, Hanif, Brewer, Holden, Avilés, Rivera, Abreu, Ossé, Krishnan, De la Rosa, Banks, Caban, Brannan, Schulman, Ung, Gennaro, Feliz, Ayala, Nurse, Bottcher, Brooks-Powers and Carr

A Local Law to amend the administrative code of the city of New York, in relation to regulating helicopter operations at city owned heliports to reduce noise

Be it enacted by the Council as follows:

Section 1. Subchapter 2 of chapter 8 of title 22 of the administrative code of the city of New York is amended by adding a new section 22-828 to read as follows:

§ 22-828 Heliport operations. a. Definitions. For the purposes of this section, the following terms have the following meanings:

Covered helicopter. The term "covered helicopter" means a rotary-wing aircraft capable of vertical takeoff and landing. Such term does not include any helicopter with calculated noise levels, as indicated in appendix 10 or 11 to federal aviation administration advisory circular 36-1H, or any such successor document, that are not higher than the stage 3 noise limits for the maximum takeoff weight of such helicopter set by the federal aviation administration, pursuant to section H36.305 of appendix H or section J36.305 of appendix J to part 36 of title 14 of the code of federal regulations.

Heliport. The term "heliport" means a designated land area used for helicopter operations and any appurtenant areas, including fueling facilities, terminal buildings and maintenance and repair facilities that is on property owned or leased by the city. Such term shall not include any heliport located at an airport operated by the port authority of New York and New Jersey.

Non-essential flight. The term "non-essential flight" means any helicopter flight not conducted by or on behalf of (i) the United States armed forces, (ii) the fire department, (iii)

emergency services, including any air ambulance or medical transport, (iv) the police department or other law enforcement entity, (v) a newsgathering organization, or (vi) film, television or commercial photography production activities conducted for a commercial purpose.

Newsgathering organization. The term "newsgathering organization" means an organization or entity that gathers and reports the news by publishing, broadcasting, or cablecasting articles, commentaries, books, photographs, video, film, or audio by electronic, print, or digital media such as radio, television, newspapers, magazines, wire, books, and the internet.

b. The operator of any heliport shall prohibit covered helicopters from conducting non-essential flights to or from any such heliport, except as otherwise directed by an aviation control tower or air traffic control center or in emergency circumstances where such operation is necessary to protect life, property or the public health and safety.

c. Prior to implementing the restrictions set forth in subdivision b of this section, the airport operator shall follow the procedure outlined in subsection (b) of section 47524 of title 49 of the United States code and subpart C of part 36 of title 14 of the code of federal regulations. Such restrictions shall not be implemented until 180 days after the publishing and public comment period required by such procedure have commenced.

§ 2. a. In each covered contract executed on or after the effective date of this section, the commissioner shall require that, no later than April 1 of each year, the contracted entity submit to the mayor and the speaker of the city council a report detailing the percentage of flights by covered helicopters to or from a heliport that were non-essential flights during the previous calendar year.

b. For purposes of this section, the terms "commissioner," "contracted entity," and "covered contract" have the same meanings as such terms are defined in section 22-821 of the administrative code of the city of New York; and the terms "covered helicopter," "heliport," and

"non-essential flight" have the same meanings as such terms are defined in section 22-828 of such administrative code, as added by section one of this local law.

§ 3. This local law takes effect on January 1, 2026, except that section one of this local law takes effect on December 1, 2029, and section two of this local expires and is deemed repealed on such date.

Session 13
ARP
LS # 12730
4/16/2025

Session 12
ARP
LS # 12730
11/2/2023

**PAGE INTENTIONALLY LEFT BLANK**

Proposed Int. No. 860-A

By Council Members Avilés, Hanif, Cabán, Nurse, Gutiérrez, Banks, Brooks-Powers, Brewer, Ayala, De La Rosa, Marte, Farías, Ossé, Williams, Krishnan, Feliz, Brannan, Narcisse and Louis

A Local Law to amend the administrative code of the city of New York, in relation to requiring a contracted entity to publish an annual report concerning community hiring

Be it enacted by the Council as follows:

Section 1. Subchapter 2 of chapter 8 of title 22 of the administrative code of the city of New York is amended to add a new section 22-829 to read as follows:

§ 22-829 Community hiring annual report.

a. Each covered contract executed on or after the effective date of the local law that added this section shall require a contracted entity to submit to the mayor and the speaker of the council, on or before January 31 of each year, a report about a community hiring program established by such contracted entity to promote employment opportunities for low-income persons or persons living in low-income communities during the fiscal year ending on the thirtieth of June immediately preceding the date such report is submitted. The contracted entity shall also post such report on the website of such contracted entity.

b. The report required pursuant to this section shall include: (i) performance metrics relating to any goals established for such a community hiring program; (ii) an assessment of such performance metrics; and (iii) a description of best efforts, by lessees, developers, or other parties to transactions of the contracted entity who fail to meet such goals, to employ low-income persons

<u>or persons living in low-income communities, including, where applicable, information regarding community engagement efforts or hiring sources.</u>

§ 2. This local law takes effect on July 1, 2027

<u>Session 13</u>

ARP

LS #13621

4/16/25

Proposed Int. No. 861-A


By Council Members Avilés, Hanif, Restler, Cabán, Nurse, Gutiérrez, Banks, Brewer, Brooks-Powers, Ayala, De La Rosa, Marte, Farías, Won, Ossé, Williams, Krishnan, Feliz, Brannan, Narcisse, Louis, Rivera, Joseph and Sanchez


A Local Law to amend the administrative code of the city of New York, in relation to requiring an annual report by a contracted entity to include information about agreements to provide community benefits


Be it enacted by the Council as follows:


Section 1. Section 22-821 of the administrative code of the city of New York, as added by local law number 222 for the year 2017, is amended by adding new definitions of "community-based organization" and "community benefit" in alphabetical order to read as follows:

Community benefit. The term "community benefit" means an initiative, investment or service provided by a person to improve the well-being or quality of life of persons who reside in a neighborhood or area of the city.

Community-based organization. The term "community-based organization" means a nonprofit organization that provides services to persons who reside in a neighborhood or area of the city.

§ 2. Subparagraph (o) of paragraph 2 of subdivision b of section 22-823 of the administrative code of the city of New York, as added by local law number 222 for the year 2017, is amended, and a new subparagraph (p) is added to such paragraph, to read as follows:

(o) A statement of compliance indicating whether, during the reporting year, the contracted entity has reduced, cancelled or recaptured assistance provided to a person in connection with such

25

project, and, if so, the total amount of such reductions, cancellations or recaptures, and any penalty assessed and the reasons therefor; and

(p) Whether, during such fiscal year, the contracted entity has committed in writing to a community-based organization or other person to provide community benefits for residents of a neighborhood or area of the city affected by the project, and if so:

(1) The date of such written commitment;

(2) The community-based organization or other person to which the contracted entity has made such commitment; and

(3) A summary of the community benefits the contracted entity has committed to provide.

§ 2. This local law takes effect July 1, 2026

Session 12

ARP

LS #13622

4/12/25

Res. No. 85-A

Resolution calling on the New York State Legislature to pass, and the Governor to sign, A.2583, which would establish a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more.

By Council Members Gennaro, Farías, Brewer, Louis, Holden, Hudson and Cabán

Whereas, There are thousands of commercial helicopter flights over New York City each month; and

Whereas, Helicopter-related noise complaints to New York City's 3-1-1 increased from approximately 26,000 in 2022 to approximately 59,000 in 2023 with a vast majority of the complaints coming from Manhattan; and

Whereas, According to numerous health publications, exposure to excessive noise produced by frequent overhead flights are associated with a number of health effects, including, but not limited to: (i) high blood pressure; (ii) neuroendocrinological issues; (iii) impaired psychological and cognitive functions; (iv) learned helplessness; (v) poorer long-term memory; and (iv) diminished reading comprehension; and

Whereas, Many national and municipal organizations, such as *Stop the Chop NY/NJ*, create public educational campaigns on the dangers to health and the environment that can be caused by non-essential helicopter sightseeing tours and commuter flights that fly over our City; and

Whereas, In an effort to mitigate the impact of the non-essential commercial flights on public health and the environment, A.2583, which was introduced by New York State Assemblymember Robert C. Carroll, seeks to amend the New York State Tax Law by establishing

a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more; and

Whereas, Pursuant to A.2583, the tax rate on such aircrafts would be fifty dollars per seat ticket, or two hundred dollars per flight, whichever is greater; and

Whereas, Under A.2583, flight operators who fail to pay this tax due to willful neglect would subject to a penalty of four hundred percent of the total tax amount due; and

Whereas, A.2583, would mandate that all funds collected under this new tax be deposited in New York State's Environmental Protection Fund; and

Whereas, Enacting A.2583 would help reduce noise pollution from the plethora of non-essential aircrafts that affect the millions of residents in our great City; now, therefore, be it

Resolved, That the Council of the City of New York calls on the New York State Legislature to pass, and the Governor to sign, A.2583, which would establish a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more.

WJH
LS 15031
4/21/25

Res. No. 226-A

Resolution calling on the New York State Legislature to pass, and the Governor to sign, A.6311 and S.7381, which would prohibit certain non-essential flight operations at municipal heliports and Hudson River Park.

By Council Members Brewer, Holden, Avilés, Rivera, Hudson, Louis, Cabán, Restler and Farías

Whereas, New York City is one of the most densely populated cities in the world; and

Whereas, The City currently operates two municipal heliports; the Downtown Skyport - formally the Downtown Manhattan Heliport – and the East 34th Street Heliport; and

Whereas, Additionally, there is the West 30th Street heliport located in Hudson River Park that is governed by New York State; and

Whereas, There are thousands of commercial helicopter flights over the City each month; and

Whereas, Over the past 20 years there have been numerous notable accidents over the City's airspace, raising congestion and safety issues; and

Whereas, The most recent fatal accident occurred on April 10, 2025, involving a helicopter operated by New York Helicopter Charter Inc. that departed from the Downtown Manhattan Heliport and experienced a major mechanical failure, crashing into the Hudson River and killing all six people on board; and

Whereas, Subsequently, during the investigation into the accident, the FAA issued an "emergency order of suspension" on April 14th, suspending New York Helicopter Charter Inc.'s operations, and the company closed; and

Whereas, In May of 2019, a charter helicopter crashed into the Hudson River while the pilot, who suffered a hand injury, was moving the aircraft from the fueling area to the customer section of the Hudson River Park's West 30th Street Heliport; and

Whereas, These accidents are reminders of the dangers associated with helicopters in an urban setting; and

Whereas, In 1998, the New York State legislature passed and then-Governor Pataki signed the Hudson River Park Act ("HRPA"), which formally designated parkland along the City's westside; and

Whereas, Hudson River Park is a 550-acre riverfront park and estuarine sanctuary spanning four miles along the west side of Manhattan, from the northern boundary of Battery Park City in Tribeca to W 59 St. in Hell's Kitchen; and

Whereas, Hudson River Park attracts over 17 million visits annually and offers numerous athletic and recreational activities including baseball, basketball, running, cycling and kayaking; and

Whereas, In addition to the creation of Hudson River Park, HRPA established a New York State public benefit corporation called the Hudson River Park Trust to continue the planning, construction, management and operation of the park; and

Whereas, Among Hudson River Park's management responsibilities is the operation of the frequently trafficked West 30th Street heliport; and

Whereas, Helicopter-related noise complaints to New York City's 3-1-1 increased from approximately 26,000 in 2022 to approximately 59,000 in 2023 with a vast majority of the complaints coming from Manhattan; and

30

Whereas, New York City residents are exposed to noise and pollutants from over a thousand monthly helicopter flights; and

Whereas, According to the Natural Resources Defense Council's study "Needless Noise: The Negative Impacts of Helicopters Traffic in New York City and the Tri-State Region," exposure to frequent overhead flights are associated with a number of health effects in children, including high blood pressure, neuroendocrinological issues, impaired psychological and cognitive functions, learned helplessness, poorer long-term memory and diminished reading comprehension; and

Whereas, Helicopters emit air pollutants such as particulate matter, nitrogen oxide and formaldehyde, which are known to cause asthma, cancer and other illnesses; and

Whereas, Parks and heliports, especially one that is heavily trafficked as the West 30th Street heliport, are not meant for co-location; and

Whereas, In an effort to make New York City's skies safer, New York State Assemblymember Tony Simone and New York State Senator Brad Hoylman-Sigal introduced A.6311 and S.7381, respectively, which seek to prohibit certain non-essential flight operations at municipal heliports and Hudson River Park; and

Whereas, A.6311/S.7381 would amend the New York State General Municipal Law by adding restrictions for certain helicopter flight operations including: sightseeing tours over New York City; and flights conducting photography, videography or similar production activities that are non-news related; and

Whereas, A.6311/S.7381 would amend the HRPA and prohibit all nonessential flights from the West 30th Street Heliport; now, therefore be it

Resolved, That the Council of the City of New York calls on the New York State Legislature to pass, and the Governor to sign, A.6311 and S.7381, which would prohibit certain non-essential flight operations at municipal heliports and Hudson River Park.

WJH
LS 9349
4/21/25

Res. No. 233-A

Resolution calling upon the United States Federal Aviation Administration to ban all non-essential helicopter travel, including tourist and chartered helicopter flights over New York City.

By Council Members Brewer, Hanif, Won, Holden, Rivera, Louis, Hudson, Cabán, Restler and Farías (by request of the Manhattan and Brooklyn Borough Presidents)

Whereas, There are thousands of commercial helicopter flights over the City of New York each month; and

Whereas, There have been several notable accidents over the City's airspace, raising congestion and safety issues; and

Whereas, In May of 2019, a charter helicopter crashed into the Hudson River while the pilot, who suffered a hand injury, was moving the aircraft from the fueling area to the customer section of the West 30th Street Heliport; and

Whereas, A month later in June of 2019, a helicopter crashed on the roof of a building in Manhattan, killing the pilot who was the sole person in the aircraft; and

Whereas, Before these incidents, there were several other notable accidents over the City's airspace; and

Whereas, In April of 1997, a corporate helicopter taking off from a heliport on East 60th Street, crashed into the East River, killing one passenger and injuring three others; and

Whereas, Later that same year, a helicopter was forced to make an emergency landing after clipping a Manhattan building, resulting in damage to the helicopter's rotor; and

Whereas, In 2007, a tour helicopter had to make an emergency landing in the Hudson River on its emergency pontoons; and

Whereas, On August 8, 2009, a helicopter operated by Liberty Helicopter Tours collided with a small private plane over the Hudson River resulting in the deaths of all nine individuals

aboard both crafts making the incident one of the deadliest helicopter accidents in New York City history; and

Whereas, In October of 2011, a woman was killed and four others were injured when a tour helicopter crashed into the East River; and

Whereas, In June of 2013, a tour helicopter carrying a family of four and their pilot made an emergency landing in the Hudson River after the helicopter lost power; and

Whereas, In March of 2018, another helicopter operated by Liberty Helicopter Tours crashed in the East River resulting in the deaths of five passengers on board, however the pilot survived; and

Whereas, This accident was the third involving Liberty Helicopter since 2007 and since this incident, the United States Federal Aviation Administration ("FAA") banned flights that use restraints in which passengers cannot easily free themselves; and

Whereas, The most recent fatal accident occurred on April 10, 2025, where a helicopter operated by New York Helicopter Charter Inc. that departed from the Downtown Manhattan Heliport experienced a major mechanical failure and crashed into the Hudson River, killing all 6 people on board; and

Whereas, Subsequently, during the investigation into the accident, the FAA issued an "emergency order of suspension" on April 14th, suspending New York Helicopter Charter Inc.'s operations and the company closed; and

Whereas, These accidents are reminders of the dangers associated with helicopters in an urban setting; and

Whereas, According to the Natural Resources Defense Council's 1999 study "Needless Noise: The Negative Impacts of Helicopter Traffic in New York City and the Tri-State Region,"

exposure to frequent overhead flights are associated with a number of health effects in children, including high blood pressure, neuroendocrinological issues, impaired psychological and cognitive functions, learned helplessness, poorer long-term memory and diminished reading comprehension; and

Whereas, Helicopters emit air pollutants such as particulate matter, nitrogen oxide and formaldehyde, which are known to cause asthma, cancer and other illnesses; and

Whereas, The federal government regulates airspace and the FAA is the entity that is charged with developing airspace regulations; and

Whereas, In an attempt to make the airspace over New York City safer, on September 2, 2009, the FAA announced new recommendations that would include new training programs for pilots, air-traffic controllers and tourist helicopter operators, set new mandatory speed limits for these vehicles, and require all pilots to tune into the same radio channel; and

Whereas, Despite these proposed safety measures, some public officials felt the recommendations did not go far enough, because air traffic controllers would still not be required to monitor aircraft below 1,000 feet; and

Whereas, In April 2010, the New York City Economic Development Corporation ("EDC") released a Helicopter Sightseeing Plan (the Plan) to address the problems presented by tourist helicopter flights operating on city-owned property; and

Whereas, The Plan eliminated short tours, sightseeing tours over Central Park and the Empire State Building and sightseeing flights over Brooklyn; and

Whereas, The Plan also improved sightseeing tour routes and added an enhanced 3-1-1 protocol directing helicopter complaints to 3-1-1 representatives for input, improving EDC's

ability to track complaints and allowing the agency to report data on noise complaints more effectively; and

Whereas, Helicopter-related noise complaints to New York City's 3-1-1 increased from approximately 26,000 in 2022 to approximately 59,000 in 2023 with a vast majority of the complaints coming from Manhattan; and

Whereas, However, the airspace above New York City remains dangerous for these types of vehicles; and

Whereas, A great deal of public outcry for relief from harms caused by helicopter tours in New York City still exists, including from a wide range of public officials; now, therefore, be it

Resolved, That the Council of the City of New York calls upon the United States Federal Aviation Administration to ban all non-essential helicopter travel, including tourist and chartered helicopter flights over New York City.

WJH
LS #282
04/21/2025