No. 25-CV-4682 (NGG)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EASTERN REGION HELICOPTER COUNCIL, VERTICAL AVIATION INTERNATIONAL, and VICTORIA SESKIN,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

---

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Aimee Lulich, Nathan Taylor, Owanaemi Briggs*
*Tel:  (212) 356-2369*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

STATEMENT OF FACTS ......................................................................................................... 2

STANDARDS OF REVIEW ...................................................................................................... 5

      A.   Rule 12(b)(6) Standard ................................................................................................ 5

      B.   Standing and Rule 12(b)(1) Standard ........................................................................ 6

ARGUMENT

   POINT I

      PLAINTIFFS' PREEMPTION CLAIMS FAIL ...................................................... 7

      A.   Local Law 64 is not pre-empted by ANCA ............................................................ 7

      B.   Local Law 64 is not pre-empted by the FAA's authority to regulate safety ............................................................................................................ 14

      C.   Plaintiffs' argument that Local Law 64 violations 49 U.S.C. § 40103(e) fails ..................................................................................... 16

   POINT II

      PLAINTIFFS' SEQRA CLAIM FAILS FOR LACK OF STANDING ............................................................................................................. 19

CONCLUSION ........................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                **Pages**

*41 N. 73 W., Inc. v. U.S. D.O.T.*,
    408 Fed. App'x 393, 396 (2d Cir. 2010)..................................................................................18

*Air Transp. Ass'n of Am. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008)................................................................................................18

*Arrow Air, Inc. v. Port Auth. of N.Y. & N.J.*,
    602 F. Supp. 314, 318-19 (S.D.N.Y. 1985) .......................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................5

*Bowling Green & Warren Cty Airport Bd. v. Martin Land Dev't. Co.*,
    561 F.3d 556, 560 (6th Cir. 2009) ....................................................................................17

*British Airways Bd. v. Port Auth. of N.Y. & N.J.*,
    564 F.2d 1002, 1005 (2d Cir. 1977)...................................................................................8

*British Airways Bd. V. Port Auth. of N.Y.*,
    558 F.2d 75, 85 (2d Cir. 1977)..........................................................................................14

*Carney v. Adams*,
    141 S. Ct. 493, 498 (2020)......................................................................................6, 21, 25

*City of Burbank v. Lockheed Air Terminal, Inc*,
    411 U.S. 624, 36 L. Ed. 2d 547, 93 S. Ct. 1854 (1973)..................................................9, 10

*Davidson v. Flynn*,
    32 F.3d 27 (2d Cir. 1994) ...................................................................................................5

*English v. Gen. Elec. Co.*,
    496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990) ........................................................7, 11

*Fawemimo v. Am. Airlines, Inc.*,
    751 Fed. Appx. 16, 19 (2d Cir. 2018)...............................................................................15

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167, 191 (2000)................................................................................................6, 11

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
    505 U.S. 88, 107 (1992).......................................................................................................8

*Gen. Media Commc'ns, Inc. v. Cohen,*
   131 F.3d 273, 283 n.13 (2d Cir. 1997) .................................................................16

*Goodspeed Airport, LLC v. Haddam Inland Wetlands & Watercourses Comm'n,*
   634 F.3d 206, 211 (2d Cir. 2011).........................................................................15

*Grandon v. Merrill Lynch & Co.,*
   147 F.3d 184 (2d Cir. 1988)...................................................................................5

*Helicopter Ass'n Int'l v. Hawai'i,*
   2024 U.S. Dist. LEXIS 129041, at *12 (D. Haw. July 22, 2024)...............................8

*Hollingsworth v. Perry,*
   570 U.S. 693, 706 (2013).......................................................................................6

*Jones v. Goodrich Pump & Engine Control Systems,*
   86 F.4th 1010, 1017 (2d Cir. 2023) ...................................................................8, 15

*Kramer v. HTX Helicopters,*
   2023 R.I. Super. LEXIS 41, at *36-37 (Supr. Ct. June 12, 2023) ...........................12

*Luckett v. Bure,*
   290 F.3d 493, 496-97 (2d Cir. 2002) ..................................................................7, 20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560-61 (1992) ......................................................................6, 19, 21, 25

*Madonna v. United States,*
   878 F.2d 62, 65 (2d Cir. 1989)...............................................................................5

*Maimonides Med. Ctr. v. United States,*
   809 F.3d 85, 92 (2d Cir. 2015)..............................................................................14

*Makarova v. U.S.,*
   201 F.3d 110, 113 (2d Cir. 2000).........................................................................6, 7

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248, 260, (1993).....................................................................................14

*Montauk-Caribbean Airways, Inc., v. Hope,*
   784 F.2d 91 (2d Cir. 1986)...................................................................................17

*Moose Lodge No. 107 v. Irvis,*
   407 U.S. 163, 166, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972)...................................24

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown,*
   612 F.3d 97, 104 (2d Cir. 2010).............................................................................7

iv

*Nat'l Federation for the Blind v. United Airlines,*
  813 F.3d 718, 734 (9th Cir. 2016) ................................................................8

*Nat'l Helicopter Corp. of Am. v. City of N.Y.,*
  137 F.3d 81, 88 (2d Cir. 1998)....................................................................9

*Palm Beach Cty. v. Fed. Aviation Adm'r,*
  53 F.4th 1318, 1336 (11th Cir. 2022) ....................................................12, 13

*Save the Pine Bush, Inc. v. Common Council of City of Albany,*
  13 N.Y.3d 297, 305 (2009) ....................................................................19, 22

*Soc'y of Plastics Indus. v. Cnty. of Suffolk,*
  77 N.Y.2d 761 (1991) ..............................................................................19

*Tweed-New Haven Airport Auth. v. Tong,*
  930 F.3d 65, 74 (2d Cir. 2019)....................................................................8

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792, 797 (2021)..........................................................................6

*Western Air Lines v. Port Authority,*
  817 F.2d 222 (2d Cir. 1987)......................................................................18

## **Statutes**

14 C.F.R. pt. 16................................................................................................18

14 C.F.R §§ 161 ..........................................................................................1, 3

14 C.F.R §§ 161.201 ..............................................................................9, 10, 12

14 C.F.R. pt. 36........................................................................................1, 4, 18

49 U.S.C § 45724.........................................................................................1, 8

Ad. Code § 22-828..............................................................................1, 3, 4, 12, 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

EASTERN REGION HELICOPTER COUNCIL,
VERTICAL AVIATION INTERNATIONAL, and
VICTORIA SESKIN,

                                     Plaintiffs,

                 - against -

THE CITY OF NEW YORK,

                                     Defendant.

25-CV-4682 (NGG)

------------------------------------------------------------------------------- x

         Defendant City of New York ("City"), by its attorney, Steven Banks, Corporation

Counsel of the City of New York, respectfully submits this memorandum of law in support of its

motion to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal

Rules of Civil Procedure ("FRCP").

         Plaintiffs challenge New York City Local Law 64 of 2025 ("Local Law 64"),[1]

which prohibits certain non-essential helicopter operations that exceed certain federally-

established noise thresholds from two City-owned Manhattan heliports following a review by the

airport operator in compliance with 49 U.S.C. § 47524(b) and 14 C.F.R. Pt. 36(c) (2024). *See*

Local Law No. 64, annexed to the Declaration of Aimee K. Lulich ("Lulich Decl.") as Exhibit

("Ex.") A;[2] *see also* New York City Administrative Code ("Ad. Code") § 22-828. Plaintiffs argue

that Local Law 64 is preempted by the Airport Noise Capacity Act ("ANCA"), the Federal

---

[1] Plaintiffs refer to the challenged law as "Res. 26-A." However, the law described in the Complaint is Local Law 64, which was called Introduction No. 26-A ("Int. No. 26-A") while it was pending before New York City Council ("City Council").

[2] The legislative record for Local Law 64 is available on legistar at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=6509352&GUID=301F08C1-50C3-421E-AB4F-169487576D87&Options=ID%7cText%7c&Search=64 (last visited Feb. 24, 2026).

Aviation Administration's ("FAA") authority to regulate air safety, and the Airport and Airway Improvement Act of 1982 ("AAIA"), and raise a claim pursuant to New York State Environmental Quality Review Act ("SEQRA") alleging that the requisite environmental review was not completed prior to passing the law. As described below, each of these claims fail. Local Law 64 in all ways complies with ANCA and requires that the heliport operators comply with ANCA prior to the law going into effect. Further, Local Law 64 is a noise regulation and thus is not preempted by any grant of authority to regulate air safety. And Plaintiffs' third "preemption" claim is actually a claim that Local Law 64 violates a portion of the AAIA, for which there is no private right of action. Finally, Plaintiffs lack standing to proceed in a SEQRA claim. Accordingly, this matter should be dismissed for failure to state a claim and lack of standing.

## STATEMENT OF FACTS

Prior to passage, Local Law 64 was introduced as "Int. 26-A"[3] and described as "[a] Local Law to amend the administrative code of the city of New York, in relation to regulating helicopter operations at city owned heliports to reduce noise." *See* Proposed Int. No. 26-A, Lulich Decl., Ex. B; Plain Language Summary for Int. No. 26-A, Lulich Decl., Ex. C. Int. No. 26-A was referred to the Committee on Economic Development, and a Committee Report regarding Int. No. 26-A was issued on April 23, 2025. *See* Committee Report, Lulich Decl., Ex. D. The Committee held hearing on April 24, 2025 at which the Committee voted to advance Int. No. 26-A. *See* Hearing Transcript, Lulich Decl., Ex. E. Int. No. 26-A was passed by City Council on April 24, 2025, and became Local Law 64 on May 27, 2025 by operation of law. Ex. A. *See* Stated Meeting Transcript, Lulich Decl., Ex. F.

---

[3] Int. 26-A should be differentiated from Introduction No. 26, a proposal to restrict non-essential helicopter operations at city heliports to electric helicopters, which is not the purpose or subject of Int. 26-A.

2

Local Law 64 applies to heliports on property owned by the City and not located at an airport operated by the Port Authority of New York and New Jersey ("Port Authority"). Ad. Code § 22-828(1)(a).  Specifically, the City owns two such heliports, both of which are managed by the New York City Economic Development Corporation ("EDC") and operated by private operators pursuant to contracts with EDC. *See* EDC Website, Transportation, available at https://edc.nyc/industry/transportation (last visited Feb. 19, 2026). The Downtown Skyport is located at Pier 6 on the East River and is currently operated by Downtown Skyport. *Id.* The East 34th Street Heliport is located on the East River Greenway and is currently operated by Atlantic Aviation. *Id.*

Between January 1, 2026 and December 1, 2029, Local Law 64 requires EDC to submit yearly reports to the Mayor and City Council "detailing the percentage of flights by covered helicopters to or from a heliport that were non-essential flights during the previous calendar year." *See* Ad. Code §§ 22-828(2) & 22-828(3).  Further, prior to implementing any restriction on nonessential flights, Local Law 64 directs the airport operator to follow the procedure set forth in 49 U.S.C. § 47524(b) (the procedures required under ANCA prior to restricting stage 2 aircraft operations) and 14 C.F.R. pt. 161(c) (2024) (the notice and review requirements for airport operators proposing Stage 2 aircraft noise and access restrictions). *See* Ad. Code § 22-828(1)(c).

Local Law 64 defines non-essential flights as:

> [A]ny helicopter flight not conducted by or on behalf of (i) the United States armed forces, (ii) the fire department, (iii) emergency services, including any air ambulance or medical transport, (iv) the police department or other law enforcement entity, (v) a newsgathering organization, or (vi) film, television or commercial photography production activities conducted for a commercial purpose.

*Id.*  In practice, the non-essential flights currently using the two heliports are charter flights for

3

commuting purposes or sightseeing flights.  *See* Committee Report, Lulich Decl., Ex. B at 8-9 and 14.

Thereafter, following compliance with federal law as set forth in Ad. Code § 22-828(1)(c) and not earlier than December 1, 2029, Local Law 64 directs:

> The operator of any heliport shall prohibit covered helicopters from conducting non-essential flights to or from any such heliport, except as otherwise directed by an aviation control tower or air traffic control center or in emergency circumstances where such operation is necessary to protect life, property or the public health and safety.

Ad. Code § 22-828(1)(b).  A covered helicopter is a "rotary-wing aircraft capable of vertical takeoff and landing" with calculated noise levels higher than the stage 3 noise limits set by the Federal Aviation Administration ("FAA") in 14 C.F.R. pt. 36, app'x H § H36.305 or app'x J § J36.305. Ad. Code § 22-828(1)(a).  Notably, Local Law 64 does not require that a helicopter be certified by the FAA as a stage 3 helicopter; rather, helicopters with calculated noise levels that comply with the FAA's stage 3 noise limits are not prohibited by Local Law 64.  *Id.*

The calculated noise levels for U.S. Certificated helicopters has been published in an FAA Advisory Circular entitled Noise Levels for U.S. Certificated and Foreign Aircraft containing the.  *See* AC No. 36-1H App. 10 & 11 (May 25, 2012), Lulich Decl., Ex. G.  It contains the Aircraft Noise Data for U.S. Certificated Helicopters with the calculated flyover, takeoff, and approach noise levels for such helicopters by manufacturer, model, and year.  *Id.*

Stage 3 noise limits for helicopters are set forth in appendix H for helicopters over 7,000 pounds, or appendix J for helicopters up to 7,000 pounds.  Per 14 C.F.R. 36.1(h)(6):

> A "Stage 3 helicopter" means a helicopter that has been shown under this part to comply with the Stage 3 noise limits (including applicable tradeoffs) prescribed in section H36.305 of appendix H of this part, or a helicopter that has been shown under this part to comply

4

with the Stage 3 noise limit prescribed in section J36.305 of appendix J of this part.

Section H36.305(a)(2) directs that a stage 3 helicopter, depending upon its weight, must not exceed 86-106 Effective Perceived Noise in Decibels ("EPNdB") for takeoff (§ H36.305(a)(2)(i)); 84-104 EPNdB for flyover (§ H36.305(a)(2)(ii)); and 89-109 EPNdB for approach ((§ H36.305(a)(2)(iii)).  For helicopters under 7,000 pounds, Appendix J states:

> Stage 3 noise limit is constant at 82 decibels SEL for helicopters up to 3,125 pounds (1,417 kg) maximum certificated takeoff weight (mass) and increases linearly with the logarithm of the helicopter weight at a rate of 3.0 decibels SEL per the doubling of weight thereafter.

§ J36.305(a)(2). Thus, the specific noise limit for any particular aircraft to comply with stage 3 requirements is calculated based upon that aircraft's weight.

Accordingly, following compliance with federal law governing noise restrictions, Local Law 64 would begin to prohibit non-essential flights by helicopters that exceed the federal noise limits for stage 3 aircraft, regardless of the stage at which the helicopter is certified by the FAA, after December 1, 2029 at Downtown Skyport and East 34th Street Heliport. Ex. A.

## STANDARD OF REVIEW

### A.  Rule 12(b)(6) Standard

When deciding a motion to dismiss pursuant to FRCP Rule 12(b)(6), the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1988); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (citing *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)). A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The

5

plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted). The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss. Id. First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations… plausibly give rise to an entitlement to relief." *Id.* at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.")

### B. Standing and Rule 12(b)(1) Standard

To establish Article III standing,[4] a plaintiff must show that she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). The injury in fact must be "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. A "conjectural or hypothetical" injury is not sufficient, nor is a "grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (*citing Lujan*, 504 U.S. at 561; *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)). The burden of proving each element of standing rests on the Plaintiff. *Lujan*, 504 U.S. at 561; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167,

---

[4] The Standing and Rule 12(b)(1) standard are raised only in relation to the SEQRA claim in Point II.

191 (2000).  A challenge to a plaintiff's constitutional standing to sue amounts to an objection to the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See, e.g., Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a motion under Rule 12(b)(1), the court may consider evidence from outside the pleadings. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Makarova*, 201 F.2d at 113.  The plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence.  *Luckett*, 290 F.3d at 497.

## ARGUMENT

### POINT I

### PLAINTIFFS' PREEMPTION CLAIMS FAIL

#### A.  Local Law 64 is not pre-empted by ANCA

Plaintiffs' first cause of action seeks a declaratory judgment that Local Law 64 is preempted by the Airport Noise and Capacity Act ("ANCA"). Beginning with the first factual allegation, Plaintiffs' center this action upon a theory of field preemption, arguing that this case concerns a "blatant infringement of the federal government's exclusive authority to regulate the operation of aircraft at City-owned or City-leased property." Compl., § 1.  Field preemption occurs "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law." *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010); see also *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990).  Plaintiffs also advance theories of conflict preemption, by alleging that Local Law 64 fails to comply "with ANCA and its implementing regulations and is thus preempted." *See* Compl., ¶ 195.  To succeed in a claim of conflict preemption, a plaintiff must show that the local law "conflicts with federal law such that it is impossible for a party to comply with both" or that the local law "is an obstacle to the achievement of federal objectives." *N.Y. SMSA Ltd. P'ship, 612 F.3d at 104.*  Here, Plaintiffs' claims must fail as they are unsupported by, and largely

7

contradict, the plain language of Local Law 64, ANCA, and its accompanying regulations. Contrary to Plaintiffs' assertions, Local Law 64 was drafted pursuant to the City's Congressionally-delegated proprietary authority and comports with the requirements set forth in ANCA. Accordingly, Plaintiffs fail to state a claim of field or conflict preemption.

1.    Plaintiffs Fail to Plead Facts Sufficient to Demonstrate Local Law 64 is Field Preempted

In order to establish field preemption, the essential inquiry is "whether the density and detail of the federal regulation merits the inference that any state regulation within the same field will necessarily interfere with the federal scheme." *Helicopter Ass'n Int'l v. Hawai'i*, No. 23-CV-00083(KJM), 2024 U.S. Dist. LEXIS 129041, at \*12 (D. Haw. July 22, 2024) (quoting Nat'l Federation for the Blind v. United Airlines, 813 F.3d 718, 734 (9th Cir. 2016); see also *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 74 (2d Cir. 2019) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992), "the key question is thus at what point the state regulation sufficiently interferes with federal regulation."). This analysis requires a two-prong approach: first, determining the pertinent regulatory field; and second, "surveying the scope of federal regulation within that field." *Id.*; see also *Jones v. Goodrich Pump & Engine Control Systems*, 86 F.4th 1010, 1017 (2d Cir. 2023) (citing "twofold" inquiry determining: (1) if challenged law falls within the relevant field; and (2) whether the state regulation sufficiently interferes with federal regulation.)

The pertinent regulatory field here is helicopter noise regulation, as evidenced by the express language and legislative purpose of Local Law 64 and ANCA. *See* Local Law 64, Ex. A, *see also* Proposed Int. No. 26-A, Ex. B, & Plain Language Summary of Int. 26-A, Ex. C; *see also* 49 U.S.C § 45724. Relatedly, Plaintiffs acknowledge that Local Law 64 "is a noise and access restriction that falls within the auspices of ANCA." Compl. ¶ 159.

With respect to the second prong of the field preemption inquiry, the "Supreme

8

Court has refrained from holding that Congress has occupied the field of noise regulation to the exclusion of airport proprietors." *British Airways Bd. V. Port Auth. of N.Y.*, 558 F.2d 75, 85 (2d Cir. 1977) (citing *Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 635, n. 14 (1973)). Moreover, the Second Circuit has found that "Congress has consciously delegated to state and municipal proprietors the authority to adopt rational regulations with respect to the permissible level of noise created by aircraft using their airports in order to protect the local population." *See Nat'l Helicopter Corp. of Am. v. City of N.Y.,* 137 F.3d 81, 88 (2d Cir. 1998). As such, Court in *Nat'l Helicopter* upheld noise conditions establishing weekday and weekend heliport curfews, phasing out weekend operations entirely, and reducing heliport operations by a minimum of 47 percent, as valid exercises of the City's proprietary authority. *Id*. at 90-91. The plain language of ANCA encapsulates this balance between local and federal authority by expressly permitting airport proprietors to impose noise restrictions subject to ANCA's procedural requirements. *See* 49 U.S.C § 47524; 14 C.F.R §§ 161.201-161.5. As such, the scope of federal regulation within the field of noise regulation is not so pervasive as to preclude local action pursuant to a municipality's proprietary authority.

Given this, Plaintiffs fail to plead facts sufficient to demonstrate that the field of noise regulation is exclusively occupied by the federal government. Plaintiffs initially advance theories of field preemption through unsupported allegations including that "ANCA has affirmatively preempted local laws that impose restrictions on aircraft noise levels and access to airports." Compl.¶ 7. Plaintiffs cite to 49 U.S.C § 47524(c)(1)(A) and (c)(1)(D) in support of this claim, however the cited provisions do not reflect any preemptive effect. 49 U.S.C § 47524(c)(1)(A), and (c)(1)(D) merely list two of the stage 3 aircraft restrictions subject to ANCA's notice, review, and approval requirements. Moreover, Local Law 64 does not prohibit or otherwise

9

impact the use of stage 3 aircrafts, and therefore does not implement any stage 3 restrictions. Thus, in the absence of any regulation of stage 3 helicopters, the cited provisions would not apply here even if they had preemptive effect. Plaintiffs also wrongly allege that "[u]nder ANCA noise abatement policy is the exclusive province of the FAA." Compl.¶ 10.  Plaintiffs do not and cannot cite to any provision of ANCA in support of this allegation, as the statute makes no such claim and permits local actors to implement noise restrictions. *See* 49 U.S.C § 47524; 14 C.F.R §§ 161.201-161.5.

In further support of their conflict preemption argument, Plaintiffs cite to *City of Burbank,* 411 U.S. 6 at 633 (1973), to suggest that the entire field of aircraft noise is federally preempted. Compl.,¶ 131. However, *Burbank* pertains to federal preemption of state and local police power and does not address "what limits, if any, apply to a municipality as a proprietor." *Burbank*, 411 U.S at 635 n14.  Courts in this Circuit have found "nothing in *City of Burbank v. Lockheed Air Terminal, Inc*, 411 U.S. 624, 36 L. Ed. 2d 547, 93 S. Ct. 1854 (1973), casts any doubt on the authority of an airport proprietor to regulate aircraft noise." *Arrow Air, Inc. v. Port Auth. of N.Y. & N.J.*, 602 F. Supp. 314, 318-19 (S.D.N.Y. 1985).

Plaintiffs have also failed to plead facts sufficient to demonstrate that Local Law 64 does not constitute a valid exercise of the City's proprietary authority set forth in 49 U.S.C § 47524. *See also* 14 C.F.R §§ 161.201-161.5. Plaintiffs undermine their field preemption theory by recognizing the "complementary, though more limited, role for local airport proprietors in regulating noise levels at their airports." Compl., ¶ 132. Indeed, Plaintiffs go so far as to assert that the City is an airport proprietor and must undertake certain responsibilities pursuant to that authority, evidencing that the City has a proprietor's role in noise regulation. *See Compl.,* ¶¶ 25, 179.

10

In light of the aforementioned failure to state a claim, Plaintiffs claims that Local Law 64 is preempted under the doctrine of field preemption must fail.

2.      Plaintiffs Fail to Plead Facts Sufficient to Demonstrate Local Law 64 is Conflict Preempted

In further support of their preemption claim, Plaintiffs argue that Local Law 64 does not fall within the proprietor's exception, that it defines "airport operator" in a way that conflicts with ANCA's definition of "airport operator," and that Local Law 64 fails to comply with ANCA's procedural requirements for localities to implement noise restrictions. Compl., ¶¶ 29, 134-136, 162, 171, 175. All of these arguments fail, and Plaintiffs cannot support a claim of conflict preemption.

Courts have found conflict preemption "where it is impossible for a private party to comply with both state and federal requirements…or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (1990) (internal citations omitted). Here, Plaintiffs rely on numerous conclusory allegations, which are unsupported by the plain language of Local Law 64, and an inapplicable prior decision, to argue that the local law violates ANCA. Plaintiffs fail to support a conflict preemption claim because, far from making it impossible to comply with both ANCA and Local Law 64, Local Law 64 requires compliance with ANCA.

First, Plaintiffs cite to *Friends of the E. Hampton Airport v Town of East Hampton*, 841 F.3d 133 (2d Cir. 2016), to argue that Local Law 64 violates ANCA and therefore cannot fall under proprietor's exception. Compl. ¶¶ 29, 134-36. However, Plaintiffs' arguments are unsupported by the plain language and legislative intent of both Local Law 64 and ANCA. A plain reading of Local Law 64 demonstrates that it was drafted to comply—not conflict—with ANCA, as it explicitly incorporates the procedural requirements mandated under ANCA. Ad. Code § 22-828(b). Further, *Friends of the E. Hampton Airport* is inapposite to the instant action.

11

*Friends of the E. Hampton Airport* can be distinguished from the instant action because Local Law 63 requires compliance with ANCA's noise regulations prior to any implementation of noise restrictions. *See* Ad. Code § 22-828. As described in *Friends of E. Hampton*, pursuant to ANCA's accompanying regulations, an airport operator may not *implement* a restriction without first completing the required notice and analysis. *See* 14 C.F.R §§ 161.201-161.5. ANCA's implementing regulations "demonstrate that a restriction is in effect when, at minimum, its complete text is written in a document that is available for public inspection and its effective date has passed." *See Palm Beach Cty. v. Fed. Aviation Adm'*r, 53 F.4th 1318, 1336 (11th Cir. 2022). Whereas in *Friends of E. Hampton,* the noise restrictions went into effect once the law was enacted, the noise restriction in Local Law 64 does not go until effect until at least December 1, 2029, and only after compliance with ANCA requirements. Ad. Code § 22-828; *see also* text of Town of East Hampton law, Lulich Decl., Ex. I. To the extent Plaintiffs argue that Local Law 64, "mandates the imposition of a restriction before the City has complied" (Compl., ¶ 162) and constitutes an end-run around ANCA by paying lip service to federal statute while mandating a particular outcome," (*id.* at ¶ 171), such claims are also unsupported by ANCA's plain language. Section 47524(b) of ANCA and its correlating regulations, establish a system to review, analyze, and publicly comment on proposed stage 2 restrictions. *See* 49 U.S.C. § 47524(b); 14 C.F.R. §§ 161.201-161.213. Local Law 64 mandates that this process should take place prior to any implementation of noise regulations. Local Law 64, Lulich Decl., Ex. A.

While there is no federal precedent on this issue, a court in Rhode Island opined that ANCA's system reflects "Congressional intent for airport proprietors to only implement Stage 2 noise restrictions after careful consideration of the costs, benefits, alternatives, and public comments on the proposed restriction." *Kramer v. HTX Helicopters*, LLC, No. WC-2018-0491,

12

2023 R.I. Super. LEXIS 41, at *36-37 (Supr. Ct. June 12, 2023). The court went so far as to find that the system does not require that the airport operator predicate the implementation of the restriction based on the merits of the review. *See* 14 C.F.R §§ 161.209; 161.213 (indicating that the regulatory provisions pertaining to proposal changes and the decisions not to implement a restriction are silent as to permissible grounds to implement or change restriction.).  As such, "there is nothing in ANCA that prohibits [the proprietor] from ignoring these considerations in making its final decision, but the clear intent of the Act was that [the proprietor] at least consider these factors. *Id*. at *37.  In any event, Local Law 64 does not implement a noise regulation without the ANCA-required review.

Second, Plaintiffs repeatedly, and erroneously, allege that Local Law 64 impermissibly delegates the City's obligation to implement ANCA procedures onto local fixed base operators ("FBOs") and that such delegation conflicts with ANCA's requirements. Compl. ¶¶ 11-12, 18-19, 26, 163, 178. In support of this conclusory allegation, Plaintiffs argue that ANCA defines "airport operator" as "airport proprietor," but Local Law 64 delegates the implementation to FBOs.  However, this argument is not borne out by the text of Local Law 64, which at all times directs that it be implemented by the "operator of any heliport" or the "airport operator."  At no time does Local Law 64 define "airport operator" as an FBO or direct that an FBO take any action. There is no support for Plaintiffs' contention that Local Law 64 adopts a definition of "airport operator" in conflict with 14 C.F.R. § 161.5 or to delegate regulatory authority to FBOs instead of the airport proprietor. In any event, even if Local Law 64 could be construed as requiring the FBOs to prohibit covered helicopters from conducting non-essential flights, there is no support for the contention that EDC cannot act through a contractor, such as an FBO, to enforce all relevant laws.

Plaintiffs' "airport operator" argument also contradicts the *in pari materia*

13

principle of statutory construction that "a word or phrase is presumed to bear the same meaning throughout a text unless context requires otherwise," *See Palm Beach Cty. v. Fed. Aviation Adm'r*, 53 F.4th 1318, 1336 (11th Cir. 2022; *see also Maimonides Med. Ctr. v. United States,* 809 F.3d 85, 92 (2d Cir. 2015)  (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260, (1993), "language used in one portion of a statute . . . should be deemed to have the same meaning as the same language used elsewhere in the statute.)

Subdivision (a) of Local Law 64 states the term "heliport" shall not include any heliport located at an "*airport operated"* by the Port Authority of New York and New Jersey.  In this context, the airport operator is not a fixed base operator, but "the proprietor of two airports in America's most populous city." *See British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 564 F.2d 1002, 1005 (2d Cir. 1977). Accordingly, Plaintiffs claims alleging Local Law 64 directs an FBO to act in contravention of ANCA, must fail.

Plaintiffs have failed to demonstrate that Local Law 64 is federally preempted under ANCA, as it does not conflict with the federal statute nor is it an obstacle to its objectives. Accordingly, the first cause of action must be dismissed.

**B.  Local Law 64 is not preempted by the FAA's authority to regulate safety**

Additionally, Plaintiffs claim that Local Law 64 is preempted by the FAA's authority to regulate safety under the Federal Aviation Act.  Plaintiffs point to legal precedent holding that the Federal Aviation Act preempts state laws that conflict with the federal regulation of air safety and broadly allege that Local Law 64 "is on the same subject" as air safety.  Compl. ¶¶ 193—196, & 200.  In support of the conclusory statement that Local Law 64 is "on the same subject" as air safety, Plaintiffs incorrectly allege that "Res. No. 26-A was enacted to 'address helicopter noise *and safety*'" and misleadingly quote one council member.  *Id*. at ¶¶ 196—199.

14

Because Local Law 64 regulates only helicopter noise, Plaintiffs' bare-bones claim that it is preempted by federal authority to regulate air safety fails.

A local law is preempted by the Federal Aviation Act under the doctrine of field preemption if it conflicts with the Federal Aviation Act or "sufficiently interfere(s) with federal regulation of air safety." *See Jones v. Goodrich Pump & Engine Control Systems*, 86 F.4th 1010, 1017 (2d Cir. 2023) (*quoting Fawemimo v. Am. Airlines, Inc.*, 751 Fed. Appx. 16, 19 (2d Cir. 2018) (summary order)).    When deciding a field preemption challenge involving the Federal Aviation Act, the court engages in a two step inquiry: (1) whether the challenged law falls within the field of air safety as established by the Federal Aviation Act; and (2) whether the local law "sufficiently interferes with federal regulation" of air safety under the Federal Aviation Act. *See Jones*, 86 F.4th at 1017 (*quoting Goodspeed Airport, LLC v. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 211 (2d Cir. 2011).

Local Law 64 does not fall within the field of air safety because it regulates noise. *See* Local Law 64, Lulich Decl., Ex. A.    Plaintiffs fail to plead facts sufficient to demonstrate that Local Law 64 in any way regulates or interferes with the FAA's safety regulations.    Rather, Plaintiffs incorrectly allege only that "Res. No. 26-A was enacted to 'address helicopter noise *and safety.*'" Compl. ¶ 196.    Despite the use of quotation marks, Plaintiffs do not identify any purported source for that allegation.    In fact, the stated purpose of Local Law 64 is "[t]o amend the administrative code of the city of New York, in relation to regulating helicopter operations at city owned heliports to reduce noise." *See* Local Law 64, Lulich Decl., Ex. A, *see also* Proposed Int. No. 26-A, Ex. B, & Plain Language Summary of Int. 26-A, Lulich Decl., Ex. C.    Further, the plain language of the law demonstrates that it exclusively regulates helicopter noise. *See* Local Law 64,

15

Lulich Decl., Ex. A.  Thus, the court need not credit Plaintiffs' allegation that Local Law 64 regulates air safety as it contradicts the plain language of the law itself and its stated purpose.

Nor does Plaintiffs' other factual allegation fare better.  Plaintiffs purport to quote one council member's statement, without identifying when or in what context the statement was made. *Id*. at ¶¶ 197—199.  Upon information and belief, Plaintiffs quote a very small portion of the statements of Council Member Amanda Farias during the April 24, 2025 Stated Meeting at which the majority of City Council Members voted to pass Int. No. 26-A into law. *See* Stated Meeting Transcript, Lulich Decl., Ex. F.  First, Council Member Farias's full statement demonstrates that the bill regulates helicopter noise.  *See* Stated Meeting Transcript, Ex. F at pp. 48:12—50:10; *see also* April 24, 2025 Committee Transcript, Ex. F at pp. 4:15—6:24 (statement by Council Member Farias describing the purpose of Int. No. 26-A as reducing excessive helicopter noise).  In any event, even if Council Member Farias viewed Local Law 64 as strengthening safety, the motivations of individual legislators are not dispositive in determining statutory purpose.  *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 283 n.13 (2d Cir. 1997).  Council Member Farias was only one of many Council Members who voted to pass Local Law 64 into law as a noise control statute.  A vague statement about "public health" or "public safety" by one of the legislators does not create a conflict with federal law where none exists in the law itself.

Finally, as described above, ANCA governs the federal authority to regulate noise. If Congress intended the grant of authority over safety regulations to the FAA in the Federal Aviation Act to include noise regulations, ANCA would be superfluous.  Accordingly, Plaintiffs cannot establish that Local Law 64 "falls within the field of " air safety.  Nor do Plaintiffs even attempt to identify any way in which Local Law 64 interferes with the regulation of air safety under the Federal Aviation Act, because there is no such interference. The FAA's authority to

16

regulate air safety is not impacted in any way by Local Law 64, and Plaintiffs have failed to state a claim for preemption under the Federal Aviation Act.

### C. Plaintiffs' Argument that Local Law 64 violates 49 U.S.C. § 40103(e) Fails

Plaintiffs' third cause of action seeks a declaratory judgment that Local Law 64 "is preempted by 49 U.S.C. § 40103(e)." *See* Compl., Third Claim for Relief.  In support, Plaintiffs allege that the Airport and Airway Improvement Act of 1982 ("AAIA") authorizes the FAA to grant federal funds to public airports that agree to comply with certain statutory requirements. Compl., ¶¶ 203-210 (citations omitted).  One such requirement is contained in 49 U.S.C. § 40103(e), which directs:

> (e) <u>No exclusive rights at certain facilities</u>. A person does not have an exclusive right to use an air navigation facility on which Government money has been expended…

Plaintiffs argue that Local Law 64 violates the prohibition on exclusive rights set forth in  49 U.S.C. § 40103(e) by favoring essential flights and prohibiting non-essential flights. Compl., ¶¶ 208—218.  Despite purporting to seek a judgment that Local Law 64 is *preempted* by 49 U.S.C. § 40103(e), Plaintiffs' allegations are that Local Law 64 *violates* 49 U.S.C. § 40103(e). Compl., ¶¶ 203—218 (alleging that the heliports have received federal funding and are subject to the AAIA's statutory requirements, that one of the statutory requirements is the prohibition on exclusive rights, and that Local Law 64 grants exclusive rights to essential flights to the detriment of non-essential flights).  Plaintiffs cannot receive the relief they seek because 49 U.S.C. § 40103(e) does not provide a private right of action to enforce alleged violations of the AAIA. *Bowling Green & Warren Cty Airport Bd. v. Martin Land Dev't. Co.*, 561 F.3d 556, 560 (6th Cir. 2009); *see also Montauk-Caribbean Airways, Inc., v. Hope*, 784 F.2d 91 (2d Cir. 1986) (holding that the precursor to § 40103, 49 U.S.C. § 1349(a), did not provide a private right of action).

17

Rather, an individual who is directly and substantially affected by an airport sponsor's alleged noncompliance must file a complaint with the FAA, which will investigate and issue determinations as set forth in 14 C.F.R. pt. 16.  Only after the administrative process is completed is the final determination reviewable by a federal appellate court.  *See 41 N. 73 W., Inc. v. U.S. D.O.T.*, 408 Fed. App'x 393, 396 (2d Cir. 2010) (*citing* 49 U.S.C. § 46110; 14 C.F.R. § 16.247(a) and describing the statutory process through which the FAA enforces compliance with grant assurances under the AAIA).

Further, unlike in *Western Air Lines v. Port Authority*, 817 F.2d 222 (2d Cir. 1987) and *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008), the instant Complaint does not allege a violation of the Supremacy Clause, nor plead any facts from which such a claim of preemption could be inferred. As the Second Circuit has explained:

> A claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity.  In contrast, an implied private right of action is a means of enforcing the substantive provisions of a federal law.  It provides remedies, frequently including damages, for violations of federal law by a government entity or by a private party.

*Western Air Lines*, 817 F.2d at 225-26; *see also Air Transp. Ass'n of Am.*, 520 F.3d at 221 (holding that there was no private right of action for a claim that a law violated 49 U.S.C. § 41713(b)(1), but that plaintiffs could proceed on the Supremacy Clause claim that was pled in the Complaint.)

Plaintiffs do not allege that any language contained in the AAIA demonstrates it has taken away local authority to regulate aircraft noise or to issue regulations that relate to certain types of flights, either expressly or impliedly. *Contra Air Transp. Ass'n of Am.*, 520 F.3d at 221 (permitting Supremacy Clause claim where the challenged law conflicted with the express preemption provision of the Airline Deregulation Act); *Western Air Lines*, 817 F.2d at 221 (noting

that plaintiffs' Supremacy Clause claim remained viable where the federal statute had no private right of action because of the "coincidence that the federal law in question…contains its own preemption language.") Rather, Plaintiffs allege that Local Law 64 violates 49 U.S.C. § 40103(e) by purportedly favoring essential flights and disfavoring nonessential flights, a purported violation of the AAIA.   The federal law at issue, 49 U.S.C. § 40103(e), does not have a private right of action for allegations of its violation, and Plaintiffs third cause of action must be dismissed.

## POINT II

### PLAINTIFFS' SEQRA CLAIM FAILS FOR LACK OF STANDING

Petitioners seek to challenge Local Law 64 under the New York State Environmental Quality Review Act ("SEQRA"), by arguing that the City failed to conduct required environmental reviews. However, Petitioners lack standing to invoke SEQRA, as their only claim of an injury-in-fact is based on presumption, speculation and conjecture.

Where the question is whether Petitioners have standing, the Complaint must be dismissed under 12(b)(1) if the Petitioners cannot prove, as a factual matter, that they are likely to suffer an injury in fact. *Lujan*, 504 U.S. at 561. For purposes of SEQRA, that means that they must show that a "threatened harm . . . will affect [Plaintiffs] differently from 'the public at large.'" *Save the Pine Bush, Inc. v. Common Council of City of Albany*, 13 N.Y.3d 297, 305 (2009) (*citing Soc'y of Plastics Indus. v. Cnty. of Suffolk*, 77 N.Y.2d 761 (1991)).

Even if proven, "economic injury does not confer standing to sue under SEQRA" because "[e]conomic injury is not by itself within SEQRA's zone of interests." *Soc'y of Plastics Indus.*, 77 N.Y.2d 761, 777, 573 N.E.2d 1034, 1043-44, 570 N.Y.S.2d 778, 787-88 (1991). For that reason, the trade association plaintiffs, ERHC and VAI, lack standing to bring suit under SEQRA because their only alleged injury is that they will "be limited in conducting their current

19

flights from City-owned heliports, resulting in loss of revenues, cancellation of scheduled services, and forced relocation to more distant facilities." Compl., ¶ 122.

It is not surprising, then, that the only environmental injury the Complaint even alleges is to the individual plaintiff, Victoria Seskin, who alleges she "lives in Garden City, New York, directly under the flight path of the helicopter approach to JFK and LaGuardia." Compl., ¶ 233. Seskin claims she is "concerned" about three possibilities: that "an increase in air traffic to JFK and LaGuardia Airports will result in significant noise issues"; *id*. at 235, that "a diversion of air traffic to JFK and LaGuardia Airports will exacerbate the noise she already lives with," *id.* at 236; and that "an increase in pollution that will result from an increase in air traffic to JFK and LaGuardia Airports." *Id.* at ¶ 237. However, Plaintiffs' attempt to manufacture standing must fail, because Ms. Seskin's claims lacks sufficient facts to make her claims of likely environmental harm even plausible, much less established by a "preponderance of the evidence." *Luckett*, 290 F.3d at 497.

As an initial matter, Plaintiffs offer no factual basis whatsoever for their claim that Local Law 64 will "inevitably divert air traffic from the [Downtown Heliport and East 34th Street Heliport.]" Compl. ¶ 36. And indeed, in their SEQRA claim for relief, Plaintiff Seskin couches her claim of injury as a hypothetical: "*if* non-essential helicopter flights are banned at the East 34th Street and Downtown Manhattan Heliports, a portion of these flights will be diverted to the heliports at JFK and LaGuardia Airports." Compl. ¶ 234.

However, Local Law 64 does not operate as a ban on non-essential flights, but, at most, a requirement that non-essential flights be serviced by helicopters measured—not even FAA certified—as meeting stage 3 noise standards. Ad. Code § 22-828(1)(a) ("A covered helicopter is a "'rotary-wing aircraft capable of vertical takeoff and landing'" with calculated noise levels

higher than the stage 3 noise limits set by the Federal Aviation Administration ("FAA") in 14 C.F.R. pt. 36, app'x H § H36.305 or app'x J § J36.305."). As plaintiff ERHC's own Chairman has explained, "very few helicopters are certified under Stage 3 noise levels, however, several Stage 2-rated helicopters flying today are just as quiet, and could meet Stage 3 noise-certification requirements."[5] Because stage 2 helicopters that are stage 3-equivalent would not need to change their operations, existing tour operators and air taxi services flying out of the Manhattan Heliports could—and due to the demands of their customers likely must—simply use compliant vehicles on their existing routes. Plaintiffs merely speculate that asking their customers to commute to JFK to take an air tour, for example, would be preferable to simply operating out of Downtown Manhattan using one of the many available stage 3 equivalent helicopters.

Even if an outright ban would displace some flights to other heliports, Plaintiffs' allegations do not even attempt to explain how a requirement to use stage 3-equivalent aircraft for large-volume market segments such as air tours would lead to displacement. Rank speculation is insufficient to plead an injury-in-fact. *Carney*, 141 S. Ct. 493 (a "conjectural or hypothetical" injury is not sufficient). For this reason alone, the complaint of Victoria Seskin must be dismissed, as her claim of injury-in-fact relies on a displacement of flights that her papers do not even properly allege, much less demonstrate is "actual or imminent, not 'conjectural' or 'hypothetical,'" *Lujan*, 504 U.S. at 560.

---

[5] "Aviation Coalition Opposed To NYC Helicopter Rule Changes," Eastern Region Helicopter Council (March 22, 2021) https://erhc.org/articles/archiveDate/03-21; *see also* "Aircraft Noise Complaints" FED. AVIATION ADMIN. (Feb. 25, 2025), https://www.faa.gov/air_traffic/noise_emissions/noise_complaints ("FAA implemented the ICAO Chapters 8 and 11 helicopter noise standard (called Stage 3 in the U.S.) as of May 5, 2014. . . It does not affect existing Stage 2 helicopters. . . . Many existing helicopters in the U.S. fleet may already meet the Stage 3 noise levels. . .").

21

However, assuming arguendo that the Complaint is construed broadly to actually allege that displacement to LGA and JFK *will* occur, and the court finds that such allegations rise to the level of plausibility, Ms. Seskin still lacks standing, because her claims about the impacts of such diversions to her Garden City home *also* fail to plausibly allege any injury-in-fact, much less one that Ms. Seskin would suffer "differently from 'the public at large.'" *Save the Pine Bush, Inc.*, 13 N.Y.3d 305.

Ms. Seskin's allegation of injury depends entirely on the demonstrably false claim that her home "in Garden City, New York, [is] directly under the flight path of helicopter approach to JFK and LaGuardia Airports." Compl. ¶ 233. This claim is belied by the official FAA route chart for helicopters in New York City airspace. See Helicopter Route Chart, Lulich Decl., Ex. H. The



**Figure 1, Detail of Ex. H,**
**FAA Helicopter Route Chart, New York City.**
**1. Manhattan, 2. LGA, 3. JFK, 4. Garden City**

credibility of this official record of helicopter routes "cannot reasonably be questioned" and thus may be judicially noticed.[6] The FAA has established six separate helicopter approaches for JFK and four for LGA, as seen in figure 1 at right. None of them traverse Garden City. Instead of lying under any of the helicopter approach paths to the airports, Garden City lies roughly ten miles from JFK and roughly 13 miles from LGA, and is substantially east of both airports—the opposite

---

[6] Federal Rule of Evidence 201 allows a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

direction from Manhattan.[7] The only nearby helicopter route is not an airport approach but a transit route connecting NYC to points further east on Long Island. Because Seskin has misstated the relative locations of the LGA and JFK flight approaches and Garden City, even if she were somehow correct that flights currently using the Downtown and East 34th Street Heliports would reroute to the airports, this does not plausibly establish that Garden City overflights would be likely to increase. Because Ms. Seskin's claim of injury relies on her unsupportable claim to living "under the flight path of helicopter approach" to the airports, her complaint must be dismissed for lack of standing.

The inadequacy of the complaint's allegations of an injury in fact is made even more clear by review of actual helicopter flight path information. The New York City Council undertook an analysis of helicopter flight patterns prior to enacting Local Law 64. They found that the overwhelming majority of flights from Downtown Manhattan were sightseeing tour flights centered on Manhattan island. Moussawi Decl. ¶ 15. Furthermore, the majority of flights from the East 34th Street heliport were shuttles from Manhattan to the region's airports, with a smaller number of longer-range flights to commuter destinations on Long Island, Connecticut, and elsewhere in the region. *Id.* ¶ 21. Even accepting plaintiffs' unsupported assumption that such flights would not simply be serviced by stage 3 equivalent aircraft on their existing routes, a shift of airport shuttles or Manhattan sightseeing tours to JFK and LGA cannot form the basis of standing for Ms. Seskin's SEQRA challenge.

---

[7] Google Maps entry for Garden City New York, https://maps.app.goo.gl/Ppx3vGB5dCg3ftr47. As the Ninth, Tenth, and D.C. Circuits have held, a court may "take judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned.'" *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (alteration in original) (quoting Fed. R. Evid. 201(b)); *Pahls v. Thomas*, 718 F.3d

23

As may be apparent, airport shuttles simply cannot be displaced to depart from the airports. Once a passenger arrived at JFK to board their airport shuttle, they would already be at their destination, and would presumably just board their airplane. Passengers who currently take helicopter airport shuttles would instead simply have to opt for a different mode of transportation. The Court is not required to credit Plaintiffs' implausible speculation that demand for helicopter service is so inelastic that "banning 'non-essential' helicopters will not limit their demand but merely displace it," Compl. ¶ 262, even when that demand is for short hop services within the five boroughs where getting to the airport to board a helicopter would negate any time savings of choosing a helicopter in the first place. However, even in the unlikely event that a passenger may take ground transportation to one airport, such as LGA, in order to ride a helicopter shuttle to another, such as Newark or Teterboro, the flight would still not cross Garden City, ten miles in the other direction.

Similarly, even if tour operators were to ask their customers to travel to JFK or LGA rather than simply providing them with tour services from Downtown Manhattan using compliant aircraft, sightseeing tours of Manhattan departing JFK or LGA would *also* have to fly miles in the wrong direction to ever cross over Garden City. The Complaint supposes that "tour operators . . . will simply move their operations elsewhere," specifically naming "tourist flights based in Jersey City or Hoboken." ¶¶ 263, 266. But though the Complaint warns that "their surrounding residents will be forced to contend with the drastic spike in demand," none of the Plaintiffs can assert claims for supposed injuries to residents of Jersey City or Hoboken. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972) ("While a party may seek redress for injuries done to that party, it may not for "injuries done to others."). And as

24

shown above, even if the tours were relocated to LGA or JFK, they still would not concern Ms. Seskin, who is nowhere near their flight paths to and from Manhattan. Moussawi Decl. ¶ 19.

Thus, it makes sense that Seskin's allegations of injury are largely that she is "concerned" about various evils such as an increase in traffic or noise. Compl. ¶¶ 235–37. Concerned, she may be. However, to provide standing to sue, an injury must be "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. Ms. Seskin's "concerns" are precisely the sort of "conjectural or hypothetical" injury that courts have time and again rejected as a basis for standing. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). Seskin must be dismissed as Plaintiff for lack of standing. And because only Seskin even alleges standing to bring claims under SEQRA, the SEQRA claims must be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendant City respectfully requests that this Court dismiss the Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          February 27, 2026

Steven Banks
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-2369

By:_____/S/_____

25

24-CV-9678 (RA)

UNITED STATES DISTRICT COURT
EASASTERN DISTRICT OF NEW YORK

EASTERN REGION HELICOPTER COUNCIL,
VERTICAL AVIATION INTERNATIONAL, and
VICTORIA SESKIN,

                                                          Plaintiffs,

                              - against -

THE CITY OF NEW YORK,

                                                          Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

**Steven Banks**
*Corporation Counsel of the City of New York*
   *Attorney for Defendant City of New York*
   *100 Church Street*
   *New York, N.Y.  10007*

   *Of Counsel:*
   *Tel:  (212) 356-2369*
   *Matter No.:*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ................................................................. , 2025 ......*

*..............................................................................................., Esq.*

*Attorney for ............................................................................*

26