UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EASTERN REGION HELICOPTER COUNCIL,
VERTICAL AVIATION INTERNATIONAL, and
VICTORIA SESKIN,

                 Plaintiffs,

       vs.

THE CITY OF NEW YORK,

                 Defendant.

Civil Action No.  25-cv-04682
(NGG)

Date Served: March 27, 2026

## PLAINTIFFS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 5

ARGUMENT .............................................................................................................................. 10

    POINT I: PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS FOR PREEMPTION ..... 10

        A.  Legal Standard. ..................................................................................................... 10

        B.  Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by ANCA................11

        C.  Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by the Federal
            Aviation Act. ......................................................................................................... 16

        D.  Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by 49 U.S.C.
            § 40103 ................................................................................................................. 18

    POINT II: PLAINTIFF SESKIN HAS STANDING TO BRING HER SEQRA CLAIM ..... 20

        A.  Legal Standard ...................................................................................................... 20

        B.  Ms. Seskin Has Demonstrated that She has Standing.................................................. 20

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

Cases

41 N. 73 W., Inc. v. U.S.D.O.T.,
  408 F. App'x 393 (2d Cir. 2010) ............................................................................18

Air Transp. Ass'n of Am., Inc. v. Cuomo,
  520 F.3d 218 (2d Cir. 2008) ........................................................................18, 19, 20

Arista Records LLC v. Doe,
  604 F.3d 110 (2d Cir. 2010) ...................................................................................15

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .........................................................................10, 16, 17, 18

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ......................................................................................10, 15

Bowling Green v. Martin Land Dev. Co.,
  561 F.3d 556 (6th Cir. 2009) ..................................................................................18

Bridon Realty Co. v. Town Bd. of Town of Clarkstown,
  250 A.D.2d 677 (2d Dep't 1998) .......................................................................21, 22

Carter v. HealthPort Techs., LLC,
  822 F.3d 47 (2d Cir. 2016) .................................................................................6, 22

Citizens Union of City of New York v. Att'y Gen. of New York,
  269 F. Supp. 3d 124 (S.D.N.Y. 2017) ......................................................................17

DiFolco v. MSNBC Cable L.L.C.,
  622 F.3d 104 (2d Cir. 2010) ...................................................................................17

DMJ Assocs., L.L.C. v. Capasso,
  288 F. Supp. 2d 262 (E.D.N.Y. 2003) ......................................................................23

Duke & Benedict, Inc. v. Town of Se.,
  253 A.D.2d 877 (2d Dep't 1998) .............................................................................21

East Hampton Airport Prop. Owners Ass'n, Inc. v. Town Bd. of Town of E. Hampton,
  72 F. Supp. 2d. 139 (E.D.N.Y. 1999) .......................................................................19

Elias v. Rolling Stone LLC,
  872 F.3d 97 (2d Cir. 2017) .....................................................................................10

Feng v. Kelai Corp.,
727 F. Supp. 3d 423 (S.D.N.Y. 2024), appeal dismissed (June 13, 2024) ..............................20

Friends of E. Hampton Airport v. Town of East Hampton,
841 F.3d 133 (2d Cir. 2016)......................................................................... *passim*

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,
528 U.S. 167 (2000).........................................................................................20

Goodspeed Airport, LLC v. Haddam Inland Wetlands & Watercourses Comm'n,
634 F.3d 206 (2d Cir. 2011).............................................................................16

Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.,
471 U.S. 707 (1985).........................................................................................18

Jones v. Goodrich Pump & Engine Control Sys.,
86 F.4th 1010 (2d Cir. 2023) ...........................................................................16

Kamen v. Am. Tel. & Tel. Co.,
791 F.2d 1006 (2d Cir. 1986)...........................................................................17

Katz v. Donna Karan Co., L.L.C.,
872 F.3d 114 (2d Cir. 2017)........................................................................21, 23

Kramer v. HTX Helicopters, LLC,
No. WC-2018-0491, 2023 WL 4053898 (R.I. Super. June 12, 2023) .....................................13

Lujan v. Defs. of Wildlife,
504 U.S. 555 (1992).....................................................................................20, 21

Mader v. Experian Info. Sols., LLC,
No. 19 CIV. 3787 (LGS), 2020 WL 264396 (S.D.N.Y. Jan. 17, 2020) ............................19, 20

Makarova v. United States,
201 F.3d 110 (2d Cir. 2000).............................................................................21

McGrath v. Town Bd. of North Greenbush,
254 A.D.2d 614 (3d Dep't 1998) ...................................................................21, 22

Montauk-Caribbean Airways, Inc. v. Hope,
784 F.2d 91 (2d Cir. 1986)................................................................................18

Nat'l Helicopter Corp. of Am. v. City of New York,
137 F.3d 81 (2d Cir. 1998)................................................................................12

Palin v. New York Times Co.,
940 F.3d 804 (2d Cir. 2019)....................................................................10, 16, 17

Proctor v. LeClaire,
    846 F.3d 597 (2d Cir. 2017)................................................................................13

Soc'y of Plastics Indus. v. Cnty. of Suffolk,
    77 N.Y.2d 761 (1991) ......................................................................................21

United States v. State of N.Y.,
    708 F.2d 92 (2d Cir. 1983)...............................................................................19

Stephens v. Gordon,
    202 A.D.2d 437 (2d Dep't 1994) .....................................................................21

Sunrise Dev., Inc. v. Town of Huntington, New York,
    62 F. Supp. 2d 762 (E.D.N.Y. 1999) ....................................................21, 22, 24

Tweed-New Haven Airport Auth. v. Tong,
    930 F.3d 65 (2d Cir. 2019).................................................................................16

Arizona v. United States,
    567 U.S. 387 (2012)............................................................................................11

Ex parte Young,
    209 U.S. 123 (1908).................................................................................3, 18, 19

## Statutes and Codes

United States Code
    Title 49, Section 40103 ...........................................................................3, 18, 19
    Title 49, Section 41713 ......................................................................................13
    Title 49, Section 47107 .................................................................................18, 19
    Title 49, Section 47521 ......................................................................................11
    Title 49, Section 47523 ......................................................................................11
    Title 49, Section 47524 ...............................................................................7, 8, 11

Federal Aviation Act....................................................................... *passim*

## Rules and Regulations

Code of Federal Regulations
    Title 14, Section 161.5......................................................................................16
    Title 14, Section H36 ..................................................................................7, 14, 15

Federal Rules of Civil Procedure
    Rule 12(b)(1)..................................................................................................1, 6
    Rule 12(b)(2)........................................................................................................1
    Rule 12(b)(6).................................................................................. *passim*

Plaintiffs Eastern Region Helicopter Council (hereinafter referred to as "ERHC"), Vertical Aviation International (hereinafter referred to as "VAI") and Victoria Seskin (hereinafter collectively referred, with ERHC and VAI, as "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the City of New York's (hereinafter referred to as the "City") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure (hereinafter referred to as the "FRCP") 12(b).

## PRELIMINARY STATEMENT

The City's motion evinces a fundamental misunderstanding of the difference between a motion to dismiss and a motion for summary judgment.  The City purports to move to dismiss Plaintiffs' complaint on three grounds: FRCP 12(b)(1), 12(b)(2), and 12(b)(6).  At the outset, the City's notice of motion and memorandum of law both reference FRCP 12(b)(2), *i.e.*, lack of personal jurisdiction, but the City fails to make any argument on those grounds. In fact, at the pre-motion conference held on December 15, 2025, the City conceded that the "Court ha[d] personal jurisdiction over the [C]ity, in Brooklyn."  Declaration of James M. Catterson (hereinafter referred to as the "Catterson Decl."), Ex. A at 5:13–21.  Therefore, that ground must fail.

The City then claims that "[t]he Rule 12(b)(1) standard [is] raised only in relation to the SEQRA claim in Point II" but proceeds to proffer its own interpretation of the legislative history, ambit, and meaning of the challenged legislation, Local Law 64, based on evidence outside the pleadings, including an incomplete legislative record.  Defendant's Memorandum of Law in Support of Motion to Dismiss, dated February 27, 2026 (hereinafter referred to as "Mot.") at 6 n.4.  It is black-letter law of every Circuit that on a motion to dismiss, the movant and the Court are generally required to take Plaintiffs' allegation as true.  In constructing out of whole cloth its

1

own false narrative of minimally impactful legislation, the City flips this burden on its head. While it is permitted to adduce evidence outside the pleadings to challenge standing, it is not permitted to do so on its 12(b)(6) motion addressed to Plaintiffs' three federal preemption claims.

In any event, those claims must be sustained.  First, Plaintiffs state a claim that Local Law 64 is preempted by the Airport Noise and Capacity Act (hereinafter referred to as "ANCA"). ANCA and its implementing regulations create a standardized and rigorous process by which local airport proprietors can seek to enact noise and access restrictions.  This process both endeavors to avoid a patchwork of inconsistent regulations in a space where federal law predominates and ensure that any restrictions are appropriately tailored and thoughtfully considered.  Plaintiffs plausibly allege that Local Law 64 is preempted by ANCA based on a theory of conflict preemption because (1) the City's legislate-first, study-later approach is contrary to Congress' intentions in enacting ANCA and (2) the City intends to improperly delegate its obligations under ANCA to the fixed base operators (hereinafter referred to as "FBOs"), which, as non-governmental entities, are unable to comply with certain of ANCA's substantive provisions.

In response, the City argues that because Local Law 64 takes effect only after someone—whether it be the City or the FBOs—complies with ANCA, it cannot be conflict preempted.  The City believes that Local Law 64 falls within the proprietor exception to general federal supremacy in the field of aircraft noise and access because, unlike other, less clever municipalities like the Town of East Hampton, it purports to precondition implementation of the restrictions on compliance with ANCA.  The proprietor exception requires that the restriction in question be reasonable, non-arbitrary and non-discriminatory.  A restriction that, as here, violates ANCA and fails to comply with SEQRA, *per se* fails that test.

2

Second, Plaintiffs state a claim that Local Law 64 is preempted by the Federal Aviation Act, which impliedly preempts the entire field of air safety.  Plaintiffs allege that Local Law 64 is, at least in part, aimed at regulating air safety based on legislative materials relevant to both the initial legislation banning all non-electric helicopters and Local Law 64 itself.  Plaintiffs also allege that Local Law 64 was passed within a week of a fatal helicopter crash and as part of a package of legislation calling on the state legislature and Federal Aviation Administration (hereinafter referred to as the "FAA") to further curtail helicopter operations.  The City responds, again flouting the standard on a motion to dismiss, that Plaintiffs' allegations are "incorrect[]." Mot. at 14, 15.  The City also seeks, to no avail, to downplay the public statements of the sponsor of both versions of the legislation, who also serves as the Majority Leader of the City Council, as "one council member's statement."  Id. at 16.  However, the Court is required at this stage of the litigation to credit Plaintiffs' allegations, which plausibly articulate a claim for preemption.

Third, Plaintiffs state a claim that Local Law 64 is preempted by the Airport and Airway Improvement Act (hereinafter referred to as the "AAIA") and 49 U.S.C. § 40103, which require that airports that have received federal funding operate their facilities without exclusive rights and in a non-discriminatory manner.  Plaintiffs submit that even if those statutes do not contain a private right of action, the Court can hear the claim under the Ex parte Young doctrine, which confers jurisdiction over declaratory and injunctive relief actions that seek to enjoin municipal orders that violate federal law.  209 U.S. 123 (1908).  Plaintiffs plausibly allege that Local Law 64, in distinguishing among non-essential and essential helicopter traffic, unjustly discriminates against what it deems non-essential helicopter traffic and that both affected heliports have accepted federal funds.

3

Finally, Plaintiff Seskin can demonstrate that she has standing to bring her SEQRA claim.[1]  Ms. Seskin, a resident of Garden City, alleges that Local Law 64 will result in helicopter traffic being diverted to other heliports and local airports, including John F. Kennedy International Airport (hereinafter referred to as "JFK") and LaGuardia International Airport (hereinafter referred to as "LGA").  On a fundamental level, Ms. Seskin is concerned that some traffic that would have gone to the East 34th Street and Downtown Manhattan heliports from points east will now be diverted to JFK and LGA.  Those diversionary effects, she alleges, will exacerbate the noise and pollution she already lives with because helicopters frequently approach those airports on a route that passes near her home.

Ms. Seskin's well-pleaded allegations are buttressed by the NYC Helicopter Diversion Analysis prepared by Harris Miller Miller & Hanson, Inc., as well as the declaration of Jeffery Smith, Board Chair of Plaintiff EHRC (hereinafter referred to as "Smith Decl.") and Ms. Seskin's own declaration (hereinafter referred to as "Seskin Decl.").  As relevant here, the study concludes that JFK and LGA combined will absorb 19% of the diverted flights, in part because neither airport is currently subject to helicopter slot controls.  See Smith Decl., Ex. A.  Notably, the City also concedes the existence of commuter flights from, *inter alia*, eastern Long Island and Connecticut, underscoring the veracity of Ms. Seskin's allegations.

In attacking Ms. Seskin's standing, the City principally relies on a declaration from the City Council's Chief Data Scientist that woefully misapprehends the nature of her allegations. The City appears to believe that Ms. Seskin's injury arises from tour operations displaced from the Downtown Manhattan Heliport and airport shuttle flights displaced from both heliports.  As set forth below, this is not the claim.  Moreover, the data the City relied upon to "formulat[e]

---

[1] Notably, the City does not even attack the SEQRA claim on its merits with a 12(b)(6) argument, instead confining itself to the purported standing defects.

4

heliport policy" derives from a single month two years before the legislation was enacted. Declaration of A. Moussawi, dated February 27, 2026 (hereinafter referred to as the "Moussawi Decl.") at ¶¶ 6–7.  Further, Mr. Moussawi repeatedly disclaims the completeness and effectiveness of his own data.  Id. at ¶¶ 7, 14.  Thus, the Court is left with the City's mere supposition that Ms. Seskin cannot have standing based on its own incomplete data and flawed understanding of her claim.

At base, Plaintiffs have pleaded four viable causes of action.  While three claims are based on theories of federal preemption and a fourth on a violation of state law, each strikes at the heart of Local Law 64 and provides an independent justification to nullify it.  Plaintiffs therefore respectfully request that the Court deny the City's motion to dismiss in its entirety and permit Plaintiffs to prosecute their claims.

## STATEMENT OF FACTS

### A. The Heliports.

The City owns two heliports available for public use, the Downtown Manhattan and East 34th Street Heliports (hereinafter collectively referred to as the "Heliports"). ECF Doc. No. 1 (hereinafter referred to as "Compl.") at ¶ 3.  The Heliports confer economic, public safety, and environmental benefits on the City and its residents and are part of a transportation network supporting emergency medical services, news gathering, educational services, non-profit organizations, law enforcement, tourism, and non-government organizations.  Id. at ¶¶ 51, 54.  While owned by the City, each heliport is operated by an FBO.  Id. at ¶¶ 66, 69.  The Downtown Manhattan Heliport is operated by Downtown Skyport, LLC and the East 34th Street Heliport by Atlantic Aviation FBO, Inc. Id. at ¶¶ 62, 66.

5

**B.  The Legislation.**

On February 8, 2024, the City Council introduced Int. No. 0026-2024 (hereinafter referred to as "Int. No. 26"), which would restrict non-essential helicopter operations at City-owned heliports to electric-powered helicopters.  Compl. at ¶ 70.  On April 16, 2024, the Committee on Economic Development held a hearing on Int. No. 26, Int. No. 70[2], Int. No. 27[3], and Res. No. 85[4] entitled "Oversight – Helicopter Noise and Safety." Id. at ¶¶ 80–81[5]; see also Catterson Decl., Ex. B.[6]  Majority Leader Amanda Farías, the sponsor of both Int. No. 26 and Res. No. 26-A, opened that hearing by stating that the hearing would "examine the important issue of helicopter noise and safety in New York City."  Catterson Decl., Ex. B at 8:17–19; see also Compl. at ¶ 82.  Ms. Farías then explained that "[i]n addition to the noise issue, we have unfortunately seen several tragic helicopter accidents over the years that have raised major safety concerns" and cited a few examples of those accidents.  Catterson Decl., Ex. B at 9:8–23.  At the hearing, Int. No. 26 was laid over by committee.  Compl. at ¶ 94.

On April 10, 2025, an aircraft operated by New York Helicopter Charter Inc. crashed, killing the pilot and a family of five tourists from Spain.  Compl. at ¶ 95.  A week later, on April 17, 2025, the City Council proposed Int. No. 26-A, which differed

---

[2] The Committee Report circulated prior to that hearing describes Int. No. 70 as "prohibiting non-essential helicopters from operating at heliports owned or operated by the [C]ity."  Catterson Decl., Ex. C at 4.

[3] The Committee Report describes Int. No. 27 as "monitoring helicopter noise."  Id., Ex. C at 4.

[4] The Committee Report describes Res. No. 95 as "calling on the New York State Legislature to pass, and the Governor to sign" a bill "establish[ing] a noise tax on non-essential helicopter and seaplane flights in cities with a population of one million or more."  Id., Ex. C at 4.

[5] The Committee Report is likewise entitled "Oversight: Helicopter Noise and Safety."  Compl. at ¶ 81.

[6] As set forth below, the Court is permitted to consider evidence outside the pleadings on a fact-based 12(b)(1) motion.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016).

6

from Int. No. 26 in several respects.  Id. at ¶¶ 98–99.  Notably, rather than permit only electric-powered helicopters, it defines "covered helicopter" as follows:

> a rotary-wing aircraft capable of vertical takeoff and landing.  Such term does not include any helicopter with calculated noise levels, as indicated in appendix 10 or 11 to federal aviation administration advisory circular 36-1H, or any such successor document, that are not higher than the stage 3 noise limits[3] for the maximum takeoff weight of such helicopter set by the federal aviation administration, pursuant to section H36.305 of appendix H or section J36.305 of appendix J to part 36 of title 14 of the code of federal regulations.

Id. at ¶¶ 103–04.

"Section 1, subdivision (b) requires that '[t]he operator of any heliport [] prohibit covered helicopters from conducting non-essential flights[7] to or from any such heliport, except as otherwise directed by an aviation control tower or air traffic control center or in emergency circumstances where such operation is necessary to protect life, property or the public health and safety.'"  Id. at ¶ 105.  A non-essential flight is defined as "any helicopter flight not conducted by or on behalf of (i) the United States armed forces, (ii) the fire department, (iii) emergency services, including any air ambulance or medical transport, (iv) the police department or other law enforcement entity, (v) a newsgathering organization, or (vi) film, television or commercial photography production activities conducted for a commercial purpose."  See Declaration of Aimee K. Lulich (hereinafter referred to as "Lulich Decl."), Ex. A.  Finally, "subsection (c) provides that '[p]rior to implementing the restrictions set forth in subdivision b of this section, the airport operator shall follow the procedure outlined in subsection (b) of section 47524 of title 49 of the United States code

---

[7] The City mistakenly claims that "[i]n practice, the non-essential flights currently using the two heliports are charter flights for commuting purposes or sightseeing flights," citing the Committee Report.  Mot. at 3–4.  The report actually states that "*[e]xamples* of the non-essential flights this ban would include are flights for commuting purposes and sightseeing tours."  Declaration of Aimee K. Lulich, Ex. D at 14 (emphasis added).

7

and subpart C of part 36 of title 14 of the code of federal regulations'" and that "[s]uch restrictions shall not be implemented until 180 days after the publishing and public comment period required by such procedure have commenced."  Compl. at ¶¶ 106–07.

On April 24, 2025, the Committee on Economic Development held a hearing on a package of legislation aimed at regulating helicopter use, including two bills calling on the state legislature to establish a noise tax on non-essential helicopter flights and prohibit non-essential flight operations at municipal heliports, respectively, and one bill calling on the FAA to ban all non-essential helicopter travel over New York City.  See Catterson Decl., Ex. D; see also Compl. at ¶¶ 114–115.  In describing Int. No. 26-A, a bill she sponsored, Ms. Farías stated that it "start[ed] the ball rolling towards policy that will help New York City create a quieter *and safer* airspace."  Catterson Decl., Ex. D at 5:9–12 (emphasis added); see also Compl. at ¶ 116.

That same day, the full City Council voted to adopt Int. No. 26-A without conducting any environmental review.  Compl. at ¶¶ 117–18; see also Catterson Decl., Ex. E.  At that meeting, Ms. Farías herself described the bill as, *inter alia*, "a major step forward in *public safety*, environmental equity, and responsible urban planning."  Catterson Decl., Ex. E at 48:14–16; see also id. at 49:2–6 ("it's about modernizing policy to meet the moment . . . defined by urgent need to reduce emissions, protect public health, and modernize for *safety*"); 49:7–10 ("[t]his bill uses the power we have . . . to raise the bar on *safety* and sustainability") (emphasis added).  Int. No. 26-A became law as Local Law 64 on May 24, 2025, and takes effect on December 1, 2029.  Compl. at ¶¶ 100, 119.

8

### C. Procedural History.

On August 22, 2025, Plaintiffs filed their complaint against the City.  See generally Compl.  That complaint contains four claims for declaratory judgment: (1) that Local Law 64 is preempted by ANCA, (2) that Local Law 64 is preempted by the Federal Aviation Act, (3) that Local Law 64 is preempted by the Airport and Airway Improvement Act, (4) that Local Law 64 is null and void as in violation of lawful procedure and arbitrary and capricious for failing to comply with SEQRA.  Id.  On November 18, 2025, the City requested a pre-motion conference on its forthcoming motion to dismiss.  See ECF No. 16. Plaintiffs responded to that letter on December 11, 2025, and the conference was held on December 15, 2025.  See ECF No. 17; Electronic Order dated December 15, 2025; see also Catterson Decl., Ex. A.

The Court granted the City permission to move to dismiss, and it improperly filed its motion on February 27, 2026, in derogation of the Court's Individual Rule IV.B.  See Electronic Order dated March 11, 2026.  In support of that motion, the City annexed a declaration from counsel with eight exhibits and a declaration from Alaa Moussawi, Chief Data Scientist of the New York City Council.  See generally Lulich Decl., Moussawi Decl. Those exhibits include (1) a copy of the legislation as enacted, (2) a copy of the legislation as introduced, (3) the "Plain Language Summary" of the legislation, (4) a committee report on the legislation, (5) a transcript of the committee hearing on the legislation, (6) a transcript of the City Council's hearing on the legislation, (7) appendices to an FAA advisory circular, (8) the FAA helicopter route chart, and (8) a copy of the challenged legislation in Friends of E. Hampton Airport v. Town of East Hampton, 841 F.3d 133 (2d Cir. 2016) (hereinafter referred to as "Friends").  See id.

9

**ARGUMENT**

**POINT I**

**PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS FOR PREEMPTION**

**A. Legal Standard.**

On a motion to dismiss pursuant to FRCP 12(b)(6), the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019), quoting Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017). To survive a motion to dismiss, a complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. at 810, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Twombly, 550 U.S. at 556.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., quoting Twombly, 550 U.S. at 556. In determining whether a complaint meets this standard, the court need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action" as true and can "draw on its judicial experience and common sense." Id. at 678–79 (internal citations omitted).

**B. Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by ANCA.**

As relevant here[8], "state [and municipal] laws are preempted when they conflict with federal law." Arizona v. United States, 567 U.S. 387, 399 (2012) (citation omitted). This includes both (1) "cases where compliance with both federal and state regulations is a physical impossibility" and (2) "those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" Id. at 399–400 (internal citations and quotations omitted).

ANCA establishes a "national aviation noise policy," including a "national program for reviewing airport noise and access restrictions on the operation of stage 2 and stage 3 aircraft." Compl. at ¶ 137, quoting 49 U.S.C. § § 47523(a), 47524(a). Congress found, in particular, that since "community noise concerns have led to uncoordinated and inconsistent restrictions on aviation that could impede the national air transportation system," a "noise policy must be carried out at the national level." Id. at ¶ 139, quoting 49 U.S.C. § 47521(1)–(3).

In furtherance of these objectives, ANCA and its implementing regulations set out detailed procedures by which airport proprietors can seek to implement noise and access restrictions. Id. at ¶ 140. For limitations on stage 2 aircraft, airport proprietors must, at the very least, (1) publish the restriction, including in a local newspaper and prominent location, (2) make it available for notice and comment, (3) prepare a cost-benefit analysis, including a description of alternatives and their costs, (4) commission a study of noise levels using federally prescribed methods, (5) promulgate a detailed notice to relevant stakeholders, (6) establish a public docket, and (7) publish the restriction in the Federal Register. Id. at ¶¶ 138–53. Regulations on stage 3

---

[8] Plaintiffs agree with the City that the field of aircraft noise and access is likely not field preempted in light of the proprietor exception discussed *infra*. See Friends, 841 F.3d at 139–40.

11

aircraft are even more stringent and require either agreement by all aircraft operators or approval by the Secretary of Transportation, in addition to pre-requisites similar to those for stage 2. Id. at ¶¶ 154–57.

The City does not dispute that it is required to comply with ANCA. Id. at ¶¶ 137, 140, 145. Nor does the City dispute that airport proprietors are vested "only with the power to promulgate reasonable, nonarbitrary, and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs," that those regulations "must be consistent with federal policy," and that "actions taken in violation of legal mandates are, by their nature, unreasonable and arbitrary." Id. at ¶¶ 134–36, quoting Friends, 841 F.3d at 139, 153.

Instead, the City claims that Local Law 64 is eminently reasonable because (1) it, unlike the legislation promulgated by the Town of East Hampton in 2015, acknowledges the existence of its obligations under ANCA, and (2) it is either not delegating its obligations under ANCA to the FBOs or is permitted to do so. Mot. at 11–14. It fails on both counts.

First, the principles articulated by the Second Circuit in Friends, *i.e.*, clarifying the limited role of a local airport proprietor in regulating noise levels and explaining that a restriction necessarily falls outside the proprietor exception if it violates federal law, bind the City regardless of any factual distinctions between the two pieces of legislation. Friends, 841 F.3d at 153–55. Those holdings came in the context of refuting the Town's argument that it need not comply with ANCA because the Second Circuit in National Helicopter[9] "decided

---

[9] The City also relies on National Helicopter as an example of a "valid exercise of the City's proprietary authority" in enacting "noise conditions establishing weekday and weekend heliport curfews, phasing out weekend operations entirely, and reducing heliport operations by a minimum of 47[%]." Mot. at 9, citing Nat'l Helicopter Corp. of Am. v. City of New York, 137 F.3d 81, 88, 90–91 (2d Cir. 1998). The Court in National Helicopter appeared not to consider ANCA in assessing whether the legislation was appropriate and cited to it only in a list of federal aviation legislation. See id. at 88.

that ANCA procedures do not limit the scope of the ADA's[10] proprietor exception to federal preemption[.]" Id. at 153.  In doing so, the Second Circuit held that "ANCA's procedural requirements are properly understood to refine what can constitute a reasonable exercise of the proprietary authority reserved by the ADA" and rejected the Town's arguments that requiring local airports to comply with ANCA would contravene Congress' intent and "dramatically enlarge the FAA's role[.]" Id. at 154 (internal quotations and citations omitted). Plaintiffs understand that the City, unlike the Town of East Hampton, accepts that it must comply with ANCA.  Plaintiffs simply disagree that it actually has done so.

As Plaintiffs set forth in their complaint, the fact that the law does not take effect until 2029, purportedly after compliance with ANCA, is not dispositive on this point.  See Compl. at ¶¶ 12–18.  ANCA requires that the airport proprietor undertake the multi-step, time-consuming, and costly process of analyzing the proposed restriction, including considering alternatives, soliciting feedback from stakeholders and the public, and receiving input from and notifying the FAA prior to implementing the restriction.  Id. at ¶¶ 138–53.  ANCA does not contemplate that the proprietor enact a restriction before gathering and weighing that relevant information, with only the outside possibility that it might change its mind sometime during the process.  See Mot. at 13; cf. Proctor v. LeClaire, 846 F.3d 597, 610 (2d Cir. 2017) ("Review with a pre-ordained outcome is tantamount to no review at all.").[11]

---

[10] The Airline Deregulation Act, codified at 49 U.S.C. § 41713, precludes a state or its political subdivision from "enact[ing] or enforc[ing] a law, regulation, or other provision . . . related to a price, route, or service of an air carrier," but otherwise preserves their ability to "carry[] out [their] proprietary powers and rights."  49 U.S.C. § 41713(b)(1), (3).

[11] It is telling that the only case the City found to even obliquely support that proposition is from the Rhode Island state trial court and has never been cited.  Mot. at 12–13, citing Kramer v. HTX Helicopters, LLC, No. WC-2018-0491, 2023 WL 4053898, at *1 (R.I. Super. June 12, 2023).  Notably, in that case, the municipality was required to comply with ANCA.  Id. at *1–4.

13

This is particularly true where the City has made clear that it will take whatever steps necessary to curtail helicopter traffic, from its initial legislation banning all non-electric helicopters to the current iteration. Compl. at ¶¶ 70–116. Worse even, the City's undisputed failure to conduct any environmental review required by SEQRA, which also requires assessing less restrictive alternatives, underscores its unwillingness to grapple with any potential effects of its proposed restriction. Id. at ¶¶ 219–77. As discussed in more detail *infra*, Plaintiffs have pleaded, and a diversion study supports their allegations, that helicopter traffic will be diverted to other locations, including the already congested JFK and LGA heliports. Id. at ¶¶ 169–70; see also Smith Decl., Ex. A. The City's failure to assess these specific environmental consequences is itself arbitrary. See id.

The unreasonableness of the legislation is also underscored by the City's misinterpretation of its scope. In a statement of facts constructed entirely from its own exhibits, rather than the allegations in the complaint, it contends that covered helicopters have "calculated noise levels higher than the stage 3 noise limits set by the [FAA] in 14 C.F.R. pt. 36, app'x H § H36.305 or app'x J § J36.305." Mot. at 4. Thus, it concludes, in derogation of the requirement that facts pleaded in the complaint be construed as true, that "Local Law 64 does not require that a helicopter be certified by the FAA as a stage 3 helicopter," but that "helicopters with calculated noise levels that comply with the FAA's stage 3 noise limits are not prohibited by Local Law 64." Id. In doing so, it conveniently omits both that calculated noise levels is a term of art used in the Code of Federal Regulations and that its definition of covered helicopters necessarily refers to the calculated noise levels in appendices 10 and 11 to the advisory circular, where each aircraft is designated as stage 2. Lulich Decl., Ex. H.

14

To that end, Plaintiffs have pleaded on information and belief[12] that "most helicopters in current operation in the U.S. and in New York meet the thresholds of stage 2." Compl. at ¶ 144. The City fails to credit that allegation but then puts forward its own narrative. The City offers the *ipse dixit* that an unspecified number of helicopters meet stage 3 requirements and sets out how it believes noise limits are calculated. Mot. at 4. In doing so, the City conspicuously omits the operative prelude to the section it cites: "[f]or compliance with this appendix, the applicant must show by flight test that the calculated noise levels of the helicopter, at the measuring points described in section H36.305(a) of this appendix, do not exceed the following . . ." § H36.305(a). Sections J36.101 and J36.105, in turn, discuss how those flight tests must be conducted. Thus, the practical effect of the definition in Local Law 64, which incorporates by references those appendices, is that a helicopter must be certificated as stage 3 in order to be considered a covered helicopter.

Second, the City argues that Local Law 64 does not "define 'airport operator' as an FBO or direct that an FBO take any action," but that "[i]n any event . . . there is no support for the contention that EDC cannot act through a contractor . . . to enforce all relevant laws." Mot. at 13. In doing so, the City does not refute that it intends to delegate its obligations to the FBO and instead interposes a statutory interpretation argument inappropriate for the motion to dismiss stage. Id. at 13–14. In that same vein, it fails to take as true Plaintiffs' allegations to the contrary. Compl. at ¶¶ 173–79. It also ignores Plaintiffs' allegation that an FBO would not be able to comply with certain of the obligations under the rules, including a

---

[12] The Second Circuit has held that "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible[.]" Arista Records LLC v. Doe, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotations omitted).

public docket and retention of comments.  Id. at ¶ 176.  It is undisputed that an FBO is an airport operator, not an airport proprietor.  It is the City, the airport proprietor, that is required to comply with ANCA.  Id. at ¶¶ 175–76, 179.[13]

Plaintiffs have thus plausibly alleged that the City has violated its obligations under ANCA by paying lip service to the statute while having reached a predetermined outcome and improperly delegating its responsibilities thereunder to the FBOs.  Thus, the Court must sustain Plaintiffs' ANCA claim at this early stage of the litigation.  See Iqbal, 556 U.S. at 678.

### C. Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by the Federal Aviation Act.

The Second Circuit has held that the Federal Aviation Act "impliedly preempts the entire 'field of air safety.'"  Jones v. Goodrich Pump & Engine Control Sys., 86 F.4th 1010, 1017 (2d Cir. 2023) (cleaned up), quoting Tweed-New Haven Airport Auth. v. Tong, 930 F.3d 65, 74 (2d Cir. 2019).  In determining whether legislation is preempted, the court will first determine (1) "whether a challenged state law falls within the 'field of air safety' as established by the [Federal Aviation Act]" and then (2) "whether "the state regulation sufficiently interferes with federal regulation [such] that it should be deemed pre-empted."  Id., quoting Goodspeed Airport, LLC v. Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 211 (2d Cir. 2011).

The City proffers another *ipse dixit* that the Local Law 64 is not preempted by the Federal Aviation Act because "it regulates noise" and "Plaintiffs incorrectly allege" that it "was enacted to 'address helicopter noise *and safety*.'"  Mot. at 15 (emphasis in original), citing Compl. at ¶ 196.  Again, this is not the standard on a motion to dismiss, where the

---

[13] To the extent the City claims that it is permitted to delegate to the FBOs because the federal regulations use "airport operator" instead of airport proprietor, those same regulations define airport operator as airport proprietor.  14 C.F.R. § 161.5.

16

movant is required to accept all facts as true.  See Palin, 940 F.3d at 809.  Instead, it argues

that Plaintiffs' allegation need not be credited because the City believes that the legislation

does not concern safety based on its "stated purpose" and its "plain language," as supported

by its self-selected excerpts of legislative history.  Mot. at 15–16, citing Lulich Decl., Exs. A–

C.

As the City should know, it is not permitted to rely on its own extrinsic cherry-picked

evidence on a motion to dismiss pursuant to 12(b)(6).  See DiFolco v. MSNBC Cable L.L.C.,

622 F.3d 104, 111 (2d Cir. 2010).  Any factual dispute over the meaning and ambit of the

statute is fodder for a motion for summary judgment, not a motion to dismiss.  Kamen v. Am.

Tel. & Tel. Co., 791 F.2d 1006, 1010–11 (2d Cir. 1986); accord Citizens Union of City of

New York v. Att'y Gen. of New York, 269 F. Supp. 3d 124, 145 (S.D.N.Y. 2017) ("inquiry

into legislative intent . . . requires a sensitive inquiry into such circumstantial and direct

evidence of intent as may be available[.]") (internal citations and quotations omitted).

Likewise, the City claims that Plaintiffs "purport to quote one council member's

statement" to suggest Local Law 64 regulates noise.  Mot. at 16.  The statements upon which

Plaintiffs rely were made by Ms. Farías, the Majority Leader and the legislation's sponsor.

See Compl. at ¶¶ 84, 86, 116, 198–99.  Plaintiffs also pleaded that the committee report and

the title of the committee meeting for the first iteration of the legislation was designated

"Helicopter Noise and Safety."  Id. at ¶¶ 80–82.  Again, a motion to dismiss pursuant to

FRCP 12(b)(6) is neither the time to either marshal contrary evidence nor the time to finally

determine statutory purpose in the face of well-pleaded allegations.  Mot. at 16, citing Lulich

Decl., Ex. F.  Rather, the Court is faced with the question of whether Plaintiffs' complaint

17

contains sufficient allegations to support a plausible claim for preemption of the Federal Aviation Act.  See Iqbal, 556 U.S. at 678.  Plaintiffs submit that it does.

### D. Plaintiffs Have Stated a Claim that Local Law 64 is Preempted by 49 U.S.C. § 40103.

The AAIA provides, in relevant part, that the FAA may only approve grants to public airports if the airport "will be available for public use on reasonable conditions and without unjust discrimination" and that "a person providing, or intending to provide, aeronautical services to the public will not be given an exclusive right to use the airport."  Compl. at ¶ 205, citing 49 U.S.C. § 47107(a)(1), (a)(4).  49 U.S.C. § 40103 further provides that "[a] person does not have an exclusive right to use an air navigation facility on which Government money has been expended."  49 U.S.C. § 40103(e).  The Second Circuit has defined an "exclusive right" as a "power, privilege, or other right excluding or debarring another or others from enjoying or exercising a like power, privilege, or right" and held that it is "constructively granted" when "the imposition of unreasonable standards or requirements has the practical effect of imposing a significant burden on an entity's ability to engage in a particular aeronautical activity."  41 N. 73 W., Inc. v. U.S.D.O.T., 408 F. App'x 393, 399 (2d Cir. 2010) (internal citations and quotations omitted).

The Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law."  Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008), quoting Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc., 471 U.S. 707, 712 (1985).  While the City is correct that at least one circuit has held that 49 U.S.C. § 40103(e) does not confer a private right of action[14], Plaintiffs can maintain a preemption claim under these

---

[14] See Bowling Green v. Martin Land Dev. Co., 561 F.3d 556, 560 (6th Cir. 2009).  The Second Circuit has also held that there is no private right of action under § 40103's predecessor statute.  See Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91, 97 (2d Cir. 1986).

18

circumstances based on principles of equity jurisdiction articulated in Ex parte Young and applied by the Second Circuit in Friends. See Friends, 841 F.3d at 144–45; Ex parte Young, 209 U.S. at 155–63. The Court in Friends explained that the Supreme Court and Second Circuit have "consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law." Friends, 841 F.3d at 144, citing, e.g., Air Transp. Ass'n of Am., Inc., 520 F.3d at 221–22; United States v. State of N.Y., 708 F.2d 92, 94 (2d Cir. 1983). At least one Court in this District has considered whether certain local legislation is preempted by the AAIA via the Supremacy Clause notwithstanding the lack of a private right of action. See East Hampton Airport Prop. Owners Ass'n, Inc. v. Town Bd. of Town of E. Hampton, 72 F. Supp. 2d. 139, 148 (E.D.N.Y. 1999).

Plaintiffs allege that the Downtown Manhattan Heliport has received both Airport Improvement Program and Federal Emergency Management Agency (hereinafter referred to as "FEMA") grants and that the East 34th Street Heliport has received FEMA grants, bringing both Heliports within the ambit of § 40103(e). Compl. at ¶¶ 59, 67, 211–16. Contrary to the City's contention that the "Complaint does not allege a violation of the Supremacy Clause," (Mot. at 18), Plaintiffs have pleaded that (1) Local Law 64 "conflicts with the federal legislative scheme set forth in 49 U.S.C. §§ 40103(e) and 47107(a)(4), as it discriminates against what the City characterizes as non-essential flights, and, conversely, provides exclusive rights to what the City characterizes as essential flights" and that they (2) seek "a declaratory judgment" that Local Law 64 is "preempted by 49 U.S.C. § 40103(e)." Compl. at ¶¶ 217–18. Again, these "allegations are assumed to be true and construed in favor of

19

[Plaintiffs] for purposes of [Defendant's] motion." Mader v. Experian Info. Sols., LLC, No. 19 CIV. 3787 (LGS), 2020 WL 264396, at *1 (S.D.N.Y. Jan. 17, 2020).

As the Second Circuit has explained, parties are not barred from invoking federal jurisdiction where "as here, they do so not to enforce the federal law themselves, but to preclude a municipal entity from subjecting them to local laws enacted in violation of federal requirements." Friends, 841 F.3d at 146, citing Air Transp. Ass'n of Am., Inc., 520 F.3d at 221–22. Plaintiffs here, in pleading a plausible Supremacy Clause claim, seek to do precisely that.

## POINT II

## PLAINTIFF SESKIN HAS STANDING TO BRING HER SEQRA CLAIM

### A. Legal Standard

It is well-settled that Article III standing requires the plaintiff demonstrate three things: "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000), citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). State-law claims arising under supplemental jurisdiction are similarly subject to Article III standing requirements. See Feng v. Kelai Corp., 727 F. Supp. 3d 423, 452 (S.D.N.Y. 2024), appeal dismissed (June 13, 2024).

The plaintiff "bears the burden of establishing" standing "in the same way as any other matter on which [it] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561 (internal

20

citations and quotations omitted).  Where a defendant "proffers evidence beyond the

[plaintiff's p]leading," the plaintiff "must come forward with evidence of their own to

controvert that presented by the defendant, or may instead rely on allegations in the[ir

pleading] if the evidence proffered by the defendant is immaterial because it does not

contradict plausible allegations that are themselves sufficient to show standing."  Katz v.

Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017) (internal citations and quotations

omitted).  Under those circumstances, "the plaintiff has the burden of proving by a

preponderance of the evidence that subject matter jurisdiction exists[.]"  Id., citing Makarova

v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

New York courts have determined that to have standing to raise a SEQRA challenge, a

party must demonstrate (1) an injury in fact, *i.e.*, an injury that is different from that of the

public at large, and (2) that the alleged injury falls within the zone of interest sought to be

promoted or protected by the statute.  See Sunrise Dev., Inc. v. Town of Huntington, New

York, 62 F. Supp. 2d 762, 771–72 (E.D.N.Y. 1999), citing Stephens v. Gordon, 202 A.D.2d

437, 438 (2d Dep't 1994); see also Soc'y of Plastics Indus. v. Cnty. of Suffolk, 77 N.Y.2d

761, 777 (1991); Duke & Benedict, Inc. v. Town of Se., 253 A.D.2d 877, 878 (2d Dep't

1998).  To show an injury in fact, a party "must specifically allege facts which demonstrate

some 'special injury' beyond [its] bare identit[y] as [a] voter[], taxpayer[], rate payer[],

property owner[], resident[] or citizen[] concerned about or involved in public affairs."

Sunrise Dev., Inc., 62 F. Supp. 2d at 771–72 (citations omitted).  To fall within the zone of

interest, a plaintiff must demonstrate that "the alleged injury is at least in part a 'noneconomic

environmental concern.'"  Id., quoting McGrath v. Town Bd. of North Greenbush, 254

A.D.2d 614 (3d Dep't 1998); <u>Bridon Realty Co. v. Town Bd. of Town of Clarkstown</u>, 250 A.D.2d 677 (2d Dep't 1998).

### B. Ms. Seskin Has Demonstrated that She has Standing.

At the outset, the SEQRA claim is brought only on behalf of Plaintiff Seskin, not Plaintiffs EHRC and VAI. Mot. at 19–20. As set forth below, Ms. Seskin can demonstrate that she has standing to bring her claim, as bolstered by evidence outside the pleadings. <u>See</u> <u>Carter v. HealthPort Techs., LLC</u>, 822 F.3d 47, 57 (2d Cir. 2016).

Plaintiffs allege that Local Law 64 will "inevitably divert" air traffic from the Downtown Manhattan and East 34th Street Heliports. Compl. at ¶ 36. The City claims that Plaintiffs "offer no factual basis whatsoever" for this claim. Mot. at 20. In fact, Plaintiffs have commissioned and attached a diversion study to support this claim. <u>See</u> Smith Decl., Ex. A. As relevant here, that study concludes that LGA and JFK will absorb 10% and 9% of displaced activity, respectively, for a total of approximately 9,000 annual operations. <u>Id.</u> As the study explains, since helicopters are not subject to slot controls, "JFK and LGA may offer displaced operators greater scheduling flexibility, predictable access during peak periods, and reduced administrative barriers relative to city owned heliports." <u>Id.</u> at 12.

Ms. Seskin's standing is premised on the following: some number of flights[15] to the Heliports will necessarily be diverted to LGA and JFK as a result of Local Law 64. <u>See</u> Compl. at ¶¶ 47, 169, 170, 234; <u>see also</u> Smith Decl., Ex. A at ii ("The analysis indicates that a significant portion of displaced helicopter activity would likely divert to airport-based

---

[15] The City does not estimate how many flights would be considered non-essential under its theory of the law. Mot. at 4–5, 21. Instead, it relies on an out-of-context quotation from EHRC's chairman that "several Stage 2-helicopters . . . could meet Stage 3 noise-certification requirements." <u>Id.</u> at 21. Plaintiffs' diversion study suggests that non-essential flights would be 95-98% of the current use of the Heliports. Smith Decl., Ex. A at ii.

22

facilities, including [JFK] and [LGA].")[16]  Helicopter flights coming from the east end of

Long Island, or outside the state, will approach JFK and LGA from the east.  See Smith Decl.

at ¶ 8.  In approaching JFK and LGA from the east, many of those helicopter flights,

particularly those for whom the pilots are not instrument-certified, will be directed by the

FAA to use what is known as the "Track" route.  See Smith Decl. at ¶ 13. [17]  As the City

concedes, Ms. Seskin's home is near the Track route.  See Mot. at 22; Seskin Decl. at ¶¶ 1–3;

Smith Decl. at ¶ 16.  Thus, she plausibly alleges she is concerned about an increase in noise,

exacerbating that which she already lives with, and an increase in pollution.  See Compl. at

¶¶ 233–36; Seskin Decl. at ¶¶ 5–6; see also DMJ Assocs., L.L.C. v. Capasso, 288 F. Supp. 2d

262, 272 (E.D.N.Y. 2003) (holding that standing was sufficient where plaintiff relied on, *inter

alia*, an environmental impact study).

The City's purported evidence to the contrary is insufficient and betrays its own

fundamental misunderstanding of the basis for Ms. Seskin's standing.  See Katz, 872 F.3d at

119.  First, the City insinuates that no diversion will occur based on the *ipse dixit* that

"existing tour operators and air taxi services" would "simply use compliant vehicles[,]"

conjuring up helicopters that simply do not exist.  Mot. at 21.  This ignores both the fact that

the East 34th Street Heliport does not even permit tour flights and the existence of non-air taxi

commuter flights.  See Compl. at ¶ 65.  In fact, the City concedes the basic factual premise

---

[16] The City takes issue with Plaintiffs' allegation that "*if* non-essential helicopter flights are banned at the East 34th Street and Downtown Manhattan Heliports, a portion of these flights will be diverted to the heliports at JFK and LaGuardia Airports," claiming it is a "claim of injury" "couch[ed] . . . as a hypothetical."  Mot. at 20 (emphasis in original), citing Compl. at ¶ 234.  Notably, the City does not claim that no flights will be diverted nor that the legislation is set to take effect in 2029—if not struck down by this Court.

[17] The Track route is not an instrument approach to a runway but, rather, a designated helicopter transit route used to move aircraft through controlled airspace.  See Smith Decl. at ¶ 14.

23

for Ms. Seskin's claim: that there are a "smaller number of longer-range flights to commuter destinations on Long Island, Connecticut, and elsewhere in the region." Mot. at 23.

Contrary to the City's insinuation, Ms. Seskin does not claim that "airport shuttles" or "Manhattan sightseeing tours" would pass over her home. Id. Nor is it relevant to her claim that Garden City is "substantially east" of JFK and LGA. Id. at 22. She alleges, instead, that traffic from the east end and Connecticut, diverted to JFK and/or LGA, would affect her by increasing both noise and pollution. See Seskin Decl. at ¶¶ 4–6. This both constitutes an injury in fact and brings her within the zone of interest contemplated by SEQRA. See Sunrise Dev., Inc., 62 F. Supp. 2d at 771–72.

Second, the City's Chief Data Scientist claims to have "performed extensive analysis of a sample of historical flight track data for helicopter flights using the New York City airspace." Moussawi Decl. at ¶ 4. However, far from being extensive in temporal scope, the data includes flight tracks for a single month in May 2023, two years before the legislation was enacted. Id. at ¶ 6. Mr. Moussawi goes so far as to admit the incompleteness of his data: "[w]hile the data team acknowledged some data gaps and possible categorization errors, in general, the data was determined to be sufficiently accurate to provide a general foundation of flight information that was useful in formulating heliport policy." Id. at ¶ 7. In analyzing that data, the City "categorized flights into 'tour', 'non-tour,' and 'NYPD,' flights[,]" conceding that "the data and flight categorizations are not perfect, but are useful for a general understanding of the situation." Id. at ¶ 14.

This patently insufficient data overgeneralizes the categories of flights and does not refute Plaintiff's assertion that certain commuter flights come from points east of New York City and traverse Long Island. In fact, Mr. Moussawi attests that "flight approaches to JFK

24

and [LGA] rarely traversed Garden City[,]" not that they never do.  Id. at ¶ 24.  Put differently, merely because "more than half" of the flights from the East 34th Street heliport "were shuttles" to regional airports does not mean that there were *no* commuter flights to points beyond that.  Id. at ¶¶ 20–21.  Plaintiffs do not suggest that "flights to and from JFK necessarily fly over Garden City[,]" but that some portion of those flights—those coming from points east—do.  Id. at ¶ 22.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that Defendant's motion be denied in its entirety and the Court grant any such other and further relief as it may think proper.

Dated: New York, New York
        March 27, 2026

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _____
        James M. Catterson
        Brianna S. Walsh
        Danielle Stefanucci
31 West 52ⁿᵈ Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax:    212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com
danielle.stefanucci@pillsburylaw.com

*Attorneys for Plaintiffs the Eastern Region Helicopter Council and Vertical Aviation International*

**HOLWELL SHUSTER & GOLDBERG LLP**

By: _____
        Jayme Jonat
425 Lexington Avenue
New York, NY 10017
Phone: 646.837.8455
jjonat@hsgllp.com

*Attorneys for Plaintiff Victoria Seskin*

26