Case 2:25-cv-04682-NGG-LGD   Document 37   Filed 04/24/26   Page 1 of 17 PageID #: 927

Index No.  25-CV-4682 (NGG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EASTERN REGION HELICOPTER COUNCIL,
VERTICAL AVIATION INTERNATIONAL, and
VICTORIA SESKIN,

Plaintiffs,

- against -

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE MOTION TO
DISMISS THE COMPLAINT**

***STEVEN BANKS***

*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Owanaemi Briggs, Aimee Lulich,*
*Nathan Taylor*
*Tel:  (212) 356-2209*
*Matter No. 2025-060460*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT

      POINT I

            PLAINTIFFS' PREEMPTION CLAIMS FAIL ......................................... 1

            A.    Local Law 64 is not preempted by ANCA ......................................... 3

            B.    Local Law 64 is not preempted by the FAA's authority to regulate safety ................................................. 5

            C.    Plaintiffs cannot maintain a challenge under the AAIA ................................................................................. 6

      POINT II

            PLAINTIFFS' SEQRA CLAIM FAILS FOR LACK OF STANDING ................................................................ 7

            A.    Plaintiffs Shift to a Different Theory of Injury in their Motion Opposition ................................................. 8

            B.    Plaintiffs' Speculation about Diversions' Impact on Garden City Overflights ....................................... 9

            C.    Plaintiffs' Diversion Scenario Would Not Increase Garden City Overflights ....................................... 11

      CONCLUSION ........................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Pages**

Armstrong v. Exceptional Child Center,
    575 U.S. 320 (2015)....................................................................................................7

Barnum v. Millbrook Care Ltd. Partnership,
    850 F. Supp. 1227 (S.D.N.Y. May 12, 1994) ....................................................2

Chambers v. Time Warner,
    282 F.3d 147 (2d Cir. 2002)............................................................................2

Congemi v. United States,
    13 F.4th 115 (2d Cir. 2021) ............................................................................2

East Hampton Airport Prop. Owners Ass'n v. Town Bd. of E. Hampton,
    72 F.Supp.2d 139 (E.D.N.Y. Oct. 29, 1999).....................................................6

Friends of the E. Hampton Airport v. Town of E. Hampton,
    152 F.Supp.3d 90 (E.D.N.Y. June 26, 2016),
    rev'd in part on other grounds, 841 F.3d 133 .................................................6, 7

Friends of the E. Hampton Airport v Town of East Hampton,
    841 F.3d 133 (2d Cir. 2016)............................................................................3

Friends of the Earth, Inc. v. Laidlaw Env't Servs.
    (TOC), Inc., 528 U.S. 167 (2000) ...................................................................7

Goe v. Zucker,
    43 F.4th 19 (2d Cir. 2022) .........................................................................2, 3, 5

Hadwan v. U.S. Dep't of State,
    139 F.4th 209 (2d Cir. 2025) ..........................................................................2, 3

Hirsch v. Arthur Andersen & Co,
    72 F.3d 1085 (2d Cir. 1995).............................................................................6

Hubbuch v. Cap. One,
    2026 U.S. Dist. LEXIS 53116 (S.D.N.Y. Feb. 10, 2026).....................................2

Kleinman v. Elan Corp.,
    716 F.3d 145 (2d Cir. 2013).............................................................................1

Lujan v. Defs. of Wildlife,
    504 U.S. 555, 560–61 (1992)............................................................................7

New Jersey, LLC v. Aetna Life Ins. Co.,
    2024 U.S. App. LEXIS 24523 (2d Cir. 2024) ....................................................2

**Cases**                                                                                           **Pages**

Perry v. NYSARC, Inc.,
    424 F.App'x 23 (2d Cir. 2011) ......................................................................................2, 5, 6

Poindexter v. EMI Record Group, Inc.,
    2012 U.S. Dist. LEXIS 42174 (S.D.N.Y. Mar. 27, 2012) .......................................................2

Sigalovskaya v. Braden,
    149 F.4th 226 (2d Cir. 2025) ..................................................................................................2

Vill. Green at Sayville, LLC v. Town of Islip,
    43 F.4th 287 299, n. 7 (2d Cir. 2022) ....................................................................................2

Wright v. Ernst & Young Llp,
    152 F.3d 169 (2d Cir. 1998).....................................................................................................8

**Statutes**

14 C.F.R 161.203(b) ......................................................................................................................3

14 C.F.R. pt. 36, app'x H § H36.305 .............................................................................................4

49 U.S.C. § 46110.........................................................................................................................6

49 U.S.C. § 47524(b) ....................................................................................................................3

Fed. R. Civ. P. 12(b)(1).................................................................................................................1

Fed. R. Civ. P. 12(b)(6)................................................................................................................1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

EASTERN REGION HELICOPTER COUNCIL,
VERTICAL AVIATION INTERNATIONAL, and
VICTORIA SESKIN,

                               Plaintiffs,          25-CV-4682 (NGG)

                  - against -

THE CITY OF NEW YORK,

                              Defendant.
------------------------------------------------------------------------- x

      Defendant City of New York ("City"), by its attorney, Steven Banks, Corporation Counsel of the City of New York, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' PREEMPTION CLAIMS FAIL**

      As a preliminary matter, Plaintiffs repeatedly, and incorrectly, argue that the City's motion to dismiss relies upon "extrinsic evidence" and that the Court is constrained to blindly accept only the allegations in the Complaint as true.  Opp., pp. 13-15 & 16-17.  This argument misconstrues both the exhibits proffered by the City and the Fed. R. Civ. P. 12(b)(6) standard.  In deciding a motion pursuant to Rule 12(b)(6), in addition to the allegations in the complaint, a court may consider documents attached to the complaint, documents incorporated into the complaint by reference, public records, documents of which the court may take judicial notice, and documents that the plaintiff relied upon in bringing the action.  *See, e.g., Kleinman v. Elan Corp.*, 716 F.3d 145, 152 (2d Cir. 2013).  A document is integral to a complaint, and thus

may be considered on a motion to dismiss, where the complaint relied heavily upon the terms and effect of the document.  *See, e.g., Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002); *New Jersey, LLC v. Aetna Life Ins. Co.*, 2024 U.S. App. LEXIS 24523, *3-5 (2d Cir. 2024) (call transcript was integral because it was referenced directly in the complaint, which relied heavily on phrases and context from the call); Barnum v. Millbrook Care Ltd. Partnership, 850 F. Supp. 1227, 1232 (S.D.N.Y. May 12, 1994) (considering a Sales Agreement as integral to the complaint where the claim was based upon that Agreement).

"[A]s a fundamental matter, courts may take judicial notice of legislative history." *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022).  Further, a court may take judicial notice of "documents retrieved from official government websites" and government reports. *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287 299, n. 7 (2d Cir. 2022); *see also Sigalovskaya v. Braden*, 149 F.4th 226, 237 (2d Cir. 2025) (taking judicial notice of the Department of Homeland Security's organizational structure); *Hadwan v. U.S. Dep't of State*, 139 F.4th 209, 219 (2d Cir. 2025) (taking judicial notice of a report by the United States Office of the Inspector General); *Congemi v. United States*, 13 F.4th 115, 124 n. 4 (2d Cir. 2021) (taking judicial notice of the United States Army Corp. of Engineers website).

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Hubbuch v. Cap. One*, 2026 U.S. Dist. LEXIS 53116, *24 (S.D.N.Y. Feb. 10, 2026) (*citing Poindexter v. EMI Record Group*, Inc., 2012 U.S. Dist. LEXIS 42174, *6 (S.D.N.Y. Mar. 27, 2012); *see also Perry v. NYSARC, Inc.*, 424 F.App'x 23, 25 (2d Cir. 2011)

All of the documents proffered by the City may properly be considered on a motion to dismiss.  The vast majority—Exhibits A through F—are part of the legislative history

2

for Local Law 64, thus the Court may take judicial notice of them. *Goe*, 43 F.4th at p. 29. All the Exhibits are also matters of public record and published on official government websites. The FAA Advisory Circular annexed to the Lulich Decl. at Exhibit G  and the EDC report annexed to the Briggs Decl. at Exhibit J, are  judicially noticeable as a government reports published by the FAA and EDC respectively. *Hadwan*, 139 F.4th at 219.  The Court may take judicial notice of all the documents annexed as Exhibits by the City.

## A.    Local Law 64 is not preempted by ANCA

Plaintiffs' continued misreading of Local Law 64, ANCA, and its accompanying regulations, have prevented them from pleading facts sufficient to establish that Local Law 64 is conflict preempted by ANCA.  First, Plaintiffs argue that Local Law 64 violates ANCA because it was enacted prior to undergoing ANCA's procedural requirements.  In support, Plaintiffs rely upon *Friends of the E. Hampton Airport v Town of East Hampton*, 841 F.3d 133 (2d Cir. 2016) for the supposition that "actions taken in violation of legal mandates, are by their nature, unreasonable and arbitrary." *See* Opp. at 12. However, this blanket supposition misconstrues ANCA's plain language. ANCA mandates that its procedural requirements be completed "at least 180 days before the effective date of the *proposed restriction*" not its encapsulating legislation. *See* 49 U.S.C. § 47524(b); 14 CFR 161.203(b) ("The notice and analysis required by this subpart shall be completed at least 180 days prior to the effective date of the restriction.") As such, the effective date of the noise restriction in Local Law 64 is dispositive, *contra* Opp. 13, demonstrating compliance with ANCA not just by incorporating its procedural requirements, but also providing the City with at least three years to meet said requirements. This latter point further undermines Plaintiffs' conclusory claims that the City had no intent to comply with ANCA, because full compliance "can take years."  *See* Compl. ¶ 172.

3

Second, Plaintiffs are incorrect that Local Law 64 defines "covered helicopter" by the aircraft's certification by the FAA rather than its calculated noise levels.  Opp. at 14. Plaintiffs erroneously allege, "that a helicopter must be certificated as stage 3 in order to be considered a covered helicopter." Opp. at 15. As covered helicopters are *prohibited* under Local Law 64, Plaintiffs' conclusion would result in the nonsensical scenario wherein quieter stage 3 certified helicopter models would be restricted, while leaving noisier stage 2 certificated models unaddressed. This is clearly not what Local Law 64 does.

Further, the plain text of Local Law 64 demonstrates that "covered helicopters" have *calculated noise levels higher than the stage 3 noise limits* set by in 14 C.F.R. pt. 36, app'x H § H36.305 or app'x J § J36.305, not that covered helicopters are those *certified* as stage 1 or stage 2 or not certified as stage 3. Def. Mot. at 4.  Therefore, the law does not prohibit helicopters that comply with the FAA's stage 3 noise limits, regardless of certification. *Id.*. This conforms with the interpretation that EDC uses in implementing Local Law 64. *See* EDC Report, Briggs Decl., Ex. A at 2 (stating "[h]elicopters meeting Stage 3—the strictest noise limits in the US—are not considered 'covered'").  Only three helicopter models operating at City heliports have variants that do not meet Stage 3 noise limits, and EDC was not aware of any covered helicopters operating at City-owned heliports during calendar year 2025. *Id*. at 3. Consistent with the plain language of Local Law 64, EDC does not consider certification of the aircraft in determining whether it is a "covered helicopter" but rather its calculated noise level.

Finally, Plaintiffs fail to plead facts demonstrating that Local Law 64 impermissibly delegates the City's obligations to fixed based operators.  At this stage, the onus is not on Defendant to refute Plaintiffs' conclusory allegations, but to expose the absence of factual

4

allegations to support a cognizable claim. For the reasons set forth in Defendant's moving papers, this claim fails. *See* Def. Mem. at. 13-14.

Accordingly, Plaintiffs fail to demonstrate that Local Law 64 is preempted by ANCA.

**B.     Local Law 64 is not preempted by the FAA's authority to regulate safety**

Local Law 64 does not regulate within the field of air safety, and, thus, does not interfere with the federal regulation of air safety under the Federal Aviation Act. *See* Def. Mem., Point I.B. Plaintiffs assert that the Court may not consider the law's text or legislative history, even including the portions of the legislative history selectively quoted by Plaintiffs in the Complaint. Opp. at pp. 16-17. This argument fails because the plain text of the law demonstrates that it regulates noise, and Plaintiffs' conclusory allegations fail to plausibly plead otherwise. Early, un-enacted versions of a law and the partial statements of one Council Member on one occasion are insufficient to demonstrate that Local Law 64 regulates safety. The Court need only look to the text of the law itself to determine that it does not fall within the field of air safety as defined by the Federal Aviation Act. *See* Def. Mem., Point I.B.

However, to the extent Plaintiffs appear to argue that the Court must accept Plaintiffs' cherry-picked quotations from the legislative record as true but turn a blind eye to the rest of that same record, such argument fails.[1] Opp. at pp. 16-17. Plaintiffs point to "the committee report and the title of the committee meeting for the first iteration of the legislation was designated 'Helicopter Noise and Safety'" Opp. at p. 17 (citing Compl. ¶¶ 80-82.) The Court may take judicial notice of the legislative history, *Goe*, 43 F.4th at 29, which demonstrates that the version of the law actually enacted by City Council had the stated purpose of regulating

---

[1] By partially quoting Council Member Farias's statements at the Stated Meeting, Plaintiffs incorporated the transcript of the Stated Meeting by reference. To the extent this Court considers the factual allegations contained in ¶¶ 197—199 of the Compl., it should be in light of the full transcript of the proceedings quoted. *Perry,* 424 F. App'x 23 at 25.

5

"helicopter noise" and, on its face, regulates noise. Def. Mem. at p. 15   The Court is not required to accept factual allegations in the Complaint that are contradicted by facts of which the Court may take judicial notice, or by documents upon which the Complaint relied.   *Perry*, 424 F. App'x at 25 (*citing Hirsch v. Arthur Andersen & Co*, 72 F.3d 1085, 1095 (2d Cir. 1995).

## C.    Plaintiffs cannot maintain a challenge under the AAIA

Plaintiffs cannot receive the relief they seek in this action—a finding that Local Law 64 violates the AAIA by granting exclusive rights to essential flights to the detriment of non-essential flights—because the AAIA requires that such complaints be determined in administrative proceedings before the FAA.  *See* 49 U.S.C. § 46110.

The AAIA does not provide for a private cause of action in the courts to enforce its substantive provisions, and a claim under the Supremacy Clause requires that the federal statute has taken away local authority to regulate the activity at issue. Def. Mem., Point I.C. Here, the Complaint seeks enforcement of the substantive provisions of federal law, which Plaintiffs allege are violated by Local Law 64, but does not plead facts[2] to support a claim that the AAIA has taken away local authority that is implicated by Local Law 64.  Nor is there any legal precedent for a finding that the AAIA is intended to preempt local regulation.  *See, e.g., Friends of the E. Hampton Airport v. Town of E. Hampton*, 152 F.Supp.3d 90, 102-104 (E.D.N.Y. June 26, 2016), rev'd in part on other grounds 841 F.3d 133*; East Hampton Airport Prop. Owners Ass'n v. Town Bd. of E. Hampton*, 72 F.Supp.2d 139, 147 (E.D.N.Y. Oct. 29, 1999).

Further, contrary to Plaintiffs' arguments, the principles of equity jurisdiction do not apply here because Congress intended to foreclose equitable enforcement of the AAIA's

---

[2] The Complaint's conclusory assertion that the AAIA preempts Local Law 64 sounds in legal argument, not factual allegation, and is insufficient to support a preemption claim.

6

federal fund requirements by placing authority for the enforcement of the AAIA's requirements in the hands of the Secretary of Transportation.  As the District Court found in *Friends*, 152 F.Supp.3d at 105, unlike ANCA, the AAIA contains a comprehensive administrative enforcement scheme.  This is consistent with *Armstrong v. Exceptional Child Center*, 575 U.S. 320, 328-29 (2015) where the Supreme Court found that Congress intended to foreclose equity jurisdiction because: (1) it provided a means of enforcement through the Secretary of Health and Human Services for the failure of a state to comply with a spending requirement in the Medicaid Act, and (2) interpretation of the spending requirement required the "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decision making."  Here, any determination regarding Plaintiffs' allegations that Local Law 64 grants exclusive rights in violation of the AAIA should be left in the first instance to the administrative process set forth in the statute itself.

**POINT II**

**PLAINTIFFS' SEQRA CLAIM FAILS FOR LACK OF STANDING**

Plaintiffs' opposition memorandum only confirms that they lack standing to sue under SEQRA. It is the Plaintiffs' burden to establish standing under SEQRA. Instead, they rely on an unpled theory of injury-in-fact, and fail to support even that novel theory with a showing that *incremental* Garden City overflights are likely. Plaintiffs thus fail to show "an injury that is different from that of the public at large," nor that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Because Plaintiffs failed to articulate a nonspeculative basis to show any injury, they fail to meet their burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992). The SEQRA claim must be dismissed.

7

**A.      Plaintiffs Shift to a Different Theory of Injury in their Motion Opposition**

As a matter of law, Plaintiffs cannot shift their standing argument to a new theory never articulated in the pleadings. *Wright v. Ernst & Young Llp*, 152 F.3d 169, 171 (2d Cir. 1998) ("A party is not entitled to amend its complaint through statements made in motion papers."). However, Plaintiffs' motion opposition does exactly this, entirely reformulating their theory of injury.

Plaintiffs concede that they cannot establish standing based on the vast majority of flights that would supposedly be displaced from the Covered Heliports. Opp., p. 24. ("Ms. Seskin does not claim that 'airport shuttles' or 'Manhattan sightseeing tours' would pass over her home."). They even abandon the allegation that Garden City is under the "flight path of helicopter approaches" to JFK and La Guardia airports, Compl. ¶ 233—which, as demonstrated in the City's motion papers, it is not. *See* Def. Mem., p. 22; Opp., p. 23n.7 ("The Track route is not an instrument approach to a runway, but, rather, a designated helicopter transit route used to move aircraft through controlled airspace"); *see also* Def. Mem. at p. 22–23.

Instead, Plaintiffs newly identify a small subset of flights—those from eastern origins traveling to NYC—that may pass over Garden City on FAA's designated "Track" route. They then claim that the number of flights on this upstream "Track" route—not JFK/LGA airport flight approaches—could increase under Local Law 64. Opp., p. 22–23. However, this theory of standing is different from the Complaint's reliance on Garden City lying under the "flight path of helicopter approaches" to JFK and La Guardia airports, Compl. ¶ 233. Plaintiffs may not change theories in mid-stream. *Wright*, 152 F.3d at 171.

8

**B.**    **Plaintiffs' Speculation about Diversions' Impact on Garden City Overflights**

Even if they could invoke the "Track" route now for the first time, Plaintiffs' new theory of standing is no less speculative than the Complaint's airport "helicopter approach" theory.

Plaintiffs' Declaration of Jeffrey Smith, the Chairman of ERHC, claims that flights diverted from the Covered Heliports to JFK or LGA will have to traverse the highly regulated "Class B" airspace over those airports, and thus "will be directed by the FAA to follow commonly used routes, including the 'Track' route." Smith Decl. ¶ 10-13.  Plaintiffs submit a purported "Diversion Study" claiming to have modeled how Local Law 64 may change flight volumes at NYC-area heliports.

However, this "Diversion Study" suffers from two fundamental flaws.[3] First, it assumes that there are no helicopters in the market other than Local Law 64 "Covered Helicopters," and that therefore, all "non-essential" helicopter flights will be displaced from the Covered Heliports. Smith Decl., Ex. A ¶ 1.1. As discussed *supra*, this is nearly the opposite of the reality. In fact, NYCEDC is not aware of *any* "Covered Helicopters" operating in the NYC fleet in all of 2025, meaning that the overwhelming majority if not all helicopters currently in the market may simply continue servicing their existing routes, even under Local Law 64. Thus, the Diversion Study is premised on diversions that simply would not be necessary. This point alone is entirely dispositive of Plaintiffs' lack of standing.

---

[3] In addition to these, the Diversion Study has additional defects that undermine its utility even for the purpose for which it was offered. *See* Moussawi Decl. ¶¶ 19–27. It completely ignores the existence of the West 30th Street Heliport—the highest volume heliport for existing flights between Long Island and Manhattan. *Id.* ¶ 21–22. And it projects diversions in the aggregate, though Plaintiffs acknowledge that some categories of flights, such as tour and air taxi flights, do not pose a threat of overflying Garden City.

9

Second, even if the Study's assumptions about volume of diversions were true, Plaintiffs never even attempt to connect their modeled *heliport* diversions with increased volume on the "Track" *route* over Garden City. Neither Smith's Declaration nor its attached "Diversion Study" address that most flights between the Covered Heliports and points east on Long Island already traverse exactly the same Class B airspace needed to reach JFK and LGA, and thus, are subject to exactly the same FAA regulation of their routing. The Plaintiffs simply assume that *any* use of the "Track" route to access JFK/LGA would represent an "increase" in Garden City overflights, ignoring that the flight may have previously used the Track route to access one of the Covered Heliports.

The Plaintiffs' omission is especially notable because the Diversion Study purported to analyze actual flight track radar data. Smith Decl., Ex. A, Fig. 2-1; § 4-1. This information would have revealed—and when re-examined by the City Council's Data Team, in fact *did* reveal that existing flights serviced by the Covered Heliports already include a substantial proportion of traffic using the "Track" Route, as shown at right. Moussawi Reply Decl. ¶ 31.



**2025 Flights with Endpoints E. of Garden City**

E. 34th Street Heliport

Downtown Manhattan Heliport

*Figure 1*: Excerpt, Moussawi Reply Decl., p. 11 (2025 flight tracks from covered heliports with eastern endpoints, Garden City shown in green)

Though having the relevant data at hand, the Plaintiffs completely failed to address the key determinant of their new theory of Ms. Seskin's standing: whether the number of

new flights between eastern sites and JFK/LGA using the "Track" route would *exceed* the number of flights servicing the Covered Heliports that *already* use the "Track" route.

### C.    Plaintiffs' Diversion Scenario Would Not Increase Garden City Overflights

The City Council Data team has assessed Plaintiffs' claims on their own terms in order to determine whether there is any nonspeculative basis to believe Local Law 64 would increase flights over Garden City. It found that they would not.

The Data Team acquired bulk flight track data for the entire New York City Metro area. They then filtered the data to exclude tour flights and other flights that were solely within NYC or between NYC and western destinations. This left a dataset comprising *only* those flights for which the origins and destination were on either side of Garden City, and thus, might plausibly utilize the "Track" route (though most did not). Moussawi Reply Decl. ¶ 30.

The Data Team then calculated the rate of "Track" route utilization for all five major NYC heliports in 2025. Notably, flights servicing the Covered Heliports already included a meaningful number of flights using the Track route, as seen above. While the heliport with the highest percentage of "Track" route utilization was, indeed, JFK, the lowest by a large margin was LGA. Thus, the chance that a flight from the Covered Heliport would overfly Garden City would increase if diverted to JFK, but decrease if diverted to LGA.

Having determined this, the Data Team calculated how use of the "Track" route, and thus, Garden City overflights, may have been affected if all 2025 flights servicing the Covered Heliports had been diverted to use JFK, LGA, and the West 30th Street heliports instead. The model assumed that, for each heliport receiving newly redistributed flights, the flights would cross Garden City at the same proportion as existing flight traffic already observed between that heliport and eastern endpoints.

11

The Data Team modeled three scenarios, in order to capture the various scenarios fairly suggested by the Plaintiffs' allegations, as seen below. These included an equal distribution between JFK and LGA; a 60% LGA and 40% JFK split reflecting the Diversion Study's acknowledgment that "LGA is best positioned to absorb Midtown-oriented business and charter traffic due to comparatively favorable ground access"; and, a scenario assuming equal diversion to JFK, LGA, and the W. 30th St. Heliport (which the Plaintiffs' Diversion Study inexplicably omitted from its analysis entirely). Under every one of these alternate scenarios, flights crossing Garden City would have either stayed essentially the same, or even *decreased*.

| City Council Data Team Analysis - Garden City Crossing Impact of Redistribution of 7,442 Flights Between NYC and Eastern Endpoints | | | | |
|---|---|---|---|---|
| Scenario | Total Garden City Overflights | Aggregate % | Change (flights) | Change (%) |
| 2025 Existing conditions | 1,422 | 19.1% | — | — |
| Equal split: JFK / LGA | 1,419 | 19.1% | -3 | -0.2% |
| 60% LGA / 40% JFK | 1,349 | 18.1% | -73 | -5.1% |
| Equal thirds: JFK / LGA / West 30th | 1,420 | 19.1% | -2 | -0.1% |

*Table 1*: Summary of Data Team Conclusions, Flight Redistributions, Moussawi Decl., ¶¶ 33–39, Figs. 5–7.

Given the Plaintiffs' failure to show any injury-in-fact, and the Data Team's conclusions that, even under the Plaintiffs' own flight diversion scenarios, Garden City would not experience an increase in helicopter overflights, Plaintiff Victoria Seskin lacks standing to maintain a SEQRA suit. The state law claims must be dismissed.

12

## CONCLUSION

For the foregoing reasons, defendant City respectfully requests that this Court grant its motion to dismiss the Complaint, and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
           April 24, 2026

           Steven Banks
           Corporation Counsel
              of the City of New York
           *Attorney for Defendant City of New York*
           100 Church Street
           New York, New York 10007
           (212) 356-2369

           By:_____/S/_____
              Owanaemi A. Briggs
              Aimee K. Lulich
              Nathan Taylor

13