UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTERN REGION HELICOPTER COUNCIL, VERTICAL AVIATION INTERNATIONAL, and VICTORIA SESKIN,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF NEW YORK,<br><br>Defendant. | Civil Action No. 25-cv-04682 (NGG) (LGD) |

**PLAINTIFFS EASTERN REGION HELICOPTER COUNCIL & VERTICAL AVIATION INTERNATIONAL'S SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..... 1
POINT I: PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS ..... 2
A. Relevant Allegations in the Complaint. ..... 2
B. Plaintiffs Have Plausibly Alleged Organizational Standing ..... 2
POINT II: PLAINTIFFS' CLAIMS ARE RIPE FOR REVIEW ..... 4
A. Text of the Legislation and Relevant Colloquy at Oral Argument. ..... 4
B. Plaintiffs' Declaratory Judgment Claims are Ripe. ..... 7
CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship,
6 F.3d 867 (2d Cir. 1993) ....................8

Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,
868 F.3d 104 (2d Cir. 2017) ....................3

Cerame v. Slack,
123 F.4th 72 (2d Cir. 2024) .................... 8, 11

Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC,
167 F.4th 605 (2026).................... 3, 4

Douglas v. Seacoast Prods., Inc.,
431 U.S. 265 (1977)....................8

Food and Drug Admin. v. All. for Hippocratic Med.,
602 U.S. 367 (2024).................... 2, 3

Havens Realty Corp. v. Coleman,
455 U.S. 363 (1982).................... 2, 3

Isaacs v. Bowen,
865 F.2d 468 (2d Cir. 1989) ....................11

Lujan v. Defs. of Wildlife,
504 U.S. 555 (1992)....................7

Moya v. U.S. Dep't of Homeland Sec.,
975 F.3d 120 (2d Cir. 2020) .................... 2, 3, 4

Nat'l Org. for Marriage, Inc. v. Walsh,
714 F.3d 682 (2d Cir. 2013) ....................*passim*

N.Y. Civ. Liberties Union v. Grandeau,
528 F.3d 122 (2d Cir. 2008) .................... 7, 8, 11

Reno v. Catholic Soc. Servs., Inc.,
509 U.S. 43 (1993)....................7

Simmonds v. I.N.S.,
326 F.3d 351 (2d Cir. 2003) .................... 7, 10, 11

Spokeo, Inc. v. Robins,
578 U.S. 330 (2016) .......... 2

Susan B. Anthony List v. Driehaus,
573 U.S. 149 (2014) .......... 8

**Statutes**

49 U.S.C. § 40103 .......... 1, 3, 4, 8

49 U.S.C. § 47524(b) .......... 5, 9

**Regulations**

14 C.F.R. Part 36 .......... 5

Plaintiffs Eastern Region Helicopter Council (hereinafter referred to as "ERHC"), Vertical Aviation International (hereinafter referred to as "VAI," and together with ERHC, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in response to the Court's September 17, 2026 Order directing supplemental briefing on the "issues of ripeness and standing."

## PRELIMINARY STATEMENT

As set forth below, Plaintiffs bring three declaratory judgment claims under the Supremacy Clause, alleging that Res. No. 26-A[1] is preempted by three federal statutes: ANCA, the Federal Aviation Act, and 49 U.S.C. § 40103. Each Plaintiff is an organization whose members include helicopter pilots and other vertical aviation stakeholders who would be affected by Res. No. 26-A's prohibition on "non-essential" flights at two City-owned heliports. Where, as here, the challenged legislation injures an organization's activities, Plaintiffs have standing to bring their claims.

Plaintiffs' claims are also ripe because of how Res. No. 26-A is structured. By its plain terms, it decrees that a predetermined restriction be imposed regardless of the outcome of the study that ANCA requires. Put differently, neither the City nor any of its agencies retain any discretion to revise or revoke the restriction on all "non-essential" helicopter flights based on the results of the study. This constitutes an impermissible end-run around ANCA, rendering the federally mandated study a dead letter and Plaintiffs' claims ripe for determination by this Court. On these grounds, and those set forth in Plaintiffs' opposition to the motion to dismiss, Plaintiffs respectfully request that Defendant's motion be denied in its entirety.

[1] Capitalized terms not defined herein have the meanings ascribed to them in Plaintiffs' opposition to the City's motion to dismiss. ECF No. 33.

**POINT I**

**PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS**

**A. Relevant Allegations in the Complaint.**

As alleged in the complaint, Plaintiff ERHC is "a New Jersey non-profit organization incorporated in 1979 that represents the interests of helicopter pilots" and has an "active outreach program to address concerns raised by residents relating to helicopters in New York." Compl. ¶ 45. Its members "include helicopter tour operators, charter services, and commuter air carriers who regularly use the Downtown Manhattan and East 34th Street Heliports for non-essential flights." Id. ¶ 120. Plaintiff VAI is a "Virginia non-profit organization" that "represents all aspects of the vertical take-off and landing industry and considers itself the global voice in promoting safety, community compatibility, professionalism, innovation, and the economic viability of the industry." Id. ¶ 46. It "has more than 17,000 members, which include both operators and suppliers in the vertical aviation industry." Id. ¶ 121.

Moreover, Plaintiffs, along with the NBAA, AOPA, and other organizations, joined in sending a letter on behalf of the aviation community to the sponsors of the legislation. Id. ¶ 109. Plaintiffs also allege that "ERHC and VAI members will be limited in conducting their current flights from City-owned heliports, resulting in loss of revenues, cancellation of scheduled services, and forced relocation to more distant facilities." Id. ¶ 122.

**B. Plaintiffs Have Plausibly Alleged Organizational Standing.**

To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Moya v. U.S. Dep't of Homeland Sec., 975 F.3d 120, 129 (2d Cir. 2020), quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Organizations "may have

standing 'to sue on their own behalf for injuries they have sustained.'" Food and Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 393 (2024), quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, n.19 (1982). "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." Id. at 393–94.

Only a "perceptible impairment of an organization's activities is necessary for there to be an injury in fact." Moya, 975 F.3d at 129 (internal citations and quotations omitted). "[S]ubstantial expenditure of resources and frustration of an organization's mission are sufficient under our precedents to establish injury in fact." Id. at 130; see also Havens, 455 U.S. at 379 (holding that "concrete and demonstrable injury to the organization's activities" and "consequent drain on the organization's resources" conferred standing); Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 111 (2d Cir. 2017) (similar). Likewise, the perceptible impairment of "core business activities" can give rise to organizational standing. Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC, 167 F.4th 605, 618 (2026), citing All. for Hippocratic Med., 602 U.S. at 395.

Plaintiffs bring three claims: (1) for declaratory judgment that Res. No. 26-A is preempted by ANCA; (2) for declaratory judgment that Res. No. 26-A is preempted by the Federal Aviation Act; and (3) for declaratory judgment that Res. No. 26-A is preempted by 49 U.S.C. § 40103(e). The first alleges that "Res. No. 26-A purports to restrict all non-essential helicopters above certain noise thresholds defined by the FAA" from accessing the Downtown Manhattan and East 34th Street heliports, such that it is a noise and access restriction pre-empted by ANCA. Compl. ¶ 158–59. The second alleges that Res. No. 26-A concerns safety, over which the FAA has exclusive authority, and is therefore preempted by the Federal Aviation Act.

Id. ¶¶ 191, 195, 197. The third alleges that because the Downtown Manhattan and East 34th Street heliports receive federal funding, Res. No. 26-A is preempted by the exclusive rights provision of 49 U.S.C. §§ 40103, 47107(a)(4). Id. ¶¶ 208, 211, 218.

At the outset, we note that the City has not raised or challenged Plaintiffs' standing to bring their claims. The City only challenged Ms. Seskin's standing to bring her SEQRA claim, which is addressed separately. In any event, Plaintiffs have standing here to bring each claim. As pleaded in the complaint, the implementation of Res. No. 26-A would have a significant, detrimental impact on Plaintiffs' members, who include "helicopter tour operators, charter services, and commuter air carriers" and "operators and suppliers in the vertical aviation industry," respectively. Compl. ¶¶ 120–21. If Res. No. 26-A prohibits certain non-essential flights, Plaintiffs' members will, in whole or in part, be prevented from flying into those heliports. That constitutes sufficient impairment of Plaintiffs' activities to confer standing. Moya, 975 F.3d at 129; Conn. Fair Hous. Ctr., 167 F.4th at 618. Likewise, the challenged legislation frustrates Plaintiffs' stated missions of representing the interests of helicopter pilots and stakeholders throughout the vertical take-off and landing industry. Moya, 975 F.3d at 130.

## POINT II

## PLAINTIFFS' CLAIMS ARE RIPE FOR REVIEW

### A. Text of the Legislation and Relevant Colloquy at Oral Argument.

Res No. 26-A provides, in relevant part, that "[t]he operator of any heliport shall prohibit covered helicopters from conducting non-essential flights to or from any such heliport, except as otherwise directed by an aviation control tower or air traffic control center or in emergency circumstances where such operation is necessary to protect life, property or

the public health and safety." ECF No. 31-1 at § 1(b). It further provides that:

> [p]rior to implementing the restrictions set forth in subdivision b of this section, the airport operator shall follow the procedure outlined in subsection (b) of section 47524 of title 49 of the United States code and subpart C of part 36 of title 14 of the code of federal regulations. Such restrictions shall not be implemented until 180 days after the publishing and public comment period required by such procedure have commenced.

Id. at § 1(c). Finally, § 3 provides that "[t]his local law takes effect on January 1, 2026, except that section one of this local law takes effect on December 1, 2029, and section two of this local [sic] expires and is deemed repealed on such date." Id. at § 3.

At oral argument, the Court asked the City: "[d]o you think that since this local law doesn't really take effect until 2029, that after you follow the ANCA protocol as required by federal law, that this case is not ripe for this Court to consider?" Declaration of James M. Catterson (hereinafter referred to as the "Catterson Decl."), Ex. A at 5:8–12. The City responded:

> I believe this case is ripe for the Court to consider because the way that this law was drafted was meant to comply with ANCA. The local law proposes a restriction and then requires the airport operator to comply with those federal regulations under ANCA. And that is the basis of the structure, including the delay in the effective date. I think it all is part of the scheme to comply with the local law. [2]

Id. at 5:13–20. The Court then asked Plaintiffs:

> If they're required to follow a certain protocol that's enumerated in federal law but they cannot take steps to implement it until 120 days until it's completed, why is this matter ripe for the Court's consideration as to whether the injury, the alleged injury, should be foreclosed and enjoined until after the study is conducted?
>
> Isn't the study a condition precedent to the implementation of any restriction?

[2] Seemingly at odds with this position is the City's position that the law actually affects no rotary aircraft because, in the City's view, all existing aircraft are already stage 3 compliant. See Catterson Decl., Ex. A at 9:2–6; 24:16–25:2; 28:17–29:21; 31:6–11. There is no evidence of record that that claim is even remotely correct. Indeed, the opposite is true. Moreover, it begs the question of why the City would bother to pass legislation that it contends affects no helicopter traffic to those heliports.

> And wouldn't it be far better to await the outcome of the study than to rush to court in anticipation of the outcome of the study before the study has happened?

Id. at 40:21–41:6. Plaintiffs responded:

> Normally, Judge, I would agree with you. Normally[,] I would and say: Why don't we see what the study says?
>
> The way Local Law 64 is written, though, the restrictions take place 180 days later, not: We will impose the restrictions depending on what the study says.
>
> . . .
>
> This statute is written so that the restrictions take place 180 days after they do the study. Period. It doesn't have any mention of what the effect of the study is, which is why it's a clever way to try and avoid ANCA.
>
> I would suggest Congress didn't enact Part 161, that complicated statutory scheme about what's required in the study, merely to have a municipality pay lip service to it. It's incomprehensible to me that you can say: We'll do the study or the FBO will do the study, but the regulations take effect in 180 days.

Id. at 41:7–42:12. The Court then questioned:

> [I]f a study is completed and you have a full record of everything that was considered and the conclusions that were reached and then someone, an entity or entities or individuals, who would be adversely effected [sic] by the implementation of the restrictions decides they want judicial review, they could then come to court. And it doesn't take 120 days for this Court to impose [] preliminary or temporary relief if for good cause shown there is an issue that needs to be resolved judicially.
>
> So, I'm just wondering, 120 days is a lot of time. So here, we are sort of in the dark. We don't know what the study will show. We have information about what the EDC has ascertained and others have ascertained about flight routes and so on, but it's problematical to reach a conclusion without a full-blown explication of how the applicant – in this case, the City or EDC – arrived at their outcome.
>
> Don't you think that would be a better way of doing this than jumping in now?

Id. at 42:16–43:8. Plaintiffs responded further:

> Judge, were the statute not written this way, I would agree with you. And yes, of course, I agree with you that any plaintiff who is effected [sic] by the implementation of the regulations who believes that the study was just pro forma could come in on a TRO. I agree with you. I do.

I don't think that forecloses an attack based on how the statute is written today.

Id. at 43:9–16.

**B. Plaintiffs' Declaratory Judgment Claims are Ripe.**

"'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction." Simmonds v. I.N.S., 326 F.3d 351, 356–57 (2d Cir. 2003), citing Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57, n.18 (1993). The first, constitutional ripeness, "is a limitation on the power of the judiciary" insofar as it "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." Id. at 357. That requirement "has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction." Id. The Second Circuit has described it as "a specific application of the actual injury aspect of Article III standing." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013). "To say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent' but, instead, 'conjectural or hypothetical.'" Id., quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

The second, prudential ripeness, is "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." Simmonds, 326 F.3d at 357. "[I]t means that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay," not that "the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III." Id. To determine whether to abstain

from a case on prudential ripeness grounds, "we proceed with a two-step inquiry, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Nat'l Org. for Marriage, Inc., 714 F.3d at 691, quoting N.Y. Civ. Liberties Union v. Grandeau, 528 F.3d 122, 131–32 (2d Cir. 2008). "The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." Nat'l Org. for Marriage, Inc., 714 F.3d at 691, citing Grandeau, 528 F.3d at 132; see also AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship, 6 F.3d 867, 872 (2d Cir. 1993) (citations and quotations removed) (holding that "[c]ourts will find a case to lack ripeness when it involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all"). "In assessing this possibility of hardship, we ask whether the challenged action creates a direct and immediate dilemma for the parties." Nat'l Org. for Marriage, Inc., 714 F.3d at 691.

Moreover, in a pre-enforcement suit, an injury in fact will be found where the plaintiff demonstrates "an intention to engage in a course of conduct arguably affected with a constitutional interest" but "proscribed by" statute and that "there exists a credible threat of prosecution thereunder." Cerame v. Slack, 123 F.4th 72, 81 (2d Cir. 2024), quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014). A claim is "basically constitutional in nature" when it "deriv[es] its force from the operation of the Supremacy Clause." Douglas v. Seacoast Prods., Inc., 431 U.S. 265, 271–72 (1977).

At the outset, the Court raised the issue of ripeness only with respect to the ANCA claim, not Plaintiffs' two other claims for declaratory judgment pursuant to the Federal Aviation Act and 49 U.S.C. § 40103. In any event, the ANCA claim is ripe for this Court's review because Plaintiffs' injuries resulting from Res. No. 26-A are "actual [and] imminent," not "conjectural or

hypothetical." See Nat'l Org. for Marriage, Inc., 714 F.3d at 688–89. Res. No. 26-A mandates that "[t]he operator of any heliport shall prohibit covered helicopters from conducting non-essential flights." ECF No. 31-1 at § 1(b). It then provides that "[p]rior to implementing the restrictions set forth in subdivision b of this section, the airport operator shall follow the procedure outlined" in ANCA and its implementing regulations for stage 2 restrictions. Id. at § 1(c).

That procedure requires, *inter alia*, that the airport operator "publish[] the proposed restriction and prepare[] and make[] available for public comment at least 180 days before the effective date of the proposed restriction: (1) an analysis of the anticipated or actual costs and benefits of the existing or proposed restriction; (2) a description of alternative restrictions, (3) a description of the alternative measures considered that do not involve aircraft restrictions; and (4) a comparison of the costs and benefits of the alternative measures to the costs and benefits of the proposed restriction." 49 U.S.C. § 47524(b). Res No. 26-A then provides that "[s]uch restrictions shall not be implemented until 180 days after the publishing and public comment period required by such procedure have commenced" while Section 3 specifies that Section 1 of Res. No. 26-A which includes the proposed restriction, "takes effect on December 1, 2029." ECF No. 31-1 at §§ 1(c), 3.

The inexorable conclusion drawn from the City's statutory scheme is that the airport operator must implement the restriction, *i.e.*, prohibiting certain non-essential helicopters based on specified noise thresholds, regardless of the study's outcome. Put differently, under the plain language of the statute, even if the study demonstrated, for example, that the costs of the proposed restriction significantly outweighed its benefits, or that less restrictive measures would be more appropriate, Res. No. 26-A nonetheless commands that the restriction be implemented

as drafted. There can be no dispute that the statute is worded in that mandatory fashion. Under these circumstances, the genesis of the parties' dispute is not the outcome of the study. See Simmonds, 326 F.3d at 357. Rather, the dispute arises from the existence of the legislation itself, which mandates implementation of the restrictions once the prescribed study is completed, no matter its findings. See Nat'l Org. for Marriage, Inc., 714 F.3d at 688. This is entirely consistent with all of the public comments made by City elected officials at the time of the statute's passage. See, e.g., Compl. 80–93, 114–16. The only real concern was to close the heliports to as many helicopters as possible. See id. ¶ 70–72 (discussing the original iteration of the legislation, which banned all non-electric helicopters).

Nor does the delayed effective date of the restriction render Plaintiffs' claims unripe. Whether the restriction takes effect on December 1, 2029, or after the prescribed 180-day period, its implementation is conditioned only on the study's completion, not its outcome. This reduces the extensive, onerous, and costly study to a mere administrative formality and renders it substantively meaningless. The City implicitly recognized this at oral argument when it stated that ANCA was "silent" as to "the permissible grounds for implementing or changing a restriction" and "what to do with respect to how a conclusion is drawn." Ex. A at 15:4-9; 16:7-14; see also 15:20-22 ("There's no requirement under ANCA with respect to the Section 2 restrictions as to what conclusion must be reached with respect to these proposed restrictions."). This underscores that while the City may purport to conduct a "review, analysis, and consideration of the proposed restriction[s]," it does not believe that ANCA requires it to give those observations any real deference. Id. at 15:4-9. At base, the City believes its legislation facially complies with ANCA, and Plaintiffs believe it does not. That "actual dispute," which will cause actual injury to Plaintiffs, is within the Court's power to decide now. Simmonds, 326

F.3d at 357.

Plaintiffs' claims are also not "better decided later" under principles of prudential ripeness. See Simmonds, 326 F.3d at 357 (emphasis in original). Under the same rubric, the issues sought to be adjudicated, *i.e.*, whether Res. No. 26-A is preempted by ANCA for, inter alia, paying lip service to the statute by enacting first and studying later, are not contingent on future events. See Nat'l Org. for Marriage, Inc., 714 F.3d at 691. Plaintiffs do not seek "pre-enforcement judicial review" of a "nonfinal proposed policy." See Grandeau, 528 F.3d at 132. Rather, the restrictions here will necessarily go into effect by December 1, 2029, or within 180 days of publication of the study, whichever is later. That is a "concrete plan which has been formally promulgated and brought into operation," not a "possibilit[y]" or "proposal[]" for which judicial intervention would be premature. See id., quoting Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989).

Likewise, the challenged action—the enactment of the legislation—creates a "direct and immediate dilemma" for Plaintiffs. See Nat'l Org. for Marriage, Inc., 714 F.3d at 691. As pleaded in the complaint, when the restriction goes into effect, at least some portion of their members will be unable to access the Heliports as "non-essential" flights. Finally, insofar as the City or the EDC, as the agency tasked with implementing Res. No. 26-A, intends to impose civil or criminal penalties for violating the restrictions, Plaintiffs need not wait until the restrictions are in place to challenge them. See Cerame, 123 F.4th at 80.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety and grant any such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 23, 2026

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:______________________________

James M. Catterson
Brianna S. Walsh
Danielle Stefanucci
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax: 212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com
danielle.stefanucci@pillsburylaw.com

*Attorneys for Plaintiffs the Eastern Region Helicopter Council and Vertical Aviation International*