UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTERN REGION HELICOPTER COUNCIL, VERTICAL AVIATION INTERNATIONAL, and VICTORIA SESKIN,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF NEW YORK,<br><br>Defendant. | Civil Action No. 25-cv-04682 (NGG) |

**PLAINTIFF VICTORIA SESKIN'S SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**


I. PLAINTIFF SESKIN HAS STANDING TO BRING HER SEQRA CLAIM ........................ 1

A. Ms. Seskin Has Article III Standing ........................ 1

B. Ms. Seskin Has Standing Under SEQRA ........................ 2

II. PLAINTIFF SESKIN'S SEQRA CLAIM IS RIPE FOR REVIEW ........................ 7

A. Legal Standard ........................ 7

B. SEQRA Required Review Before City Council Voted ........................ 8

C. The SEQRA Claim Is Ripe Under Federal Law ........................ 10

D. The SEQRA Claim Is Also Ripe Under New York Law ........................ 12

CONCLUSION ........................ 14

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Conn. Fund for the Env't, Inc. v. U.S. Gen. Servs. Admin.*,
285 F. Supp. 3d 525 (E.D.N.Y. 2018) ....................11

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017)....................1, 4

*Long Island Pine Barrens Soc'y, Inc. v. Plan. Bd. of Town of Brookhaven*,
213 A.D.2d 484 (2d Dep't 1995)....................2–3, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................2, 3, 7, 11

*Matter of Cor Rte. 5 Co., LLC v. Vill. of Fayetteville*,
147 A.D.3d 1432 (4th Dep't 2017)....................13, 14

*Matter of Essex Cnty. v. Zagata*,
91 N.Y.2d 447 (1998) ....................12, 13

*Matter of Gordon v. Rush*,
100 N.Y.2d 236 (2003) ....................12, 13, 14

*Matter of Jackson v. N.Y. State Urban Dev. Corp.*,
67 N.Y.2d 400 (1986) ....................10

*Matter of Lo Lordo v. Bd. of Trs. of Inc. Vill. of Munsey Park*,
202 A.D.2d 506 (2d Dep't 1994)....................3

*Matter of O'Connell v. Zoning Bd. of Appeals of Town of New Scotland*,
267 A.D.2d 742 (3d Dep't 1999)....................13

*Matter of Seymour v. Cnty. of Saratoga*,
190 A.D.2d 276 (3d Dep't 1993)....................9

*Matter of Sierra Club v. Vill. of Painted Post*,
26 N.Y.3d 301 (2015) ....................5

*Matter of Stephens v. Gordon*,
202 A.D.2d 437 (2d Dep't 1994)....................5

*Matter of Vill. of Chestnut Ridge v. Town of Ramapo*,
45 A.D.3d 74 (2d Dep't 2007)....................2, 3, 4

*Matter of Whibco, Inc. v. Vill. of Round Lake*,
149 Misc. 2d 415 (Sup. Ct. Saratoga Cnty. 1991) ....................8–9, 12

*Matter of Young v. Bd. of Trs. of Vill. of Blasdell*,
89 N.Y.2d 846 (1996) .......... 12, 13

*Moya v. U.S. Dep't of Homeland Sec.*,
975 F.3d 120 (2d Cir. 2020) .......... 1

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) .......... 7, 8, 10, 11

*N.Y. C.L. Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) .......... 8

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998) .......... 10

*Sharkey v. Quarantillo*,
541 F.3d 75 (2d Cir. 2008) .......... 8, 11

*Simmonds v. I.N.S.*,
326 F.3d 351 (2d Cir. 2003) .......... 7, 8, 11

*Soc'y of Plastics Indus. v. Cnty. of Suffolk*,
77 N.Y.2d 761 (1991) .......... 2

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 2

*Sunrise Dev., Inc. v. Town of Huntington*,
62 F. Supp. 2d 762 (E.D.N.Y. 1999) .......... 4

*Vill. of Tarrytown v. Plan. Bd. of Vill. of Sleepy Hollow*,
292 A.D.2d 617 (2d Dep't 2002) .......... 9

Statutes and Codes

42 U.S.C. § 4332(2)(C) .......... 10

42 U.S.C. § 4336(b)(1) .......... 10

N.Y.C. Admin. Code § 22-828(1)(b) .......... 12

N.Y. Envtl. Conserv. Law § 8-0105(2) .......... 8

N.Y. Envtl. Conserv. Law § 8-0109(2) .......... 9

N.Y. Envtl. Conserv. Law § 8-0109(4) .......... 8

Rules and Regulations

6 N.Y.C.R.R. § 617.2 .......... 8, 9

6 N.Y.C.R.R. § 617.3 ........................................................................................................8, 10, 13

6 N.Y.C.R.R. § 617.6 ..................................................................................................................9

6 N.Y.C.R.R. § 617.7 ............................................................................................................9, 10

Plaintiff Victoria Seskin, by and through her undersigned counsel, respectfully submits this memorandum of law in response to the Court's September 17, 2026 Order directing supplemental briefing on the "issues of ripeness and standing."

## I. PLAINTIFF SESKIN HAS STANDING TO BRING HER SEQRA CLAIM

Because the City has offered evidence outside the pleadings, Ms. Seskin may either "come forward with evidence of [her] own to controvert that presented by the defendant" or "rely on the allegations" in her pleading where Defendant's evidence does not contradict "plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (citation and internal quotation marks omitted). Here, the allegations in the complaint, as bolstered by evidence proffered in opposition to the motion to dismiss, demonstrate that Ms. Seskin has standing. Specifically, the record demonstrates that the restrictions contained in Local Law 64 will displace thousands of helicopter operations from the City's heliports; a share of that traffic will divert to JFK and LaGuardia; flights approaching those airports from the east are routed along the Track route; and Ms. Seskin lives near that route. Ms. Seskin thus has standing both under Article III of the Constitution and under SEQRA to bring her claim.[1]

### A. Ms. Seskin Has Article III Standing

As a threshold matter, Article III requires a plaintiff to establish (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020).

[1] Capitalized terms not defined herein are given the meanings ascribed to them in Plaintiffs' memorandum of law in opposition to the City's motion to dismiss. ECF No. 33.

Ms. Seskin independently satisfies Article III's standing requirements. She does not assert an abstract interest in City Council complying with SEQRA but, rather, a concrete interest in the environmental conditions near her home, located less than a mile from an existing route. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). The diversion study commissioned by Plaintiffs projects that thousands of helicopter operations will be displaced to JFK and LaGuardia, and the record supports a corresponding increase in traffic along the Track route near her property. Thus, Ms. Seskin's anticipated injury is fairly traceable to the restrictions imposed by Local Law 64. Put differently, her injury arises from her proximity to an existing flight route and the changes in flight operations that will result from an already-enacted restriction, not a speculative chain of hypothetical events. Although the restrictions do not take effect until 2029, a plaintiff seeking to enforce a "procedural right to protect [a] concrete interest" need not satisfy all the "normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992); *Summers*, 555 U.S. at 496–97. A favorable judgment annulling Local Law 64 based on City Council's failure to comply with SEQRA would prohibit the City from implementing the restrictions without conducting the environmental review required to protect Ms. Seskin's concrete interests. Under those circumstances, she need not wait until she suffers environmental harm to challenge City Council's failure to conduct the review required by law.

**B. Ms. Seskin Has Standing Under SEQRA**

To establish standing under SEQRA, a plaintiff must show (1) an injury in fact that is "different from the injury to the public at large," and (2) that the injury falls within SEQRA's zone of interests because it involves, at least in part, a noneconomic environmental concern. *Soc'y of Plastics Indus. v. Cnty. of Suffolk*, 77 N.Y.2d 761, 777 (1991); *see also Matter of Vill. of Chestnut Ridge v. Town of Ramapo*, 45 A.D.3d 74, 89–90 (2d Dep't 2007); *Long Island Pine*

*Barrens Soc'y, Inc. v. Plan. Bd. of Town of Brookhaven*, 213 A.D.2d 484, 485 (2d Dep't 1995). Moreover, where a plaintiff demonstrates "proximity to the source of a significant environmental impact," a court may draw an inference that she has standing under SEQRA. *See Vill. of Chestnut Ridge*, 45 A.D.3d at 90–91; *see also Matter of Lo Lordo v. Bd. of Trs. of Inc. Vill. of Munsey Park*, 202 A.D.2d 506, 506–07 (2d Dep't 1994).[2] In *Village of Chestnut Ridge*, the Second Department recognized that residents living near a source of increased traffic or noise are directly affected by those impacts in a manner that distinguishes them from the public generally. 45 A.D.3d at 91. Ms. Seskin alleges precisely that type of injury.

*First*, Ms. Seskin has established that when the City implements the restrictions dictated by Local Law 64, helicopter traffic will be diverted to JFK and LaGuardia. The diversion study Plaintiffs submitted in opposition to the motion to dismiss estimates that 95–98% of current operations at the two heliports would be characterized as non-essential under Local Law 64. Smith Decl., Ex. A at ii (ECF No. 35-1, PageID #: 902). The study then projects that LaGuardia and JFK will absorb 10% and 9% of the displaced activity, respectively, or about 9,000 operations a year. *Id.*, PageID #: 921. It also explains that because neither airport is subject to helicopter slot controls, both are logical destinations for displaced operators. *Id.*, PageID #: 913–15. The City's suggestion at oral argument that the law affects no helicopters because existing aircraft are already Stage 3 compliant has no support, and it cannot be squared with City Council's decision to enact a law restricting heliport access in the first place.

*Second*, Ms. Seskin has established that diverted helicopter traffic will pass near her home. Flights from eastern Long Island and out of state approach JFK and LaGuardia from the

[2] The Supreme Court has also recognized that "one living adjacent to the site" of a proposed project has standing to challenge an agency's failure to prepare an environmental impact statement, "even though [s]he cannot establish with any certainty that the statement will cause the license to be withheld or altered." *Lujan*, 504 U.S. at 572 n.7.

east. Smith Decl. ¶ 8 (ECF No. 35). The City itself concedes the existence of "longer-range flights to commuter destinations on Long Island, Connecticut, and elsewhere in the region." Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Mot.") at 23 (ECF No. 30). Plaintiffs also contend that the FAA will direct many of these flights onto the "Track" route, a designated helicopter transit route. Smith Decl. ¶¶ 13–14. Thus, Plaintiffs allege that the restrictions mandated by Local Law 64 will increase traffic on eastern approach routes, including the Track route. *Id.* ¶ 20.

*Third*, Ms. Seskin lives near the Track route. She has lived at 75 Hayes Street in Garden City for 34 years, less than a mile from the Track route, and she already hears helicopters overhead several times a day. Seskin Decl. ¶¶ 1–3 (ECF No. 36). The City also concedes that her home is near the Track route, and its other evidence only confirms the point. Mot. at 22. Its own expert acknowledged that the assumption that JFK diversions would increase Garden City crossings "appeared to have some basis in the observed data." Moussawi Decl. ¶ 36 (ECF No. 39).[3] That evidence does not contradict Ms. Seskin's plausible allegations but, rather, corroborates them. *See Katz*, 872 F.3d at 119.

*Fourth*, Ms. Seskin's injury is both particularized and environmental. Noise and pollution are quintessential noneconomic environmental harms within SEQRA's zone of interests. *Vill. of Chestnut Ridge*, 45 A.D.3d at 91; *Sunrise Dev., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 771–72 (E.D.N.Y. 1999). Moreover, she attests that the additional helicopter traffic will generate "unbearable levels of noise," deprive her of the quiet enjoyment of her home and yard, and cause increased pollution, stress, and anxiety. Seskin Decl. ¶ 6; Compl. ¶¶ 233–36.

---

[3] His contrary conclusion rests on a single month of 2023 data, collected two years before Local Law 64 was enacted. Moussawi Decl. ¶¶ 6–7 (ECF No. 32).

Her proximity to the route and her existing exposure to helicopter noise set her apart from the public at large in that respect. Seskin Decl. ¶¶ 2–3.

This evidence suffices to meet what the City believes is Ms. Seskin's burden: to "prove by a preponderance of the evidence that [Ms. Seskin] has a nonspeculative basis to believe that the number of flights over Garden City would actually increase under this local law." Catterson Decl., Ex. A (ECF No. 45-2) at 27:16–19.[4] Likewise, the City's insistence that Ms. Seskin quantify the precise number of increased flights conflates the showing required for standing with the environmental analysis SEQRA required the City to undertake. Put differently, the City cannot defeat standing by pointing to the absence of the very analysis City Council was required to perform but elected not to.

The Court of Appeals' decision in *Matter of Sierra Club v. Vill. of Painted Post*, 26 N.Y.3d 301, 310–12 (2015), is instructive. In *Painted Post*, the Court held that a resident living near an existing railroad line had standing to challenge governmental action that increased train traffic and associated noise. *Id.* at 311. The Court rejected the argument that he lacked standing because other residents along the railroad line would experience similar noise impacts, explaining that the alleged harm must be particularized but need not be unique. *Id.* As in *Painted Post*, Ms. Seskin lives near an existing transportation route and alleges that the challenged governmental action will increase traffic and noise near her home. That other residents along the route may experience similar impacts does not defeat her standing.

Cases where the courts found petitioners lacked standing under SEQRA are distinguishable. In *Matter of Stephens v. Gordon*, 202 A.D.2d 437, 438 (2d Dep't 1994), the

[4] As illustrated at argument, the questions of proof largely boil down to the City's position on the scope of Local Law 64, which it believes only regulates a tiny number of flights. Catterson Decl., Ex. A at 28:8–29:11. As Plaintiffs explained at argument, that is, at the very least, an issue for summary judgment. *Id.* at 47:14–21.

court held that petitioners, who challenged the county's decision to join an off-track betting corporation, lacked standing where no betting parlor sites had been selected and their potential injury was confined to "additional taxes." Likewise, in *Long Island Pine Barrens*, 213 A.D.2d at 485–86, the court held that petitioners lacked standing where they failed to establish proximity to the proposed development and relied on generalized allegations that the "project w[ould] have a deleterious impact upon the aquifer lying beneath the South Setauket Pine Barrens." Here, by contrast, Ms. Seskin identifies the existing helicopter route near her home, the anticipated increase in traffic along that route, and the resulting noise and pollution that she will experience. Her alleged injury is neither generalized nor merely economic.

The Court recognized this reality at oral argument. *See* Catterson Decl., Ex. A at 26:10–16 ("Some of the helicopters coming from South Hampton and Greenport are going to fly into Kennedy and they're going to fly into LaGuardia and they're going to be at lower altitude because they're flying into the airports as opposed to two airports on the East River."). The Court further stated that it didn't "require an expert from the City Council to tell [it] that helicopters at low altitudes effect [sic] the quality of life for those neighborhoods and those communities and those people who own homes there." *Id.* at 26:17–23. Thus, the Court recognized that, notwithstanding the City's assertion that Ms. Seskin lives "ten miles east" of JFK and LaGuardia, she nonetheless could experience, and in fact does experience, aircraft noise and pollution resulting from travel to and from those airports. *Id.* at 26:3–23.

## II. PLAINTIFF SESKIN'S SEQRA CLAIM IS RIPE FOR REVIEW

Ms. Seskin's SEQRA claim became ripe on April 24, 2025, when City Council passed the bill that became Local Law 64 without conducting the environmental review SEQRA requires.[5] The fact that the restriction imposed by Section 1 does not take effect until December 1, 2029, does not change the analysis. *See* ECF No. 31-1 §§ 1(c), 3. Ms. Seskin's claim challenges City Council's decision to legislate without first studying the environmental consequences. That decision was final the day City Council voted to enact the legislation without conducting any study.

### A. Legal Standard

Ripeness describes "two overlapping threshold criteria for the exercise of a federal court's jurisdiction": constitutional ripeness, which derives from Article III, and prudential ripeness. *Simmonds v. I.N.S.*, 326 F.3d 351, 356–57 (2d Cir. 2003). Constitutional ripeness is "a specific application of the actual injury aspect of Article III standing;" a claim is unripe if the claimed injury is "conjectural or hypothetical" rather than "actual or imminent." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan*, 504 U.S. at 560). Prudential ripeness, by contrast, is a "more flexible doctrine of judicial prudence" that "constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." *Simmonds*, 326 F.3d at 357. A court that declines review on that ground does not hold that the case is not "a real or concrete dispute," only that it "will be better decided later." *Id.*

---

[5] The Complaint refers to Local Law 64 by its bill designation, Res. No. 26-A. *See* Compl. ¶¶ 98–100. Its text appears in the record at ECF No. 31-1. City Council passed the bill on April 24, 2025, and it became law on May 24, 2025. Compl. ¶¶ 118–19.

To decide whether to abstain on prudential ripeness grounds, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Org. for Marriage*, 714 F.3d at 691 (quoting *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 131–32 (2d Cir. 2008)). Fitness turns on "whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* (quoting *Grandeau*, 528 F.3d at 132). An issue is fit when it "presents legal questions and there is a concrete dispute between the parties," even if "the factual record is not yet fully developed." *Id.* (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008)). Hardship asks "whether and to what extent the parties will endure hardship if decision is withheld." *Simmonds*, 326 F.3d at 359.

Ms. Seskin's claim is constitutionally ripe, and no prudential consideration warrants abstention. The SEQRA violation is complete, and nothing about it depends on contingent future events. Although federal law governs ripeness in this Court, New York's ripeness test for SEQRA claims is instructive because the claim arises under New York law. As shown below, under both the federal and state tests, Ms. Seskin's claim became ripe on April 24, 2025, when City Council voted.

**B. SEQRA Required Review Before City Council Voted**

SEQRA required City Council to complete its environmental review before it adopted Local Law 64. No agency "may undertake, fund or approve [an] action until it has complied" with SEQRA, 6 N.Y.C.R.R. § 617.3(a), and review must begin "[a]s early as possible" in the formulation of a proposal, N.Y. Envtl. Conserv. Law ("ECL") § 8-0109(4). City Council is a "local agency" bound by those commands, ECL § 8-0105(2). Its "adoption of . . . local laws . . . that may affect the environment" is an "action" that triggers them. 6 N.Y.C.R.R. § 617.2(b)(3);

*see Matter of Whibco, Inc. v. Vill. of Round Lake*, 149 Misc. 2d 415, 417 (Sup. Ct. Saratoga Cnty. 1991).

The regulations prescribe the steps. Before an agency commits itself to "a definite course of future decisions," 6 N.Y.C.R.R. § 617.2(b)(2), it must determine whether the action is subject to SEQRA and classify it as a Type I, Type II, or Unlisted action, *id.* § 617.6(a)(1)(i), (iv). For a Type II action, "the agency has no further responsibilities under this Part." *Id.* § 617.6(a)(1)(i). For a Type I action, the agency must prepare a full environmental assessment form, and for an Unlisted action, a short environmental assessment form. *Id.* § 617.6(a)(2)–(3). The agency must then use that form to decide whether the action "may have a significant adverse impact on the environment," including through "a substantial adverse change in existing . . . noise levels," *id.* §§ 617.6(a)(4), 617.7(b)(3), (c)(1)(i). If so, it must prepare an environmental impact statement ("EIS"). ECL § 8-0109(2); 6 N.Y.C.R.R. § 617.7(a)(1). Because "the operative word triggering the requirement of an EIS is 'may', there is a relatively low threshold for the preparation of an EIS." *Vill. of Tarrytown v. Plan. Bd. of Vill. of Sleepy Hollow*, 292 A.D.2d 617, 619 (2d Dep't 2002) (internal quotation marks and citations omitted). And "it frustrates the purpose of SEQRA to delay the preparation of an EIS beyond the point of actual decision making." *Matter of Seymour v. Cnty. of Saratoga*, 190 A.D.2d 276, 279 (3d Dep't 1993). For City Council, that point was its April 24, 2025 vote.

City Council did not take a single one of these steps. It never "determine[d] whether the action is subject to SEQRA" or classified it "as either Type I, Type II, or Unlisted." Compl. ¶ 259. It never assessed whether the action might have significant adverse impacts, much less prepared an EIS. City Council "conducted no environmental review of any type." *Id.* ¶ 117; *see id.* ¶ 36 ("No environmental assessment was even undertaken by the City."). It enacted Local

Law 64 on "a record entirely bereft of environmental review." *Id.* ¶ 270. The SEQRA violation was complete when City Council voted.

**C. The SEQRA Claim Is Ripe Under Federal Law**

Under the federal framework, Ms. Seskin's claim is constitutionally ripe. Her injury—City Council's adoption of a law diverting helicopter traffic over her home without the environmental review SEQRA requires—is "actual or imminent," not "conjectural or hypothetical." *Nat'l Org. for Marriage*, 714 F.3d at 688. And when a statute conditions agency action on prior environmental review, a claim that the agency proceeded without that review ripens when the agency acts. That is how federal courts treat claims under the National Environmental Policy Act ("NEPA"), which the Court of Appeals has described as SEQRA's "Federal counterpart and model." *Matter of Jackson v. N.Y. State Urban Dev. Corp.*, 67 N.Y.2d 400, 415 (1986).[6] Because SEQRA "imposes far more 'action-forcing' or 'substantive' requirements" than NEPA, *id.* (quoting Gitlen, *Substantive Impact of the SEQRA*, 46 Alb. L. Rev. 1241, 1248), the NEPA cases addressing an agency's failure to conduct required environmental review apply to SEQRA with at least equal force. Under those cases, because NEPA "simply guarantees a particular procedure, not a particular result," a person injured by an agency's failure to follow that procedure "may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998). Nor must the injured party wait for the agency's decision to be carried out: for example, a neighbor

[6] NEPA, like SEQRA, requires environmental review before the agency acts, and requires an impact statement when the action may have a significant environmental effect. *Compare* 42 U.S.C. § 4332(2)(C) (detailed statement must "accompany the proposal through the existing agency review processes"), *with* 6 N.Y.C.R.R. § 617.3(a) (no agency "may undertake, fund or approve the action until it has complied with the provisions of SEQR"). *Compare also* 42 U.S.C. § 4336(b)(1) (environmental impact statement required for an action with a "reasonably foreseeable significant effect on the quality of the human environment"), *with* 6 N.Y.C.R.R. § 617.7(a)(1) (environmental impact statement required where an action "may include the potential for at least one significant adverse environmental impact").

may challenge the failure to prepare an environmental impact statement on the construction of a dam "even though the dam will not be completed for many years." *Lujan*, 504 U.S. at 572 n.7. Applying these principles, a court in this District rejected the argument that a NEPA challenge was premature because the challenged sale was "years away and subject to multiple conditions precedent," explaining that "a NEPA claim can never be riper than at the time of the procedural failure." *Conn. Fund for the Env't, Inc. v. U.S. Gen. Servs. Admin.*, 285 F. Supp. 3d 525, 535–36 (E.D.N.Y. 2018).

Nor does any prudential consideration warrant abstention. *First*, the issue is fit for judicial decision. Ms. Seskin's claim is not "contingent on future events" that "may never occur." *Nat'l Org. for Marriage*, 714 F.3d at 691 (citation omitted). Her claim challenges a vote that has already happened, on a record that is already closed: City Council either conducted the SEQRA review it was required to conduct before voting, or it did not. Whether adopting Local Law 64 was an "action" requiring review, and whether City Council violated SEQRA by conducting none, are "legal questions" presenting "a concrete dispute between the parties." *Id.* (quoting *Sharkey*, 541 F.3d at 89). Nothing that occurs before the restriction takes effect will sharpen them.

*Second*, withholding review would impose real hardship, and delay would gain nothing. This is not a case in which waiting might spare the Court "a decision that may turn out to be unnecessary," or in which the plaintiff "has not demonstrated that he would be harmed by [the court's] delaying a decision." *Simmonds*, 326 F.3d at 359. Here, delay would cost Ms. Seskin the very protection SEQRA confers. SEQRA's protection lies in its timing: review must precede the decision so that environmental consequences inform it. If Ms. Seskin must wait until the restriction takes effect—no earlier than December 2029—to challenge City Council's failure to

conduct that review, the diverted helicopter traffic will reach her home unstudied, and the procedural right SEQRA guarantees will have been lost in the waiting. SEQRA cannot, and does not, permit that end-run around its processes.

**D. The SEQRA Claim Is Also Ripe Under New York Law**

New York law reaches the same result: Ms. Seskin's SEQRA claim ripened on April 24, 2025, when City Council voted. In the SEQRA context, the Court of Appeals has held that a challenged action is ripe when it "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process," and the resulting harm "may not be 'prevented or significantly ameliorated by further administrative action or by steps available to the complaining party.'" *Matter of Gordon v. Rush*, 100 N.Y.2d 236, 242 (2003) (quoting *Matter of Essex Cnty. v. Zagata*, 91 N.Y.2d 447, 453 (1998)).

A SEQRA claim ripens when the agency's "decision-making process . . . [i]s complete," because at that point the petitioner "bec[o]me[s] aggrieved by the SEQRA violation of which [she] complain[s]." *Matter of Young v. Bd. of Trs. of Vill. of Blasdell*, 89 N.Y.2d 846, 849 (1996). For legislation, that point is passage: an action subject to SEQRA "is ripe for review when an agency gives it its final approval or disapproval," and a municipality gives such final approval "upon passage of [an] ordinance." *Whibco*, 149 Misc. 2d at 417–18.

Both prongs of *Gordon* are satisfied here. *First*, City Council's April 24, 2025 vote "impose[d] an obligation" and "fix[ed] some legal relationship as a consummation of the administrative process." *Gordon*, 100 N.Y.2d at 242 (citation omitted). City Council passed a law directing that "[t]he operator of any heliport shall prohibit covered helicopters from conducting non-essential flights." ECF No. 31-1 § 1(b); N.Y.C. Admin. Code § 22-828(1)(b). That was City Council's final word: no further legislative action was required for the restriction

to bind. Under the "pragmatic evaluation" *Gordon* demands, City Council thus "arrived at a definitive position on the issue." *Gordon*, 100 N.Y.2d at 242 (quoting *Essex Cnty.*, 91 N.Y.2d at 453). At that moment its decision-making was complete, and Ms. Seskin "became aggrieved by the SEQRA violation of which [she] complain[s]—the [City's] approval of [Local Law 64] without having conducted a SEQRA review." *Young*, 89 N.Y.2d at 849; *see* 6 N.Y.C.R.R. § 617.3(a).

The Fourth Department's decision in *Cor Rte. 5* confirms that a delayed or conditional effective date does not alter this conclusion. There, the court held a SEQRA challenge to a zoning amendment ripe even though the amendment would "take effect only after approval by [the] Onondaga County Department of Transportation and final site plan approval by the Village of Fayetteville Planning Board has been granted." *Matter of Cor Rte. 5 Co., LLC v. Vill. of Fayetteville*, 147 A.D.3d 1432, 1432–33 (4th Dep't 2017). That the amendment "was conditioned upon successful reviews and approvals by other agencies did not alter the fact that [it] became final and binding," *id.* at 1433 (quoting *Matter of O'Connell v. Zoning Bd. of Appeals of Town of New Scotland*, 267 A.D.2d 742, 744 (3d Dep't 1999)), because at the time the village "Board of Trustees issued the negative declaration and amended the zoning laws," its "decision-making process . . . was complete," *id.* at 1434 (quoting *Young*, 89 N.Y.2d at 849). So too here: City Council's decision was final on April 24, 2025, even though the attendant restriction will not be implemented until later.

*Second*, the harm cannot be "prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *Gordon*, 100 N.Y.2d at 242. SEQRA required City Council to complete its review before it voted. Once it voted without that review, no later step could cure the violation, and no step remains through which

Ms. Seskin could obtain it. As in *Gordon*, further proceedings "would not improve the situation or lessen the injury." *Id.* at 243. And as in *Cor Rte. 5*, the fact that the law's restriction awaits further steps—none of which is SEQRA review—does not make the claim premature. 147 A.D.3d at 1433.

Nor do the ANCA procedures that precede implementation change this conclusion. Neither the text of Local Law 64 nor its legislative history references SEQRA or intimates that any EIS will be prepared. While Local Law 64 purports to precondition implementation of the restrictions on completion of an ANCA study, *see* ECF No. 31-1 § 1(c), it does not allow the City to reconsider the restrictions in light of that study's findings. More importantly, an ANCA study cannot substitute for the SEQRA review City Council was required to conduct before enacting the law.

In sum, under both the federal and New York frameworks, City Council's SEQRA violation was complete when it voted on April 24, 2025. The claim turns on no contingent future event, delay would deprive Ms. Seskin of the review SEQRA guarantees, and nothing that happens before the restriction takes effect can make the claim any riper.

## **CONCLUSION**

Plaintiff Victoria Seskin respectfully requests that the Court deny Defendant's motion in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 23, 2026

Respectfully submitted,

**HOLWELL SHUSTER & GOLDBERG LLP**

BY: /s/ Jayme Jonat
Jayme Jonat
Denis D. Metin
425 Lexington Avenue
New York, NY 10017
Phone: 646.837.8455
jjonat@hsgllp.com
dmetin@hsgllp.com

*Attorneys for Plaintiff Victoria Seskin*